## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SEAN SHANAPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KOHL'S CORPORATION, MICHELLE GASS, JILL TIMM, MICHAEL BENDER, PETER BONEPARTH, YAEL COSSET, CHRISTINE DAY, H. CHARLES FLOYD, MARGARET JENKINS, THOMAS KINGSBURY, ROBBIN MITCHELL, JONAS PRISING, JOHN E. SCHLIFSKE, ADRIANNE SHAPIRA, and STEPHANIE A. STREETER,<br><br>        Defendants. | **Case No.**<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Sean Shanaphy ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Kohl's Corporation ("Kohl's" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Kohl's securities between October 20, 2020 and May 19, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Kohl's operates as a retail company in the U.S.  The Company offers branded apparel, footwear, accessories, beauty, and home products through its stores and website.

3.      In October 2020, Kohl's announced that it had entered into a new strategic framework to "drive top-line growth," "expand operating margin," and become "the most trusted retailer of choice for the active and casual lifestyle" (the "Strategic Plan").  Specifically, the Strategic Plan featured "new initiatives to position the company for long-term success," including "be[ing] the destination for active, casual and beauty for the entire family from the most trusted brands, always delivering quality and discovery," "lead[ing] with loyalty and value through a best-in-class rewards program," and "offer[ing] a differentiated omnichannel experience that is easy and inviting, no matter how customers want to shop."  In addition, Kohl's announced that the Company was "focused on increasing profitability with a goal of expanding its operating margin to 7% to 8%."  In announcing the Strategic Plan, the Company touted its purportedly strong foundation of customers, industry-leading loyalty and charge card programs, high volume of stores, and large and growing digital business.

4.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Kohl's Strategic Plan was not well tailored to achieving the Company's stated goals; (ii) the Defendants had likewise overstated the Company's success in executing its Strategic Plan; (iii) Kohl's had deficient disclosure controls and procedures, internal control over financial reporting, and corporate governance mechanisms; (iv) as a result, the Company's Board was able to and did withhold material information from shareholders about the state of Kohl's in the lead-up to the Company's annual meeting; (v) all the foregoing, once revealed, was likely to have a material negative impact on Kohl's financial condition and reputation; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On May 19, 2022, Kohl's issued a press release announcing the Company's fiscal Q1 2022 results, reporting, among other items, a net sales figure expected to grow up to only 1% (compared to Wall Street consensus growth of 1.94%), earnings per share of $0.11 (missing estimates by $0.59), a revenue figure which only barely edged expectations, and the Company's decision to cut its full year earnings forecast.  These results were at odds with the Defendants' representations regarding the successful execution of the Company's Strategic Plan, which was purportedly poised to drive top-line growth and position the Company for long-term success. Further, the press release quoted Kohl's Chief Executive Officer ("CEO") Defendant Michelle Gass ("Gass"), who stated, in relevant part, "[t]he year has started out below our expectations. Following a strong start to the quarter with positive low-single digits comps through late March, sales considerably weakened in April as we encountered macro headwinds related to lapping last year's stimulus and an inflationary consumer environment."

6.     Then, on May 20, 2022, Macellum Advisors GP, LLC ("Macellum"), "a long-term holder of nearly 5% of the outstanding common shares of Kohl's", issued a statement addressing

"[t]his quarter's extremely disappointing results," which Macellum attributed to a "flawed strategic plan and an inability to execute." Macellum also stated that "the current Board appears to have withheld material information from shareholders about the state of Kohl's in the lead-up to this year's pivotal annual meeting," which "suggests to us a clear breach of fiduciary duty."

7. On this news, Kohl's stock price fell $5.84 per share, or 12.97%, to close at $39.20 per share on May 20, 2022.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Kohl's is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

12. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

13.     Plaintiff, as set forth in the attached Certification, acquired Kohl's securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14.     Defendant Kohl's is incorporated in Wisconsin with principal executive offices located at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051. Kohl's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the trading symbol "KSS".

15.     Defendant Gass has served as Kohl's CEO at all relevant times. Gass has also served as a member of the Board at all relevant times.

16.     Defendant Jill Timm ("Timm") has served as Kohl's Senior Executive Vice President and Chief Financial Officer at all relevant times.

17.     Defendant Michael Bender ("Bender") has served as a Director of the Board at all relevant times.

18.     Defendant Peter Boneparth ("Boneparth") has served as a Director of the Board at all relevant times.

19.     Defendant Yael Cosset ("Cosset") has served as a Director of the Board at all relevant times.

20.     Defendant Christine Day ("Day") has served as a Director of the Board since on or around May 12, 2021.

21.     Defendant H. Charles Floyd ("Floyd") has served as a Director of the Board at all relevant times.

5

22. Defendant Margaret Jenkins ("Jenkins") has served as a Director of the Board since on or around May 12, 2021.

23. Defendant Thomas Kingsbury ("Kingsbury") has served as a Director of the Board since on or around May 12, 2021.

24. Defendant Robbin Mitchell ("Mitchell") has served as a Director of the Board at all relevant times.

25. Defendant Jonas Prising ("Prising") has served as a Director of the Board at all relevant times.

26. Defendant John E. Schlifske ("Schlifske") has served as a Director of the Board at all relevant times.

27. Defendant Adrianne Shapira ("Shapira") has served as a Director of the Board at all relevant times.

28. Defendant Stephanie A. Streeter ("Streeter") has served as a Director of the Board at all relevant times.

29. Defendants Gass, Timm, Bender, Boneparth, Cosset, Day, Floyd, Jenkins, Kingsbury, Mitchell, Prising, Schlifske, Shapira, and Streeter are sometimes referred to herein as the "Individual Defendants."

30. The Individual Defendants possessed the power and authority to control the contents of Kohl's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Kohl's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Kohl's, and their access to material information available to them but not to the public, the Individual Defendants

knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

31.     Kohl's and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background**

32.     Kohl's operates as a retail company in the U.S. The Company offers branded apparel, footwear, accessories, beauty, and home products through its stores and website.

**Materially False and Misleading Statements Issued During the Class Period**

33.     The Class Period begins on October 20, 2020, when Kohl's issued a press release announcing its decision to enter into the Strategic Plan. The press release stated, in relevant part:

> Kohl's today shared the company's new strategic framework with the investment community, including new initiatives to position the company for long-term success. As part of its strategy, Kohl's has set a new vision: *to be the most trusted retailer of choice for the active and casual lifestyle.*
>
> The strategy, informed by customer insights, is designed to drive top-line growth and expand operating margin, supported by disciplined capital management and an agile organizational culture, to create long-term shareholder value.
>
> "Kohl's is uniquely positioned to be the retailer of choice for the active and casual lifestyle for the entire family with our accessible and aspirational brand portfolio, seamless omnichannel experience, and industry-leading loyalty program. We are leaning into categories where we have demonstrated momentum and will drive more growth opportunities into the future. The recent environment has accelerated our path forward and presented a unique opportunity to capture market share from retail industry disruption," said Michelle Gass, Kohl's chief executive officer. "We have shown our ability to navigate through the COVID-19 crisis by focusing on customer and associate safety, operational efficiency and ensuring our financial resiliency. We are well positioned to both continue to manage our business through the pandemic and to take full advantage of a brighter future ahead."

The new strategy will build on Kohl's strong foundation of 65 million customers, industry-leading loyalty and charge card programs, more than 1,160 stores, and large and growing digital business.

To accomplish the vision to be the most trusted retailer of choice for the active and casual lifestyle, Kohl's will focus on three key areas that will drive top-line growth.

- Be the **destination for active, casual and beauty for the entire family from the most trusted brands, always delivering quality and discovery**. This includes expanding in Active and Outdoor categories, reigniting growth in the Women's category, building a sizable Beauty business, and driving category productivity and inventory turn. The company also seeks to capture market share from retail industry disruption.

- **Lead with loyalty and value through a best-in-class rewards program**, including Kohl's Cash, Kohl's Rewards and Kohl's Charge Card. This includes driving productivity through deeper engagement with customers and continuing to deliver personalized experiences.

- **Offer a differentiated omnichannel experience that is easy and inviting, no matter how customers want to shop**. This includes leveraging Kohl's healthy store base in an evolving landscape, modernizing the store experience, continuing digital growth, and further enhancing omnichannel capabilities.

The company is also focused on increasing profitability with a goal of expanding its operating margin to 7% to 8%.

- Efforts include **an end-to-end supply chain transformation, sourcing optimization and SG&A expense efficiency** across store labor, marketing and technology.

- In addition, the company will leverage its **core discipline of operational excellence**, which resulted in more than $250 million of cost savings from 2017 through 2019 and more recently, in 2020, expense savings of more than $100 million on an annualized basis.

Kohl's has a track record of disciplined financial management and this will continue to be an important focus. The company is committed to prudent balance sheet management with a long-term objective of sustaining its investment grade rating, a status it has held for more than two decades. The company is also committed to a long-term capital return program and this follows a long history of returning significant capital to shareholders.

The company's strategic efforts are supported by its strong organizational focus. Kohl's will continue to foster a workplace culture of agility, accountability and

experimentation, while also further amplifying its efforts on diversity and inclusion, and environmental, social and corporate governance (ESG) stewardship.

(Emphasis in original.)

34.     On November 17, 2020, Kohl's issued a press release announcing the Company's fiscal Q3 2020 financial results. The press release stated, in relevant part:

"We entered the holiday season well-positioned and prepared to serve our customers with more omnichannel conveniences in place to deliver the great experience they always expect from Kohl's. As we look ahead, we are incredibly focused on executing against our new strategic framework, which represents our greatest opportunity to drive long-term sales and profit growth and create shareholder value in the coming years," said Gass. "In addition, through disciplined capital management we plan to reinstate a dividend during the first half of 2021."

35.     That same day, Kohl's hosted an earnings call with investors and analysts to discuss the Company's Q3 2020 results (the "Q3 2020 Earnings Call"). During the scripted portion of the Q3 2020 Earnings Call, Defendant Gass stated, in relevant part:

Let me now transition to how we're planning the business beyond this year and discuss our new strategic framework. Last month, we shared an updated investor presentation introducing this new framework. We are excited to share more color on this new strategy with all of you today.

Our vision is to be the most trusted retailer of choice for the Active and Casual lifestyle. We are uniquely positioned to deliver against this vision. We serve the entire family. We offer an accessible and aspirational brand portfolio. We provide a seamless omni-channel experience and we have a leading loyalty program. To bring this vision to life and create long-term shareholder value, we have four key areas of focus: driving top line growth, expanding operating margin, disciplined capital management, and an agile accountable and inclusive culture.

I am confident in our organization's ability to deliver on these four focus areas. With respect to our stated operating margin goal of 7% to 8%, it's important to remember that we delivered this margin in 2017 and 2018. With a modest level of growth, our transformational margin initiatives already underway and our continued focus on operational excellence, we are confident that we can return to this level.

36.     On December 3, 2020, Kohl's filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended October 31, 2020

9

(the "Q3 2020 10-Q"). In discussing the Company's strategy, the Q3 2020 10-Q stated, in relevant part:

> During the quarter we introduced our new strategic framework. Our vision is to be "the most trusted retailer of choice for the active and casual lifestyle." We are uniquely positioned to deliver against this vision by serving the entire family, offering an accessible and aspirational brand portfolio, providing a seamless omnichannel experience, and having a leading loyalty program.
>
> Our strategy is designed to create long-term shareholder value and we have four key areas of focus: driving top line growth, expanding operating margin, disciplined capital management, and an agile, accountable, and inclusive culture.
>
> Driving Top Line Growth
>
> We are focused on driving top line growth by being the destination for the active and casual lifestyle, leading with loyalty and value, and offering a differentiated omnichannel experience. As the destination for the active and casual lifestyle, our initiatives include expanding our active and outdoor business to at least 30% of net sales, reigniting growth in our women's business, building a sizable beauty business, driving category productivity and inventory turn, and capturing market share from the retail industry disruption. Our loyalty and value efforts include simplifying the value we deliver to our customers and maintaining our industry leading loyalty program, which includes Kohl's Rewards and the Kohl's Card. We will also continue to offer a compelling and differentiated omnichannel experience, through modernizing our stores and enhancing our digital experience, as well as continuing to invest in our omnichannel capabilities.
>
> Expanding Operating Margin
>
> We have established a goal of expanding our operating margin to 7% to 8%. To accomplish this goal, we are targeting both gross margin improvement and selling, general, and administrative expense leverage. Our gross margin initiatives include inventory management and increasing inventory turn, optimizing our promotional strategies, and transforming our supply chain. Our selling, general, and administrative expense initiatives include leveraging our operational excellence discipline with a focus on driving greater efficiency across stores, marketing, technology, and corporate expenses.
>
> Disciplined Capital Management
>
> We are committed to disciplined capital management and we will continue to manage the business with a long-term objective of sustaining an Investment Grade rating. We have a long history of strong cash flow generation, investing in our

business, and returning significant capital to shareholders, all of which will continue to remain important in the future.

37.     Further, with respect to the Company's controls and procedures, the Q3 2020 10-Q stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level."

38.     Appended to the Q3 2020 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gass and Timm, attesting that "the information contained in the [Q3 2020 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

39.     On February 4, 2021, Kohl's issued a press release announcing the Company's Q4 2020 results.  The press release stated, in relevant part:

> "As we carry this momentum into 2021, we are confident that our key strategic initiatives will accelerate our top line growth and expand our operating margin. Our partnership with Sephora will launch this Fall in 200 stores and online, commencing a multi-year buildout that will drive significant growth for Kohl's," said Gass. "We look forward to sharing more on this and our other initiatives, as well as providing more detail on our path to 7% to 8% operating margin, on our upcoming earnings call in March."

40.     On March 2, 2021, Kohl's issued a press release announcing the Company's Q4 and full year 2020 results.  The press release stated, in relevant part:

> "After an extraordinary year managing through the pandemic, we ended the year in a very solid financial position, and we enter 2021 with strong momentum. We are pleased with the progress we are making against our strategic initiatives and we are set up to deliver a multi-year improvement in sales and operating margin. Several newly announced initiatives will come to life for our customers in the year ahead, most importantly the launch of our Sephora partnership in August," said Michelle Gass, Kohl's chief executive officer.

41.     That same day, Kohl's hosted an earnings call with investors and analysts to discuss the Company's Q4 2020 results (the "Q4 2020 Earnings Call").  During the scripted portion of the Q4 2020 Earnings Call, Defendant Gass stated, in relevant part:

We are executing with a clear strategic plan to continue building on the momentum in our business, with an intense focus on improving our profitability. We have delivered strong initial progress against our strategy in the past two quarters, and we are positioned to deliver a multiyear improvement in sales and operating margin.

*** 

We are also making great progress in our efforts to expand our operating margin. Our fourth quarter gross margin performance and expense discipline highlight the traction we have already made, as we look to make further progress against our strategic goal.

Importantly, these are not one-time benefits, but rather fundamental changes we are making in our operation that will drive sustainable improvements to our business.

42.     On March 18, 2021, Kohl's filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for its fiscal fourth quarter and year ended January 30, 2021 (the "2020 10-K"). The 2020 10-K contained a substantively similar description of the Company's strategy as discussed, *supra*, in ¶ 36. Further, the 2020 10-K stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level."

43.     Appended to the 2020 10-K as exhibits were signed certifications pursuant to SOX by Defendants Gass and Timm, attesting that "the information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

44.     On May 20, 2021, Kohl's issued a press release announcing the Company's Q1 2021 financial results. The press release stated, in relevant part:

"We are very pleased with our strong start to 2021 with both sales and earnings materially exceeding expectations. Along with a favorable consumer spending backdrop, we continue to see our key strategic initiatives gain traction and resonate with customers. We saw momentum build through the quarter, especially in our stores where we continue to elevate the experience. We are eagerly preparing for the upcoming launch of our Sephora partnership as well as the introduction of several new exciting brands this fall," said Michelle Gass, Kohl's chief executive officer.

"We are positioned to capitalize on growth opportunities during the balance of 2021 and remain firmly on track to achieving our 2023 strategic goals. Based on our first quarter results, we are raising our full year 2021 guidance," said Gass.

45.    That same day, Kohl's hosted an earnings call with investors and analysts to discuss the Company's Q1 2021 results (the "Q1 2021 Earnings Call").  During the scripted portion of the Q1 2021 Earnings Call, Defendant Gass stated, in relevant part:

We are very pleased with our strong start to 2021 with both sales and earnings materially exceeding expectations. Our key strategic initiatives continue to gain traction and resonate with customers, and we capitalized on a favorable consumer spending backdrop during the period.

***

We are making significant progress on our vision of becoming the most trusted retailer of choice for the active and casual lifestyle. Since launching our strategy last October, we have shown strong sequential improvement in our performance and have announced several important new strategic partnerships that will accelerate our momentum.

We remained firmly on track to achieving our 2023 strategic goals, and we'll take a big step forward in our pursuit this year. As we will discuss later in the call, based on our first quarter results, we are raising our full year 2021 guidance.

46.    On June 3, 2021, Kohl's filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended May 1, 2021 (the "Q1 2021 10-Q").  The Q1 2021 10-Q touted the Company's decision to enter into the Strategic Plan.  Further, the Q1 2021 10-Q stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level."

47.    Appended to the Q1 2021 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Gass and Timm, attesting that "[t]he information contained in the [Q1 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

48.     On August 19, 2021, Kohl's issued a press release announcing the Company's Q2 2021 financial results.  The press release stated, in relevant part:

> "Our performance in the second quarter marked another important step in further establishing Kohl's as the leading destination for the active and casual lifestyle. We delivered record second quarter earnings with sales and margins materially exceeding expectations. As pleased as we are with our ongoing strategic progress, much of our opportunity is still ahead of us. We are on the eve of launching several transformational partnerships that will drive sustainable growth for years to come," said Michelle Gass, Kohl's chief executive officer.

49.     That same day, Kohl's hosted an earnings call with investors and analysts to discuss the Company's Q2 2021 results (the "Q2 2021 Earnings Call").  During the scripted portion of the Q2 2021 Earnings Call, Defendant Gass stated, in relevant part:

> This underscores our confidence in the future and commitment to creating shareholder value, and we still ended in a very strong cash position of $2.6 billion. As pleased as we are with our ongoing strategic progress, much of our opportunity is still ahead of us. We are on the eve of launching several transformational partnerships that will drive sustainable growth for years to come and further establish calls as the leading destination for the active and casual lifestyle.

> Since launching our strategy last October, our organization is executing a clear plan to build sales momentum with an intense focus on improving our profitability. We have transformed our business to be more relevant to our customers and more efficient in how we operate. As evident in our results, we are already seeing the benefits of our strategic efforts, which have positioned us to achieve many of our 2023 goals this year, well ahead of plan.

> ***

> We made an even greater pivot towards the active and casual lifestyle to drive top-line growth, and implemented meaningful margin-enhancing and expense-saving initiatives to support overall operating margin expansion, with a 2023 goal of achieving 7% to 8%. Everything that we envisioned with this new strategy is playing out as planned, and in many cases, sooner than we expected. We are now at an important milestone in our strategic journey.

50.     On September 2, 2021, Kohl's filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended July 31, 2021 (the "Q2 2021 10-Q").  The Q2 2021 10-Q touted the Company's Strategic Plan.  Further, the Q2

2021 10-Q stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level."

51.     Appended to the Q2 2021 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Gass and Timm, attesting that "[t]he information contained in the [Q2 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

52.     On November 18, 2021, Kohl's issued a press release announcing the Company's Q3 2021 financial results.  The press release stated, in relevant part:

> "Our strategic efforts to transform Kohl's into the leading destination for the active and casual lifestyle continue to build momentum. We delivered another quarter of record earnings with both sales and margins exceeding expectations. During the quarter, we drove accelerated growth in Active and successfully launched several new brand partnerships, including the initial rollout of 200 Sephora at Kohl's stores, which are off to a great start," said Michelle Gass, Kohl's chief executive officer.

> "All of the pieces of our strategy are coming together and we remain incredibly confident in the future of our business. We are raising our full year 2021 guidance and continue to accelerate our share repurchase activity, reinforcing our commitment to driving shareholder value," said Gass.

53.     That same day, Kohl's hosted an earnings call with investors and analysts to discuss the Company's Q3 2021 results (the "Q3 2021 Earnings Call").  During the scripted portion of the Q3 2021 Earnings Call, Defendant Gass stated, in relevant part:

> Our strategic effort to transform Kohl's into the leading destination for the active and casual lifestyle continues to gain traction. We delivered another outstanding performance in the third quarter, continuing our momentum from the first half of the year.
>
> ***
>
> All of the pieces of our strategy are coming together and we remain incredibly confident in our future. As we look ahead, we are focused on building on this year's success. We are positioned to exceed most of our 2023 goals this year and we look forward to sharing an updated financial framework at our Investor Day on March 7, 2022.

54.     On December 2, 2021, Kohl's filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended October 30, 2021 (the "Q3 2021 10-Q"). The Q3 2021 10-Q touted the Company's Strategic Plan. Further, the Q3 2021 10-Q stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level."

55.     Appended to the Q3 2021 10-Q as exhibits were signed certifications pursuant to SOX by Defendants Gass and Timm, attesting that "[t]he information contained in the [Q3 2021 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

56.     On March 1, 2022, Kohl's issued a press release announcing the Company's Q4 and full year 2021 financial results. The press release stated, in relevant part:

> "In 2021, we delivered all-time record earnings per share, significantly ahead of our expectations. Our operating margin of 8.6% exceeded our 2023 goal two years ahead of plan, a direct result of our efforts to restructure the business to be more profitable. We remain extremely confident in the future growth and cash flow generation of our business, and in 2022 will build on our momentum as we further scale key initiatives such as Sephora," said Michelle Gass, Kohl's chief executive officer.

57.     That same day, Kohl's hosted an earnings call with investors and analysts to discuss the Company's Q4 2021 results (the "Q4 2021 Earnings Call"). During the scripted portion of the Q4 2021 Earnings Call, Defendant Gass stated, in relevant part:

> We achieved record earnings per share and successfully launched several key strategic initiatives that position us to drive growth for years to come. I am proud of how our team has remained agile and focused in a challenging environment during the past couple of years. We've proven that Kohl's is an incredibly strong and resilient company and has a very bright future.
>
>                                        ***
>
> Let me now provide an update on our strategy and key 2022 initiatives. We made important progress in our pursuit of becoming a leading destination for the active

and casual lifestyle in 2021. Core to this strategy is our product, building a meaningful beauty business, continuing to grow our Active category, improving Women and introducing iconic relevant brands to further differentiate our brand portfolio. Many of these major initiatives were launched late in 2021 and are just starting to scale, with most of the upside opportunity still ahead of us.

\*\*\*

We accomplished a great deal strategic and financially as we highlighted today. Given the strong growth initiative in front of us, we have great confidence in the future. We are focused on driving shareholder value and are reinforcing our commitment to returning capital to shareholders. We are doubling our dividend and our Board has approved a $3 billion share repurchase authorization, with a plan to repurchase at least $1 billion in shares in 2022.

58.     On March 7, 2022, Kohl's issued a press release entitled "Kohl's Provides Key Updates on Strategic Growth Initiatives and Financial Plan at Investor Day." The press release stated, in relevant part:

> "Kohl's is undergoing a significant transformation of our business model and brand to be the retailer of choice for the Active and Casual lifestyle. We have fundamentally restructured our business to drive sustainable and profitable growth, while providing a strong return to shareholders," said Michelle Gass, Kohl's chief executive officer. "We have laid the foundation for our winning strategy and have started to implement key initiatives that will scale and accelerate our growth in the years ahead. We delivered record EPS in 2021 and achieved our operating margin goal two years ahead of schedule, reflecting our progress to drive more profitable growth. The initiatives we are announcing today, including plans to drive the Sephora business to $2 billion, are further positioning us for long-term value creation."

59.     On March 17, 2022, Kohl's filed an Annual Report on Form 10-K with the SEC, reporting the Company's financial and operating results for the year ended January 29, 2022 (the "2021 10-K"). The 2021 10-K contained a substantively similar description of the Company's strategy as discussed, *supra*, in ¶ 36. Further, the 2021 10-K stated that "[the Company's] disclosure controls and procedures [were] effective at the reasonable assurance level."

60.     Appended to the 2021 10-K as exhibits were signed certifications pursuant to SOX by Defendants Gass and Timm, attesting that "[t]he information contained in the [2021 10-K]

fairly presents, in all material respects, the financial condition and results of operations of the Company."

61.    The statements referenced in ¶¶ 33-60 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Kohl's Strategic Plan was not well tailored to achieving the Company's stated goals; (ii) the Defendants had likewise overstated the Company's success in executing its Strategic Plan; (iii) Kohl's had deficient disclosure controls and procedures, internal control over financial reporting, and corporate governance mechanisms; (iv) as a result, the Company's Board was able to and did withhold material information from shareholders about the state of Kohl's in the lead-up to the Company's annual meeting; (v) all the foregoing, once revealed, was likely to have a material negative impact on Kohl's financial condition and reputation; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times

**The Truth Emerges**

62.    On May 19, 2022, Kohl's issued a press release announcing the Company's fiscal Q1 2022 results.  The press release stated, in relevant part:

- First quarter net sales and comparable sales decrease 5.2%
- First quarter diluted earnings per share of $0.11
- Updates full year 2022 financial outlook
- Board continues to run a robust process to explore all strategic initiatives to maximize value

[. . .] Kohl's [. . .] today reported results for the quarter ended April 30, 2022.

"The year has started out below our expectations. Following a strong start to the quarter with positive low-single digits comps through late March, sales considerably weakened in April as we encountered macro headwinds related to lapping last year's stimulus and an inflationary consumer environment. We remain

committed to our long-term strategy and are encouraged that our updated store experience, with Sephora at Kohl's shops, delivered positive comparable store sales across these 200 locations for the quarter. We continue to expect our business to improve as the year progresses, with growth in the second half as we benefit from the roll out of 400 additional Sephora stores, enhanced loyalty rewards and further investment in our stores," said Michelle Gass, Kohl's chief executive officer.

"Regarding our review of strategic alternatives, we continue to engage with multiple interested parties. We have formally communicated the specific procedures for the submission of actionable bids due in the coming weeks. We continue with our detailed diligence phase and are pleased with the number of parties who recognize the value of our business and plan," said Gass.

**Updated 2022 Financial Outlook**

The Company is updating its full year 2022 financial outlook to include the following:

- **Net sales** is now expected to be in the range of 0% to 1% as compared to the prior year
- **Operating margin** is now expected to be in the range of 7.0% to 7.2%
- **Earnings per share** is now expected to be in the range of $6.45 to $6.85, excluding any non-recurring charges

These results were at odds with the Defendants' representations regarding the successful execution of the Company's Strategic Plan, which was purportedly poised to drive top-line growth and position the Company for long-term success.

63.    Then, on May 20, 2022, Macellum, "a long-term holder of nearly 5% of the outstanding common shares of Kohl's", issued a statement which asserted, in relevant part:

Macellum [. . .] today issued the following statement regarding the Company and its Board of Directors (the "Board") attributable to its Managing Partner, Jonathan Duskin:

**"This quarter's extremely disappointing results do not change the fact that Kohl's is a uniquely positioned retailer with tremendous long-term opportunities to increase sales, expand margins and produce superior earnings.** Based on our extensive analysis of Kohl's and the retail sector, we can say with great conviction that yesterday's results are simply a consequence of a weak Board and management configuration leading to a flawed strategic plan and an inability to execute. Under the right oversight and leadership that has sufficient

expertise and a viable strategy, we firmly believe Kohl's will consistently deliver superior operating and financial results.

**It was alarming to learn yesterday that the current Board appears to have withheld material information from shareholders about the state of Kohl's in the lead-up to this year's pivotal annual meeting.** We believe all of the Company's shareholders should feel betrayed and outraged by the fact that the quarter's massive earnings miss, reduced guidance and the imminent departures of two senior executives, who presumably supported the development of Kohl's' three-year strategy released in March 2022, were not disclosed prior to last week's annual meeting. If any of the current directors _**were aware**_ of this material information prior to the annual meeting, their involvement in any decision to withhold the news prior to a monumental shareholder vote suggests to us a clear breach of fiduciary duty. If any of the current directors _**were kept in the dark and not aware**_ of this information prior to the annual meeting, we urge this faction of the Board to retain independent counsel and begin its own investigation to understand how select directors and shareholders were so grossly misled and what recourse they have. Either way, Kohl's should immediately appoint three of our nominees – including a shareholder representative from Macellum – to the Board to replace three long-serving incumbents. Keep in mind that Institutional Shareholder Services, Inc., a leading independent proxy advisory firm, recommended earlier this month that shareholders vote to elect multiple Macellum nominees, including former Macy's, Inc. Chief Merchandising Officer Jeff Kantor and former L Brands, Inc. Chief Financial Officer Pamela Edwards.

**At this point, we believe the current Board has forfeited its right to continue to oversee Kohl's and review offers versus the Company's internal plan – and it should immediately commit to accepting the highest financed acquisition offer received at the conclusion of the sale process.**

**We are actively exploring claims against the Board and will take legal action, if necessary, to protect our interests as a major long-term shareholder and the interests of all our fellow shareholders."**

(Emphasis in original.)

64.     On this news, Kohl's stock price fell $5.84 per share, or 12.97%, to close at $39.20 per share on May 20, 2022.

65.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

66.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Kohl's securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

67.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Kohl's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Kohl's or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

68.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

69.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

70.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Kohl's;

- whether the Individual Defendants caused Kohl's to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Kohl's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

71.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

72.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Kohl's securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Kohl's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

73.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

74.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## <u>COUNT I</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

75.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

76.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

77.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under

which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Kohl's securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Kohl's securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

78. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Kohl's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Kohl's finances and business prospects.

79. By virtue of their positions at Kohl's, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

80.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Kohl's, the Individual Defendants had knowledge of the details of Kohl's internal affairs.

81.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Kohl's.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Kohl's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Kohl's securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Kohl's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Kohl's securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

82.     During the Class Period, Kohl's securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Kohl's securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that

were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Kohl's securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Kohl's securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

83. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

84. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

85. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

86. During the Class Period, the Individual Defendants participated in the operation and management of Kohl's, and conducted and participated, directly and indirectly, in the conduct of Kohl's business affairs. Because of their senior positions, they knew the adverse non-public information about Kohl's misstatement of income and expenses and false financial statements.

87. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Kohl's

financial condition and results of operations, and to correct promptly any public statements issued by Kohl's which had become materially false or misleading.

88.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Kohl's disseminated in the marketplace during the Class Period concerning Kohl's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Kohl's to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Kohl's within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Kohl's securities.

89.     Each of the Individual Defendants, therefore, acted as a controlling person of Kohl's.  By reason of their senior management positions and/or being directors of Kohl's, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Kohl's to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Kohl's and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

90.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Kohl's.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.	Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.	Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.	Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  September 2, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
(New York State Bar Number 4161352)
J. Alexander Hood II
(New York State Bar Number 5030838)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*