UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| SEAN SHANAPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br><br>     v.<br><br><br><br>KOHL'S CORPORATION, MICHELLE GASS, JILL TIMM, MICHAEL BENDER, PETER BONEPARTH, YAEL COSSET, CHRISTINE DAY, H. CHARLES FLOYD, MARGARET JENKINS, THOMAS KINGSBURY, ROBBIN MITCHELL, JONAS PRISING, JOHN E. SCHLIFSKE, ADRIANNE SHAPIRA, and STEPHANIE A. STREETER,<br><br>     Defendants. | No.: 2:22-cv-01016-LA<br><br><u>Class action</u><br><br><br>**<u>ORAL ARGUMENT<br>REQUESTED</u>** |

**MEMORANDUM IN SUPPORT OF THE MOTION OF LEAD PLAINTIFF MOVANT
THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN
FOR RECONSIDERATION OF THE COURT'S MAY 23, 2023 ORDER
<u>APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

I.      Introduction ................................................................................................ 1

II.     Applicable Legal Standards .................................................................. 3

III.    Argument ..................................................................................................... 5

        A.      NSHEPP, Not Mr. Frame, Is The PSLRA Presumptive Lead
                Plaintiff ................................................................................................ 7

                1.      Mr. Frame's Individual Losses Are Only $37,035 ......................... 7

                2.      Mr. Frame Cannot Sue Individually Regarding The Other
                        Losses ........................................................................................ 8

                3.      NSHEPP Is The Presumptive Lead Plaintiff With $170,836 In
                        Losses ...................................................................................... 11

        B.      NSHEPP Proffered Substantial Rebuttal Evidence, Unlike Mr.
                Frame ................................................................................................... 12

                1.      Mr. Frame Failed To Rebut The Presumption Favoring
                        NSHEPP ..................................................................................... 12

                2.      By Contrast, NSHEPP Proffered Extensive Rebuttal Evidence ... 12

                3.      NSHEPP Timely Sought Discovery Under The PSLRA .............. 14

        C.      NSHEPP Should Be Appointed Lead Plaintiff On Reconsideration ........ 15

                1.      Mr. Frame's Falsehoods Caused The Court To Commit Errors ... 15

                2.      Reconsideration Permits The Court To Rectify Those Errors ...... 16

IV.     Conclusion ................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdullah v. Wisconsin Dep't of Corr.*,
No. 04-C-1181, 2005 WL 3534233 (E.D. Wis. Dec. 21, 2005) (Adelman, J.) .........................5

*Barfell v. Buchanan*,
No. 21-C-725, 2022 WL 981122 (E.D. Wis. Mar. 31, 2022) (Adelman, J.) ............................4

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
90 F.3d 1264 (7th Cir. 1996) ...................................................................................................4

*Charter Oak Fire Ins. Co. v. Wisconsin Elec. Power Co.*,
262 F. Supp. 3d 760 (E.D. Wis. 2017) (Adelman, J.)...............................................................4

*Est. of Wielepski v. Kuhnmuench*,
No. 17-C-1004, 2019 WL 10734457 (E.D. Wis. Dec. 20, 2019) (Adelman, J.) .......................5

*Everett v. Leading Edge Air Foils, LLC*,
No. 14-C-1189, 2017 WL 2894135 (E.D. Wis. July 7, 2017) (Adelman, J.) ...........................4

*Forster v. Hoover*,
No. 3:08 CV 15, 2009 WL 10694378 (N.D. Ind. July 8, 2009) ..........................................3, 4

*Frank v. Dana Corp.*,
237 F.R.D. 171 (N.D. Ohio 2006) ....................................................................................17, 18

*Galvan v. Norberg*,
678 F.3d 581 (7th Cir. 2012) ...................................................................................................3

*HK Sys., Inc. v. Eaton Corp.*,
No. 02-C-1103, 2007 WL 1747016 (E.D. Wis. June 18, 2007) (Adelman, J.) ........................4

*Hope v. U.S.*,
43 F.3d 1140 (7th Cir. 1994) ...................................................................................................3

*In re Citigroup Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013)......................................................................................19

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) .....................20

*In re Crayfish Co. Sec. Litig.*,
No. 00 Civ. 6766, 2002 WL 1268013 (S.D.N.Y. June 6, 2002)............................................20

Case 2:22-cv-01016-LA    Filed 06/09/23    Page 3 of 26    Document 36

*In re Deutsche Bank AG Sec. Litig.*,
No. 09 Civ. 1714 (DAB), 2009 WL 4277202 (S.D.N.Y. Nov. 23, 2009) ...............................20

*In re IMAX Sec. Litig.*,
No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009)................................19

*In re Peregrine Sys., Inc. Sec. Litig.*,
No. 02 CV 870-J, 2003 WL 23955714 (S.D. Cal. Jan. 30, 2003) ..........................................19

*Int'l Brotherhood of Teamsters Airline Div. v. Frontier Airlines, Inc.*,
No. 10-C-0203, 2010 WL 2679959 (E.D. Wis. July 1, 2010) (Adelman, J.) ...........................5

*J.P. Morgan Tr. Co. v. U.S. Bank, N.A.*,
446 F. Supp. 2d 956 (E.D. Wis. 2006) (Adelman, J.)................................................................4

*Jordan v. Cockroft*,
No. 08-C-1092, 2009 WL 277564 (E.D. Wis. Feb. 5, 2009) (Adelman, J.)..............................5

*Karp v. Diebold Nixdorf, Inc.*,
No. 19 Civ. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) .................................19

*Lammers v. Wisconsin*,
No. 13-CV-00028, 2014 WL 580770 (E.D. Wis. Feb. 13, 2014) (Adelman, J.).......................5

*Malasky v. IAC/Interacive Corp.*,
No. 04 Civ. 7447 (RJH), 2005 WL 549548 (S.D.N.Y. Mar. 7, 2005)....................................18

*Mintz v. Caterpillar, Inc.*,
788 F.3d 673 (7th Cir. 2015) ...................................................................................................3

*Myczynski v. Lieblick*,
No. 10-CV-0081, 2013 WL 1080613 (N.D. Ill. Mar. 14, 2013)...............................................3

*Obriecht v. Raemisch*,
517 F.3d 489 (7th Cir. 2008) ...................................................................................................3

*Plymouth County Ret. Assoc. v. Array Techs., Inc.*,
No. 21 Civ. 4390 (VM), 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) ..................................19

*Seely v. Avery*,
No. 1:09 CV 289 JM, 2011 WL 13250768 (N.D. Ind. Feb. 15, 2011)..............................2, 3, 4

*Silverberg v. Dryships, Inc.*,
No. 17-CV-4547, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ........................................17

*Talano v. Northwestern Med. Faculty Foundation, Inc.*,
273 F.3d 757 (7th Cir. 2001) ...................................................................................................3

iii

*Tatum v. Lucas*,
  No. 11-C-1131, 2019 WL 652854 (E.D. Wis. Feb. 15, 2019) (Adelman, J.)............................5

*Terry v. Spencer*,
  888 F.3d 890 (7th Cir. 2018) ..................................................................................................3

*U.S. v. Ligas*,
  549 F.3d 497 (7th Cir. 2008) ..................................................................................................4

*U.S. v. Townsend*,
  762 F.3d 641 (7th Cir. 2014) ..................................................................................................4

*Walker v. Wisconsin Dep't of Corr.*,
  No. 13-CV-3, 2013 WL 1774677 (E.D. Wis. Apr. 25, 2013) (Adelman, J.)............................5

*Williams v. Dittmann*,
  No. 07-C-1158, 2010 WL 1375191 (E.D. Wis. Apr. 1, 2010) (Adelman, J.)............................4

**Statutes**

15 U.S.C. §78u-4 .................................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 .................................................... *passim*

Texas Uniform Transfers to Minors Act.................................................................. *passim*

**Rules**

Fed. R. Civ. P. 17.................................................................................................... *passim*

Fed. R. Civ. P. 23.................................................................................................... *passim*

Fed. R. Civ. P. 54.....................................................................................................1, 3, 4, 5

Pursuant to Fed. R. Civ. P. 54(b), as well as the common law and the court's inherent authority, lead plaintiff movant the Nova Scotia Health Employees' Pension Plan ("NSHEPP") respectfully submits this Memorandum in support of its motion for reconsideration of the Court's Order, entered May 23, 2023 (Dkt. No. 33), which denied NSHEPP's lead plaintiff motion (ECF 17) and granted the competing motion of Mr. Frame (ECF 11).

## I.     Introduction

Lead plaintiff movant Mr. Frame has petitioned the Court, on the basis of extensive false and misleading factual arguments and nonsensical interpretations of the very federal statutes he seeks to be appointed to enforce, to lead this important securities fraud class action lawsuit. His tactics have muddied the record and sowed confusion in the arguments before the Court. Mr. Frame bears responsibility for doing so and for causing the Court to commit error in its recent Order (ECF 33), with respect to which this motion seeks reconsideration.

Contrary to his presentation and the Court's Order, Mr. Frame's individual losses in Kohl's securities are only *$37,035*, flowing from just two of the five accounts he falsely claimed as his own. He does not own the other accounts, nor has he established a legally valid basis for claiming he can pursue recovery of trading losses in those accounts by suing and seeking a lead plaintiff appointment in his *individual* capacity. Yet, it is only through the aggregation of these accounts that he can make any claim to surpassing NSHEPP's uncontested losses of *$170,836* – an exercise tantamount to Mr. Frame's pursuing an untimely lead plaintiff appointment for an undeclared *group* of investors – consisting of minors, a Texas limited partnership, and a Texas limited liability company whose identities Mr. Frame concealed through false certifications, misleading loss charts, and incomplete or belated disclosures during the briefing.

Moreover, Mr. Frame's failure to comply with Fed. R. Civ. P. 17(b)(3), Wisconsin law, the Texas Uniform Transfers to Minors Act, the PSLA, Fed. R. Civ. P. 23, and Article III of the

1

U.S. Constitution all raise unique defenses rendering Mr. Frame incapable of representing the class of investors without subjecting them to serious risks and delays of costly sideshow litigation. Mr. Frame's utter lack of candor to the Court necessitated NSHEPP's counsel to incrementally expose these damning facts, which Mr. Frame **never refuted** – even in his proposed sur-reply. These **undisputed** facts illustrate that Mr. Frame cannot satisfy Fed. R. Civ. P. 23 and, to the extent the Court somehow found him to have the largest financial interest, they serve as robust rebuttal evidence sufficient under the PSLRA to preclude his appointment to serve as lead plaintiff. Also evidencing Mr. Frame's inability to represent the class are the many times during this process that he displayed an utter lack of grasp as to damages calculations under the Securities Exchange Act of 1934 – the statute he seeks appointment to enforce.

Simply put, NSHEPP, with **$170,836** in **uncontested losses**, is the presumptive lead plaintiff under the PSLRA and, as a sophisticated pension fund with significant securities litigation experience, it is the exact type of institutional investor that Congress prefers serve as lead plaintiff, and it can adequately represent the class, as it is currently doing in multiple pending securities class actions. Mr. Frame did not present any rebuttal proof to the contrary.

The Court's Order erroneously credited Mr. Frame as having higher losses than NSHEPP, one of six errors it contained, as detailed below. Motions for reconsideration are the proper vehicle to address and rectify such errors, and "motions challenging interlocutory orders…are frequently filed and entertained." *Seely v. Avery*, No. 1:09 CV 289 JM, 2011 WL 13250768, at *2 (N.D. Ind. Feb. 15, 2011). For the reasons that follow, NSHEPP respectfully requests that the Court grant this motion, reconsider its Order, and either appoint NSHEPP to serve as lead plaintiff, with its choice of counsel Pomerantz LLP serving as lead counsel, or grant

2

NSHEPP discovery of Mr. Frame pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iv), with additional lead plaintiff briefing and oral argument to follow.

## II.    Applicable Legal Standards

"[D]istrict judges may reconsider interlocutory orders at any time before final judgment." *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018) (citing *Mintz v. Caterpillar, Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) and *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012)).  A motion for reconsideration is "a motion that, strictly speaking, does not exist under the Federal Rules of Civil Procedure." *Hope v. U.S.*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994); *Talano v. Northwestern Med. Faculty Foundation, Inc.*, 273 F.3d 757, 760 n.1 (7th Cir. 2001) (same).  "Nevertheless, such motions challenging interlocutory orders…are frequently filed and entertained."  *Seely v. Avery*, No. 1:09 CV 289 JM, 2011 WL 13250768, at *2 (N.D. Ind. Feb. 15, 2011); *see also Forster v. Hoover*, No. 3:08 CV 15, 2009 WL 10694378, at *1 (N.D. Ind. July 8, 2009) (same).

The Seventh Circuit has made clear that Rules 59 and 60 are "not the right procedural tool for seeking reconsideration of a non-final order," *Terry*, 888 F.3d at 893; *Obriecht v. Raemisch*, 517 F.3d 489, 493 (7th Cir. 2008), and do not limit a district court's discretion to reconsider interlocutory orders.  *Mintz*, 788 F.3d at 679.  Instead, "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment, thereby bestowing sweeping authority upon the district court…." *Galvan*, 678 F.3d at 587 n.3.  Rule 54(b) provides that "non-final orders 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Id.* at 587 (quoting Fed. R. Civ. P. 54(b)).  In the Seventh Circuit, "courts…have contemplated motions to reconsider interlocutory orders under Fed. R. Civ. P. 54(b), common law, and the court's inherent authority." *Myczynski v. Lieblick*, No. 10-CV-0081, 2013 WL 1080613, at *1 (N.D. Ill. Mar. 14, 2013) (citing *Ramada Franchise Sys., Inc. v. Royal Vale Hospitality of Cincinnati, Inc.*, No. 02-CV-1941, 2004 WL

3

2966948, at *3 (N.D. Ill. Nov. 24, 2004) (compiling cases)); *U.S. v. Townsend*, 762 F.3d 641, 645 (7th Cir. 2014) ("reconsideration motions are accepted as a common-law practice").

Motions for reconsideration are used, *inter alia*, "to correct manifest errors of law or fact." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996); *Seely*, 2011 WL 13250768, at *3. "A district court may reconsider a prior decision… when the court misunderstands a party's arguments." *U.S. v. Ligas*, 549 F.3d 497, 501-502 (7th Cir. 2008) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("A motion for reconsideration performs a valuable function where 'the Court has patently misunderstood a party…or has made an error not of reasoning but of apprehension.")).

In the Seventh Circuit, "such motions challenging interlocutory orders…are frequently filed and entertained." *Seely*, 2011 WL 13250768, at *2; *Forster*, 2009 WL 10694378, at *1. Indeed, this Court has granted motions to reconsider in many contexts. *See, e.g.*, *Barfell v. Buchanan*, No. 21-C-725, 2022 WL 981122, at *3-*4 (E.D. Wis. Mar. 31, 2022) (Adelman, J.) (applying Rule 54(b) and partly granting motion for reconsideration of nonfinal order dismissing certain defendants); *Everett v. Leading Edge Air Foils, LLC*, No. 14-C-1189, 2017 WL 2894135, at *3, *6 (E.D. Wis. July 7, 2017) (Adelman, J.) (same); *Charter Oak Fire Ins. Co. v. Wisconsin Elec. Power Co.*, 262 F. Supp. 3d 760, 767 (E.D. Wis. 2017) (Adelman, J.) (granting motion for reconsideration of nonfinal order dismissing certain claims); *Williams v. Dittmann*, No. 07-C-1158, 2010 WL 1375191, at *1-*2 (E.D. Wis. Apr. 1, 2010) (Adelman, J.) (applying Rule 54(b) and granting motion for reconsideration of interlocutory order denying motion to dismiss); *HK Sys., Inc. v. Eaton Corp.*, No. 02-C-1103, 2007 WL 1747016, at *1, *13 (E.D. Wis. June 18, 2007) (Adelman, J.) (applying Rule 54(b) and granting motion for reconsideration of nonfinal order denying motion for summary judgment); *J.P. Morgan Tr. Co. v. U.S. Bank, N.A.*, 446 F.

4

Supp. 2d 956, 959 (E.D. Wis. 2006) (Adelman, J.) (applying Rule 54(b) and partly granting motion for reconsideration of nonfinal decision that plaintiff had committed fraud).[1]

## III. Argument

Blame for the Court's errors falls squarely on Mr. Frame for his ***false and misleading*** conduct throughout the lead plaintiff process. Through deceptive loss charts, false sworn statements, factually inaccurate arguments, and a complete lack of candor, he misrepresented and concealed the true facts as to ownership of the trading accounts from which he aggregated losses and falsely claimed them as his own. NSHEPP's and its counsel's persistent investigation, spanning the full briefing at issue, incrementally revealed the truth – that Mr. Frame's individual losses are only ***$37,035***, and the other trading accounts are owned by a convoluted web of family members, custodial accounts, a Texas limited partnership, and a Texas limited liability company, with respect to which Mr. Frame, despite claiming fake titles and self-declared authority, failed to demonstrate any legal standing to sue under the applicable laws of Texas and Wisconsin.

When painstakingly called out on these falsehoods and infirmities, Mr. Frame ***did not credibly dispute any of them*** – even in the improper sur-reply brief he sought leave to file as a

---

[1] *See also Est. of Wielepski v. Kuhnmuench*, No. 17-C-1004, 2019 WL 10734457, at *1-*2 (E.D. Wis. Dec. 20, 2019) (Adelman, J.) (citing authority of a district judge to reconsider a previous nonfinal ruling made by a magistrate judge in the same litigation); *Tatum v. Lucas*, No. 11-C-1131, 2019 WL 652854, at *3-*4, *21 (E.D. Wis. Feb. 15, 2019) (Adelman, J.) (partly granting motion for reconsideration of orders granting summary judgment); *Lammers v. Wisconsin*, No. 13-CV-00028, 2014 WL 580770, at *2 (E.D. Wis. Feb. 13, 2014) (Adelman, J.) (partly granting motion for reconsideration of nonfinal order allowing petitioner to proceed on certain claims); *Walker v. Wisconsin Dep't of Corr.*, No. 13-CV-3, 2013 WL 1774677, at *1 (E.D. Wis. Apr. 25, 2013) (Adelman, J.) (granting motion for reconsideration of assessment of filing fee); *Int'l Brotherhood of Teamsters Airline Div. v. Frontier Airlines, Inc.*, No. 10-C-0203, 2010 WL 2679959, at *1 (E.D. Wis. July 1, 2010) (Adelman, J.) (partly granting defendants' motion for clarification and/or reconsideration of preliminary injunction); *Jordan v. Cockroft*, No. 08-C-1092, 2009 WL 277564, at *1-*2 (E.D. Wis. Feb. 5, 2009) (Adelman, J.) (applying Rule 54(b) and granting plaintiff's motion for reconsideration of nonfinal order denying motion regarding filing fees); *Abdullah v. Wisconsin Dep't of Corr.*, No. 04-C-1181, 2005 WL 3534233, at *1, *3 (E.D. Wis. Dec. 21, 2005) (Adelman, J.) (applying Rule 54(b) and partly granting plaintiff's motion for reconsideration of nonfinal order dismissing claims).

last word to the Court. Instead, he leveled baseless accusations at NSHEPP, a sophisticated institutional investor with $10 billion in assets and a decade of securities litigation experience, by inventing out of whole cloth a damages theory devoid of any rational or legal basis, by which he sought to use NSHEPP's capital gains unrelated to any alleged fraud as an improper offset to NSHEPP's fraud-related losses at issue. That Mr. Frame, a newcomer to securities litigation, would propose such an intellectually and legally infirm approach to damages in prepared briefing to the court – requiring NSHEPP's counsel to literally diagram for him how securities fraud damages are calculated under the Securities Exchange Act of 1934 (*see* ECF 32 at 11-13) – conclusively demonstrates that he is utterly unfit to represent NSHEPP or *any* class members.

NSHEPP, with *undisputed losses of $170,836*, is the presumptive lead plaintiff under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Mr. Frame presented no credible proof whatsoever to challenge NSHEPP's ability to satisfy Fed. R. Civ. P. 23 and adequately represent the class of investors, thereby falling far short of the rebuttal evidence standard set by 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). Indeed, NSHEPP is currently serving as court-appointed lead plaintiff in several securities fraud class actions pending nationwide, with aggregate class-wide damages in the billions of dollars, and has demonstrated tenacity, attentiveness, and the ability to navigate complex securities lawsuits past dispositive motions and into settlement posture.

By contrast, Mr. Frame's losses are *$37,035*, and even if he was credited with the trading losses of the undeclared persons and entities who actually own the accounts listed in his papers, he is subject to a panoply of *unique defenses* – under the PSLRA, Fed. R. Civ. P. 17, the Texas Uniform Transfers to Minors Act (TUTMA), and Wisconsin law governing the capacity to sue on behalf of limited partnerships – that will consume vast resources, distract from pursuit of the core securities claims, subject to the class to unnecessary risks, and render Mr. Frame incapable

6

of satisfying Fed. R. Civ P. 23. NSHEPP has thus presented conclusive rebuttal evidence against Mr. Frame's appointment, under 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). To the extent that the Court was not yet convinced, NSHEPP timely and appropriately sought discovery under the PSLRA, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iv), so that a decision could be rendered on a full record.

The Court's 3-page Order failed to address any of these points, and as such, committed error – the blame for which falls squarely on Mr. Frame for misleading the Court, obscuring the record, and otherwise conducting himself in a manner demonstrating his unfitness to represent the investor class. For these reasons, as further explained below, NSHEPP respectfully requests that the Court reconsider its Order and appoint NSHEPP to serve as PSLRA lead plaintiff.

### A. NSHEPP, Not Mr. Frame, Is The PSLRA Presumptive Lead Plaintiff

#### 1. Mr. Frame's Individual Losses Are Only $37,035

The Order at 2 states, "Frame asserts total losses of $222,532.24, exceeding NSHEPP's asserted losses of $170,836 by more than 20%." This single, uncited sentence is the basis for the Court's assessment that Mr. Frame has the "largest financial interest" in this lawsuit and, though unstated, a statutory entitlement to a rebuttal presumption that he be appointed lead plaintiff. Undoubtedly caused by the confusion sowed by **_Mr. Frame's false presentation_** of losses, the Court's assessment of Mr. Frame's and NSHEPP's relative losses and its conclusion that Mr. Frame's losses are larger are erroneous, to the detriment of NSHEPP and the investor class.

It is **_undisputed_** that Mr. Frame's **_individual_** investment losses are only **_$37,035_**, and his representations to contrary, many made under penalties of perjury, were **_categorically false_**, as stated in NSHEPP's opposition and reply briefs. *See* ECF 24 at 17-22; ECF 29 at 2-6. While the PSLRA permits groups of investors to seek a lead appointment together, it is **_undisputed_** that Mr. Frame **_never_** pursued that approach. Instead, he filed an **_individual_** lead plaintiff motion seeking

a lead plaintiff appointment *only* for himself. *See* ECF 11. His motion appended a loss chart claiming total losses of $222,532.24, across <u>five</u> trading accounts cryptically labeled "Account #1," "Account #2," etc. that ***concealed*** the true ownership of the stock losses he falsely claimed as his own (ECF 13-2). He filed a ***false, sworn certification*** stating that the loss chart accurately represented the "transactions of *Plaintiff*," *i.e.*, those of Mr. Frame himself (ECF 13-1 at ¶4) and ***false arguing*** that "*Mr. Frame* has suffered substantial losses as a result of *his purchases* of Kohl's securities" and "*Mr. Frame* has sustained the largest losses of any investor(s) seeking to be appointed Lead Plaintiff" (ECF 12 at 1, 2, 7). These statements were ***demonstrably false***, as explained in NSHEPP's briefing (ECF 24 at 7-9, 17-26; ECF 29 at 2-12; ECF 32 at 16-17) and as illustrated in the versions of Mr. Frame's certification and loss chart that ***NSHEPP's counsel*** redline-edited to correct their falsehoods (ECFs 30-5, 30-6). The Court's Order committed error by incorrectly stated that Mr. Frame's losses, individually, were $222,532.24. *See* ECF 33 at 2.

### 2. Mr. Frame Cannot Sue Individually Regarding The Other Losses

As ***NSHEPP's counsel*** revealed largely through independent investigation, Mr. Frame only owns ***two*** of the ***five*** trading accounts at issue, correlating to just 16.6% of the damages ($37,035) he falsely claimed as his own. As detailed in NSHEPP's reply brief (ECF 29 at 2-6), the majority of those accounts, including the largest one, are owned by ***other people or entities***, as illustrated by Figure 1 (showing account ownership) and Figure 2 (showing total losses by account owner) from NSHEPP's reply brief, replicated here for the Court's convenience:

*Figure 1 (from ECF 29 at 4)*

| Account | Actual Beneficial Owner | Loss |
|---|---|---|
| Account #1 | Vienna Forest LP (Vienna Forest Management LLC, *General Partner*) | $151,474 |
| Account #2 | Thomas Frame | $12,121 |
| Account #3 | Thomas Frame's 14 year-old minor daughter | $26,956 |
| Account #4 | Thomas Frame's 17 year-old minor daughter | $9,281 |
| Account #5 | Thomas Frame Roth IRA | $24,915 |

*Figure 2 (from ECF 29 at 5)*

| Owner | Loss |
|---|---|
| Vienna Forest LP (Vienna Forest Management LLC, *General Partner*) | $151,474 |
| Thomas Frame | $37,035 |
| Thomas Frame's 14 y/o daughter | $26,956 |
| Thomas Frame's 17 y/o daughter | $9,281 |

Mr. Frame not only misrepresented his ownership of these trading accounts, he also concealed the true identities of the owners – which, as explained in NSHEPP's briefing, give rise to very significant unique defenses concerning standing and legal compliance.

As NSHEPP briefed, Account #1, the account with the lion's share of the losses Mr. Frame claimed, is owned by a Texas limited partnership called Vienna Forest LP – a fact he withheld until after NSHEPP's opposition brief was written. *See* ECF 29 at 4-6. Yet, even after this fact was disclosed, Mr. Frame continued to mislead. He falsely declared himself Vienna Forest LP's "President" (ECF 27 at 8 n.4) – a fictitious title – when its Texas Franchise Tax Public Information Report ("PIR") lists him as one of two "Limited Partners" (ECF 30-2 at 2) and its Texas Certificate of Formation does not list *any* executive officers, and instead, lists only Vienna Forest Management LLC, as Texas limited liability company whose existence Mr. Frame also concealed, as its General Partner on whose behalf he signed as "Manager." *See* ECF 29 at 3; ECF 30-1; ECF 30-2. He falsely claimed Vienna Forest Management LLC is "wholly controlled by Mr. Frame" (ECF 27 at 8 n.4), but its Texas Certificate of Formation lists him as a "Manager" while its PIR (which he signed as its "Manager") lists him as one of two co-equal

9

"Members." *See* ECF 29 at 3-4; ECF 30-3; ECF 30-4. Moreover, contrary to his representation of having "full legal authority" over Vienna Forest LP's Account # 1 (ECF 27 at 6), as NSHEPP pointed out, Mr. Frame needed to comply with Fed. R. Civ. P. 17(b)(3) and Wisconsin law to establish a right to pursue the partnership's legal claims. *See* ECF 29 at 1, 6-7 and n.3. As NSHEPP briefed, Mr. Frame's failure to do so, coupled with his attempts to pursue its claims individually in his own name, exposes him to myriad unique defenses based on noncompliance with Fed. R. Civ. P. 17(b)(3), Wisconsin law, the PSLRA, Fed. R. Civ. P. 23, and Article III standing. *Id.* at 7. Mr. Frame ***did not dispute*** these points, even in his proposed sur-reply (ECF 31-1).

Similarly, as NSHEPP briefed (ECF 29 at 10-12), Accounts # 3 and 4 are owned by Mr. Frame's minor children, with respect to which he serves merely as custodian (ECF 23-3 ¶¶5-6). Given that he resides in Texas (ECF 13-4 ¶2), those accounts are governed by the Texas Uniform Transfers to Minors Act ("TUTMA"), which among other things, addresses a "custodian, acting in a custodial capacity" and states that "a custodian may exercise [his] rights, powers, and authority in that capacity only." *See* Texas Property Code, Tit. 10, Subtit. A, Ch. 141 §141.014. Yet, Mr. Frame falsely attested that the accounts were his own (ECF 13-1 ¶4), and he has failed to pursue claims or a lead plaintiff appointment or to otherwise in any way act in his custodial capacity, as TUTMA requires. Moreover, as NSHEPP briefed, beyond that unique defense, Mr. Frame faces another – the real possibility that one or both of his daughters will reach the age of majority during the pendency of this lawsuit, triggering the termination of his custodianship under TUTMA §141.021, as soon as their 18th and no later than their 21st birthday. ECF 29 at 10-12. Thus, Mr. Frame faces layers of unique defenses regarding Accounts # 3 and 4, with respect to which he has not even established any ability to pursue claims.

The Court's Order committed error by failing to address any of these misrepresentations by Mr. Frame or the undisputed true facts as presented by NSHEPP and the litany of unique defenses they create for Mr. Frame. *See* ECF 33 at 2.

### 3. NSHEPP Is The Presumptive Lead Plaintiff With $170,836 In Losses

NSHEPP articulated losses of *$170,836*, arising from two straightforward purchases of Kohl's stock during the alleged class period. ECF 18 at 1; ECF 19-1 at 2; ECF 19-3 at 4; ECF 24 at 4. That figure is *360% higher* than Mr. Frame's individual losses of $37,035. It also exceeds the single largest accountholder's losses, the $151,474 loss incurred by Vienna Forest LP in Account # 1, from within Mr. Frame's secretive, undeclared investor group (even assuming that Mr. Frame had legal authority to pursue its claims, which he did not). Thus, NSHEPP has the "largest financial interest" in this lawsuit and enjoys a rebuttable presumption that it is the "most adequate plaintiff" under the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc). *See* ECF 18 at 6, 9-10; ECF 24 at 1-2, 13-15; ECF 29 at 5.

Moreover, NSHEPP is a sophisticated institutional investor, with significant experience overseeing securities fraud litigation with its chosen counsel, Pomerantz LLP. *See* ECF 18 at 2, 7-8, 12-14; ECF 24 at 3-4, 6-7, 13-16. It is a paradigmatic lead plaintiff of the kind expressly preferred by Congress in enacting the PSLRA. *See* ECF 18 at 2, 7; ECF 24 at 3, 6. 9-12.

Given the foregoing, NSHEPP is the "member…of the purported plaintiff class" that is "most capable of adequately representing the interests of the class," which pursuant to the plain language of the PSLRA, 15 U.S.C. §78u-4(a)(3)(B)(i), the court "shall appoint as lead plaintiff." *See* ECF 18 at 5-6; ECF 24 at 9-17.

The Court's Order committed error by failing to credit NSHEPP's $170,836 in losses as the largest among the competing lead plaintiff movants, failing to address NSHEPP's status as a

sophisticated institutional investor with significant securities litigation experience, failing to acknowledge address Congressional intent to appoint institutional investors and particularly pension funds like NSHEPP as lead plaintiffs, and failing to identify NSHEPP as the "most adequate plaintiff" entitled to the PSLRA's rebuttable statutory presumption under 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc). *See* ECF 33 at 2.

### B. NSHEPP Proffered Substantial Rebuttal Evidence, Unlike Mr. Frame

#### 1. Mr. Frame Failed To Rebut The Presumption Favoring NSHEPP

Mr. Frame *never* produced any "proof" of NSHEPP's inadequacy to represent the class, as required by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II), in order for the presumption favoring NSHEPP as lead plaintiff to be overcome. *See* ECF 24 at 13-14, 17. His only attempts at questioning NSHEPP's trading losses, which the Court appears to have rejected (*see* ECF 33 at 2), misapplied the very securities laws he is asking the Court to appoint him to enforce, as discussed *infra*. Thus, NSHEPP's status as the presumptive lead plaintiff was not rebutted.

The Court's Order committed error by failing to recognize as much. ECF 33 at 2.

#### 2. By Contrast, NSHEPP Proffered Extensive Rebuttal Evidence

By contrast, even assuming, *arguendo*, that Mr. Frame wase somehow viewed as the presumptive lead plaintiff, as detailed extensively *supra*, NSHEPP produced *extensive proof* that he filed false and misleading papers, falsely claimed inflated losses from account he does not individually own, wrongly claimed standing and authority to sue on behalf of other persons and entities without actually demonstrating a legal basis. *See* ECF 24 at 17-26. As NSHEPP briefed, these issues give rise to a litany of serious unique defenses that risk expenditure of time and vast resources without any benefit to the class of investors. *See* ECF 24 at 18-22, 25-26.

Moreover, NSHEPP exhaustively highlighted how Mr. Frame repeatedly demonstrated a lack of understanding of the very federal securities laws that he is asking the Court to appoint him to enforce. For instance:

- Mr. Frame repeatedly implied that NSHEPP's stock purchases indefinitely predating the Class Period had some relevance based on his speculating that it was "possible" that NSHEPP profited from selling its shares during the period of fraud-induced inflation, claiming that this purported "net gainer" status (his term) could be disqualifying. *See* ECF 22 at 7. However, as NSHEPP pointed out, more than once, this approach was intellectually and legally infirm and unsupported by *any case law* because it sought to use entirely proper, long-term capital gains unrelated to any fraud as a potential offset in calculating losses *caused by the fraud* due to purchase made at inflated prices, and the one case Mr. Frame cited actually stood for the *opposite* position. *See* ECF 29 at 12-13; ECF 32 at 11-15. When Mr. Frame doubled down, seeking to file a sur-reply to press onward with this utterly incorrect analysis, NSHEPP actually took the step of explaining in step-by-step detail – complete with an illustrative diagram (ECF 32 at 13) – how capital gains work and why raw sale profits unrelated to any fraud cannot possibly be used as an offset to losses *caused by a fraud*. *See* ECF 32 at 11-15.

- Mr. Frame also wrongly accused NSHEPP of incorrectly calculating the PSLRA's statutory 90-day lookback period, actually calling it a disqualifying "level of carelessness." *See* ECF 22 at 8. Incredibly, it was Mr. Frame who utterly misunderstood how the 90-day lookback calculation works and who did it incorrectly. *See* ECF 29 at 14-15; ECF 32 at 11. He was the one to use an incorrect corrective disclosure date, to absurdly propose beginning to evaluate the *post*-correction stock price recovery on a date that *predated* the only alleged correction. *Id.*

On this record, which demonstrates conclusively Mr. Frame's utter and disqualifying lack of ***any*** grasp of the Securities Exchange Act – the very statute whose enforcement he asks the Court to be appointed to lead, on behalf of thousands of investors – the Court's Order committed error by applying a pre-PSLRA standard for adequacy under Rule 23 and the PSRLA and by finding that he satisfied it because "there is no indication that Frame's claims conflict with or are antagonistic to those of the class" on the factual record presented. *See* ECF 33 at 2 (citing *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)).

### 3. NSHEPP Timely Sought Discovery Under The PSLRA

Even assuming, *arguendo*, the Court somehow viewed Mr. Frame as the potential presumptive lead plaintiff and was not fully persuaded by NSHEPP's proffer to date of rebuttal evidence to the contrary, NSHEPP timely and appropriately sought discovery pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iv), and made the requisite showing of a "reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class." *See* ECF 24 at 26. As briefed by NSHEPP, such discovery would seek answers regarding, *inter alia*, the basis for Mr. Frame's purported "full authority" over the three investment accounts – representing the vast majority of his claimed losses – that he undisputedly does not own. *See* ECF at 26.[2]

In this context, the Court's Order committed error by applying a pre-PSLRA standard for adequacy under Rule 23 and the PSRLA and by finding that it was met on the factual record presented, *see* ECF 33 at 2 (citing *Retired Chi. Police Ass'n*, 7 F.3d at 598), without affording NSHEPP the opportunity for discovery it properly and timely sought under 15 U.S.C. § 78u-4(a)(3)(B)(iv) and without addressing NSHEPP's request or the applicable PSLRA provision.

---

[2] By contrast, Mr. Frame never requested discovery of NSHEPP under the PSLRA.

### C. NSHEPP Should Be Appointed Lead Plaintiff On Reconsideration

#### 1. Mr. Frame's Falsehoods Caused The Court To Commit Errors

As outlined above, due primarily to Mr. Frame's false and misleading presentation throughout the briefing, and the resulting confusion in the lengthy record, the Court's Order has committed several errors, summarized as follows:

Error 1: Crediting Mr. Frame any losses beyond $37,035 in losses from Account #2 and Account #5 listed in his moving papers;

Error 2: Permitting Mr. Frame to aggregate the losses in Accounts #1, #3, and #4, which are owned by other individuals and entities, into an undeclared group of investors-movants after the lead plaintiff deadline;

Error 3: Failing to identify NSHEPP as the "most adequate plaintiff" entitled to the PSLRA's rebuttable statutory presumption under 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc), based on its uncontested losses of $170,836, and its preferred status as an institutional investor under the PSLRA, as expressed by Congress;

Error 4: Failing to evaluate and to credit the substantial rebuttal evidence that NSHEPP proffered revealing that Mr. Frame is subject to a litany of unique defenses related to his standing to pursue claims on behalf of Accounts #1, #3, and #4 and his noncompliance with Fed. R. Civ. P. 17(b)(3), Wisconsin law, TUTMA, the PSLRA, Fed. R. Civ. P. 23, and Article III of the U.S. Constitution;

Error 5: Failing to grant NSHEPP's timely and proper request for discovery under the PSLRA, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iv), to the extent necessary to convince the court as to Mr. Frame's inability to satisfy Fed. R. Civ. P. 23 and his unsuitability as a lead plaintiff;

Error 6:  Failing to address and deem disqualifying Mr. Frame's multiple, serious mischaracterizations of damages calculation methods under the Securities Exchange Act of 1934, including his illogical, incorrect calculation of the 90-day lookback; his wrongful accusation that NSHEPP failed to accurately calculate the 90-day lookback; and his repeated pursuit of a "net gainer" (his term) offset whereby entirely proper long-term capital gains from years of NSHEPP's pre-class period stock purchases would be used as an irrational and legally infirm offset to investment losses flowing from class period purchases made at fraud-inflated prices.

### 2.     Reconsideration Permits The Court To Rectify Those Errors

Here, as discussed above, with investment losses properly and accurately accounted for and tied to the correct account holders, NSHEPP is unquestionably the presumptive lead plaintiff under the PSLRA due to its having the largest financial interest in the litigation.  Mr. Frame failed to offer any credible rebuttal proof that NSHEPP cannot represent the class, a role it is actively filling in multiple federal securities lawsuits.  As such, NSHEPP, an institutional investor and pension fund of the kind Congress expressly prefers, is the "most adequate plaintiff" and should be appointed to serve as PSLRA lead plaintiff to represent the class, thereby protecting its interests.  By contrast, Mr. Frame has far lower individual losses and has not demonstrated any entitlement to aggregate the losses of the accounts he does not own or to legally pursue claims on their behalf.  Throughout the briefing, Mr. Frame, who lacks any prior securities litigation experience, has demonstrated a fundamental lack of understanding of the Securities Exchange Act of 1934 – the very statute he seeks appointment to enforce.  Class members, including NSHEPP, should not be subjected to the significant risks of the myriad unique defenses Mr. Frame faces based on a lack of standing concerning the majority of trading accounts listed in his certification and his noncompliance with Fed. R. Civ. P. 17(b)(3),

Wisconsin law, TUTMA, the PSLRA, and Fed. R. Civ. P. 23. For these reasons, NSHEPP respectfully submits that it was error to not appoint NSHEPP to serve as lead plaintiff and to instead appoint Mr. Frame.

There is a remedy, which can lead to the equitable outcome that best protects the class's interests. Courts grant motions for reconsideration of orders appointing PSLRA lead plaintiffs and lead counsel where an order was based on a mistake of fact, *e.g.*, where – as occurred here – the appointed movant wrongly represented himself as having the greatest financial interest. For instance, in *Silverberg v. Dryships, Inc.*, No. 17-CV-4547, 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018), the court had appointed one movant (Mamera) to serve as PSLRA lead plaintiff and his lawyers to serve as lead counsel. *Id.* at *1. Competing movants moved for reconsideration claiming that Mamera had ***inaccurately represented himself as having the largest financial interest*** (due to the highest gross expenditures of all movants), which was a mistake of fact upon which the original lead plaintiff order rested in part. *Id.* at *2-*3. The court granted the motions for reconsideration, and after reconsidering, determined that ***different*** competing movants had the largest financial interest in the litigation and were entitled to a presumption, which was not rebutted, that they were the most adequate plaintiffs. *Id.* at *3, *6, *11.

The same goes for instances where a movant secures a lead plaintiff appointment – as also occurred here – by ***misleadingly representing the losses of competing movants***. For instance, in *Frank v. Dana Corp.*, 237 F.R.D. 171 (N.D. Ohio 2006), the court had entered an order appointing a movant to serve as lead plaintiff under the PSLRA based on its claim to have the largest financial interest from among competing movants. *Id.* at 172. A movant not selected, a group of pension funds, moved the court for reconsideration, arguing that the appointed movant had made a misleading presentation of relative losses, by understating the group's collective

LIFO losses, which caused the judge to "mistakenly misconstrue[ ] those figures to reach my decision." *Id.* The court granted the motion, reconsidered its analysis of relative loss among competing movants, found that it had erroneously credited the wrong movant with stating the largest losses, and *changed* its ruling so that the *other* movant was instead appointed to serve as the lead plaintiff. *Id.* at 173 ("Relying on the [originally appointed movant's] representation, I erroneously determined that party had the largest LIFO losses. In truth the [other movant's] losses were greater," so upon reconsideration, it was appointed to serve as lead plaintiff).

Courts also grant reconsideration to undo lead plaintiff appointments where movants *misrepresented their status* in their moving papers – as likewise occurred here. For instance, in *Malasky v. IAC/Interacive Corp.*, No. 04 Civ. 7447 (RJH), 2005 WL 549548 (S.D.N.Y. Mar. 7, 2005), the court appointed as co-lead plaintiffs an investor group that claimed its members included an institutional investor. *Id.* at *1. However, the corporate entity in question was simply a "personal investment vehicle" of its certification signatory, which, therefore could not serve to ensure representation of institutional investors within the class there at issue. *Id.* By contrast, a competing lead plaintiff movant was a *bona fide* institutional investor, due to its being a multi-employer pension plan that "can provide a unique perspective, depth of experience, and added stability to the representation of the class." *Id.* at *2. The court recognized that an "erroneous factual conclusion" led to the original lead plaintiff appointment, granted the pension plan's motion for reconsideration, and decided to substitute the pension plan as co-lead plaintiff instead of the investor group. *Id.* at *1, *3.

Indeed, courts often grant motions for reconsideration by lead plaintiff movants to ensure that the PSLRA lead plaintiff process is conducted fully, fairly, and in the manner most protective of class members, with particular scrutiny devoted to many of the same issues now

before this Court – ensuring the accuracy of reported losses and the candor of lead plaintiff movant representations to the court and addressing any unique defenses and rebuttal evidence indicating that a movant, even one claiming the largest loss, is not most capable of representing class members. *See, e.g.*, *Plymouth County Ret. Assoc. v. Array Techs., Inc.*, No. 21 Civ. 4390 (VM), 2021 WL 5051649, at *1-*3 (S.D.N.Y. Nov. 1, 2021) (granting motion to reconsider lead plaintiff order, "revising its previous holding" as to certain bases for standing defenses, and "adher[ing] to its finding" that a movant was subject to unique standing defenses that render it unfit to adequately represent investor class); *Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180 (LAP), 2019 WL 6619351, at *1-*3 (S.D.N.Y. Dec. 5, 2019) (granting motion to reconsider lead plaintiff order, reevaluating "potential risks" posed by rebuttal evidence as to the presumptive lead plaintiff based on size of losses, and adhering to ruling appointing a different movant to fulfill the court's "ultimate obligation [of] appoint[ing] as lead plaintiff [the candidate] who [is] most capable of representing the interest of the class members"); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 375 (S.D.N.Y. 2013) (court previously granted motion to reconsider lead plaintiff order to permit discovery into whether the appointed movant had traded stock on nonpublic information); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 WL 1905033, at *1-*4 (S.D.N.Y. June 29, 2009) (granting motion to reconsider lead plaintiff order, finding the appointed lead plaintiff faced unique standing defenses concerning the sufficiency of its assignment of claims, and appointing a different lead plaintiff); *In re Peregrine Sys., Inc. Sec. Litig.*, No. 02 CV 870-J (RBBB), 2003 WL 23955714, at *1-*4 (S.D. Cal. Jan. 30, 2003) (granting motion to reconsider lead plaintiff appointment, finding on reconsideration that the court had misunderstood the legal claims being brought by the appointed movant, revising the appointment to limit it to only Exchange Act §10(b) claims, assessing other movants, and

19

appointing a new lead plaintiff to oversee Securities Act §11 claims after rejecting a movant who failed to present a "straightforward and fair assessment of his losses" by, *inter alia*, "combin[ing] [his] alleged personal losses with his alleged retirement account losses"); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2008 WL 820015, at \*1-\*3 (E.D.N.Y. Mar. 25, 2008) (granting motion to reconsider lead plaintiff order for failure to previously consider rebuttal evidence that the presumptive lead plaintiff could not satisfy Fed. R. Civ. P. 23).[3]

## IV.    Conclusion

For these reasons, NSHEPP respectfully requests that the Court grant reconsideration, that it reconsider its Order (ECF 33), and that it either appoint NSHEPP to serve as lead plaintiff under the PSLRA or, alternatively, that it grant NSHEPP discovery, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iv), into competing movant Mr. Frame, as set forth in NSHEPP's briefs, to be followed by further briefing on the lead plaintiff motions.

---

[3]    *See also, e.g.*, *In re Deutsche Bank AG Sec. Litig.*, No. 09 Civ. 1714 (DAB), 2009 WL 4277202, at \*1-\*5 (S.D.N.Y. Nov. 23, 2009) (granting motion to reconsider lead plaintiff order by a movant whose lead plaintiff motion had been deemed untimely, finding on reconsideration that its motion was timely, and appointing it to serve as lead instead); *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (IDAB), 2002 WL 1268013, at \*1-\*6 (S.D.N.Y. June 6, 2002) (same).

Dated: June 9, 2023

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*

Matthew L. Tuccillo
(New York State Bar Number 5008750)
J. Alexander Hood II
(New York State Bar Number 5030838)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
mltuccillo@pomlaw.com
ahood@pomlaw.com

*Counsel for the Nova Scotia Health Employees'
Pension Plan and Proposed Lead Counsel for
the Class*

21