UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

|  |  |
|---|---|
| SEAN SHANAPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>         v.<br><br>KOHL'S CORPORATION, MICHELLE GASS, JILL TIMM, MICHAEL BENDER, PETER BONEPARTH, YAEL COSSET, CHRISTINE DAY, H. CHARLES FLOYD, MARGARET JENKINS, THOMAS KINGSBURY, ROBBIN MITCHELL, JONAS PRISING, JOHN E. SCHLIFSKE, ADRIANNE SHAPIRA, and STEPHANIE A. STREETER,<br><br>               Defendants. | No.: 2:22-cv-01016-LA<br><br>Class action<br><br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF THE MOTION OF LEAD PLAINTIFF MOVANT THE NOVA SCOTIA HEALTH EMPLOYEES' PENSION PLAN FOR RECONSIDERATION OF THE COURT'S MAY 23, 2023 ORDER APPOINTING LEAD PLAINTIFF AND APPROVING SELECTION OF COUNSEL**

Pursuant to Fed. R. Civ. P. 54(b), the common law, and the court's inherent authority, lead plaintiff movant the Nova Scotia Health Employees' Pension Plan ("NSHEPP") respectfully submits this Reply in support of its motion for reconsideration (ECF 35) ("Motion") of the Court's Order, entered May 23, 2023 (Dkt. No. 33), which denied NSHEPP's lead plaintiff motion (ECF 17) and granted the competing motion of Mr. Frame (ECF 11).

**Preliminary Statement**

NSHEPP's Motion assigns blame for errors in the Court's Order squarely where it lies – *on Mr. Frame*. *See* NSHEPP's opening brief (ECF 36) ("Memo"). Contrary to his opposition ("Opposition") at 1-2 and n.1, the Motion does not "denigrate" or "accuse" his counsel, or even mention them.[1] Thus, the Opposition's cited authority is easily distinguished and wholly inapposite, and its indignance and cross-finger-pointing ring hollow.[2] None of it addresses the *substance* of NSHEPP's Motion, which highlights errors in the Court's Order flowing from *Mr. Frame's false statements* and *misleading presentation* of facts and law. *Accurately* highlighting those circumstances and illustrating how the confusion Mr. Frame wreaked on the record caused

---

[1] Indeed, Mr. Frame's lack of candor likely extended to communications with his counsel, which are privileged and besides the point. Either way, he is unsuited to represent the class.

[2] *See* Opposition at 1-2 (citing *Wiese v. Cmty. Bank of Cent. Wisc.*, 552 F.3d 584, 591 (7th Cir. 2009) (seeking sanctions based on "unfounded accusations"); *U.S. Neurosurgical, Inc. v. City of Chicago*, No. 02 C 4894, 2006 WL 752970, at *2 (N.D. Ill. Mar. 21, 2006) (claiming "[t]he city attorney sat down at his desk, turned on his computer, opened the [case] file, and began to type a motion, without reviewing the facts or the law" and calling the motion papers "a presentation fully deserving of censure"); *Guzman v. Colvin*, *Comm'r of Soc. Sec.*, No. 13-cv-14327, 2015 WL 1530405, at *2 (E.D. Mich. Mar. 31. 2015) (noting counsel's "inflammatory and baseless accusations that the ALJ and Magistrate Judge" "abdicated their duties" and "engaged in purposeful manipulation of the record in order to reach a desired result"); Practice Standards of the Hon. R. Brooke Jackson (discouraging phrases like "counsel attempts to mislead the court")). By contrast, Mr. Frame's Opposition levels accusations of "unprofessionalism" (Opposition at 2) – a term clearly aimed not at NSHEPP, but its counsel.

1

errors in the Court's Order is an entirely appropriate exercise, necessary to protect NSHEPP's interests and those of the class of investors that both he and NSHEPP seek to represent.

<u>**Argument**</u>

<u>**Error #1**</u> – **Mr. Frame's individual losses are only $37,035**.  The Order's single-sentence statement that "Frame asserts total losses of $222,532.24, exceeding NSHEPP's asserted losses of $170,836 by more than 20%" formed the basis for its finding that he "has the largest financial interest in the relief sought by the class."  *See* Order at 1-2.  Yet, it is ***undisputed*** that Mr. Frame's ***individual*** losses are only $37,035 – just 16.6% of those he claimed in his motion papers.  The Opposition does not argue otherwise.  Crediting Mr. Frame, individually, with any losses over $37,035 is an error of fact.

Mr. Frame caused this error.  He supported his lead plaintiff motion, filed November 1, 2022, with a loss chart purporting to show "Class Period Losses ***of Thomas Frame*** in Securities of Kohl's Corporation" in five accounts cryptically labeled "Account #1" through "Account #5." *See* ECF 13-2.  His accompanying sworn Certification described the trading in these accounts as the "transactions ***of Plaintiff***" Frame himself.  *See* ECF 13-1.  These statements were <u>***false***</u>.  His sworn Declaration added, "***I suffered*** substantial loss on ***my investments*** in Kohl's securities." *See* ECF 13-4.  This statement was, at minimum, ***materially misleading***, by supporting the impression that Mr. Frame owned all five trading accounts (not just two of them) himself.

On November 11, 2022, NSHEPP's counsel's letter sought confirmation that Mr. Frame owned the trading accounts.  *See* ECF 23-1.[3]  ***Ten days later***, the ***day before*** the opposition

---

[3]     NSHEPP's letter asked, *inter alia*, "Please confirm whether Mr. Frame himself is the beneficial owners of all five accounts listed on his Certification (Dkt. No. 13-1) and if not, please disclose the beneficial owners of each account" and "Please disclose if any of the accounts are owned jointly or otherwise by another party or entity, whether family members, charitable entities, etc." *See* ECF 23-1.

2

deadline, the response was that "Mr. Frame and/or his immediate family members are the beneficial owners of each of the five accounts listed on his certification" and, without evidence or explanation, that "Mr. Frame has full authority with respect to each of the five accounts." *See* ECF 23-2. Those statements were *<u>false</u>*, because the largest account, Account #5, is owned by a Texas limited liability partnership (as revealed later in the chronology), and otherwise ***materially misleading*** for failure to identify *which* family members owned *which* accounts. Based on this incomplete information, NSHEPP prepared and filed its opposition the evening of the deadline, November 22, 2022, highlighting that Mr. Frame had improperly aggregated losses belonging to an undeclared investor *group* and had failed to establish any legal injury or legal entitlement to pursue claims in his own name for trading accounts owned by others. *See* ECF 24 at 7-9, 17-21

Mr. Frame's opposition brief, filed after 9:00 p.m. the same night, repeated the statements in his response letter (ECF 22 at 7), this time supported by his second sworn Declaration, which belatedly admitted that he ***did not own*** three of the accounts and claimed, without evidence, that he had the "authority to sue" – but ***not*** an injury-in-fact as the account owner. *See* ECF 23-3 ¶¶3, 5-6. He admitted being only the ***custodian*** of Accounts #3 and #4, which were owned by his children, then ages 14 and 17. *Id.* He said Account #1, with $151,474 (over 68%) of the claimed losses, was "owned by Vienna Forest LP, of which I am the ***President*** and my wife…is the Vice President" – titles that convey a clear decision-making hierarchy. *Id.* That statement is *<u>false</u>*.

As NSHEPP's reply brief (ECF 29) revealed on December 6, 2022, NSHEPP's counsel's subsequent research in the login-restricted portion of the Texas Secretary of State Office's website yielded Vienna Forest LP's formation documents, which NSHEPP provided to the Court. *See* ECFs 30-1, 30-2. Vienna Forest LP's Certificate of Formation ***does not list any*** executive officers – President or otherwise. *See* ECF 30-1. Instead, it lists a Texas limited liability company, ***Vienna***

3

*Forest Management, LLC* – an entity that Mr. Frame repeatedly *failed to disclose* to the Court – as its "*General Partner*." *Id.* Mr. Frame signed Vienna Forest LP's Certificate of Formation as the "Manager" of Vienna Forest Management, LLC. *Id.* Vienna Forest LP's Texas Public Information Report (PIR) lists Vienna Forest Management, LLC as its "General Partner" and lists Mr. Frame and his wife as *co-equal* "Limited Partners." *See* ECF 30-2. NSHEPP's counsel also pulled the Texas formation documents for Vienna Forest Management, LLC and submitted them to the Court. *See* ECFs 30-3, 30-4. Its Certificate of Formation lists Mr. Frame as only a "Manager" (ECF 30-3), and its PIR lists him and his wife as *co-equal* "Members" (ECF 30-4). *None* of these documents list Mr. Frame as "President" of anything. That *NSHEPP's reply* and its supporting exhibits were needed to clarify the record as to *Mr. Frame's* true individual losses of *$37,035* (from only Accounts #2 and #5) underscores the confusion that *Mr. Frame* stoked in the record, which caused errors in the Court's Order.[4]

Mr. Frame does not now – and never did (even in his proposed sur-reply brief (ECF 31-1)) – dispute that his *individual* losses are only $37,035. *See* ECF 22 at 7-8. For these reasons, NSHEPP respectfully submits that the Court Order committed error by crediting Mr. Frame, individually, with any losses above $37,035. *See* Memo at 1, 5-9, 15.

**Error #2 – Mr. Frame Cannot Aggregate Losses From Accounts #1, #3, And #4 Into An Undeclared Investor Group After The PSLRA Lead Plaintiff Motion Deadline.** Given that Mr. Frame's individual losses are only $37,035, the Order's single-sentence statement that

---

[4] Mr. Frame's belated submission, *on reply*, of *some* – but not all – of the formation documents for Vienna Forest LP and Vienna Forest Management LLC illustrates the extent to which he sowed confusion throughout the record. *See* ECFs 28-1 and 28-2 (Certificates of Formation only, without the correlating PIRs). He never was fully transparent with NSHEPP or the Court, and what little he did was done *well after* the PSLRA lead plaintiff motion deadline, in a reply brief, simultaneously to NSHEPP's submitting the same information (and more) that it was forced to obtain through independent research.

4

"Frame asserts total losses of $222,532.24, exceeding NSHEPP's asserted losses of $170,836 by more than 20%" (*see* Order at 1-2), must flow from Mr. Frame's *aggregating* losses from Accounts #1, #3, and #4 into his *individual* lead plaintiff motion. Yet, he is unable to do so.

As NSHEPP explained, Mr. Frame's conclusory assertion (ECF 23-3 ¶2) that he has "full authority, including the authority to sue" as the *custodian* of his kids' trading accounts and the *President* (a fictitious title) of Vienna Forest LP, made in his *second* declaration filed *after* the PSLRA lead plaintiff motion deadline, *does not* give him standing and legal authority to pursue claims for losses in Accounts #1, #3, and #4 in his *individual* capacity – the capacity in which he seeks a lead plaintiff appointment. *See* ECF 24 at 8, 13, 18-20; ECF 29 at 3, 5-6. To the contrary, NSHEPP's reply explained that Accounts #3 and #4, for which Mr. Frame is the *custodian*, are governed by the Texas Uniform Transfers to Minors Act, Texas Property Code, tit. 10, Subtit. A, Ch. 141 ("TUTMA"), which mandates exercise of a custodian's rights and powers *only* within the *custodial capacity* – which he did not do here. *See* ECF 29 at 10-12 (citing TUTMA §141.014). Moreover, TUTMA *extinguishes* custodial rights as early as a minor's 18th birthday and, given that Mr. Frame's daughter was 17 back in November 2022, his custodianship for her account may already be over. *Id.* (citing TUTMA §141.021). In addition, to pursue claims arising from Account #1 on behalf of Vienna Forest LP, Mr. Frame needed to act within his *real* capacity – as the "Manager" of its General Partner, Vienna Forest Management, LLC – and, pursuant to Fed. R. Civ. P. 17(b)(3), needed to comply with Wisconsin law in doing so. *See* ECF 29 at 6-8. Mr. Frame *did not dispute* these facts or the application of Rule 17(b), TUTMA, or Wisconsin law, in his proposed sur-reply brief (ECF 31-1).

As such, it is *undisputed* that Rule 17(b), TUTMA, and Wisconsin law govern Mr. Frame's standing and legal authority to bring claims on behalf of Accounts #1, #3, and #4. It is also

5

*undisputed* that they required him to pursue claims, including his lead plaintiff motion, in his *custodial* capacity (for Accounts #3 and #4) and in his capacity as *Manager* of Vienna Forest Management, LLC, which is the *General Partner* of Vienna Forest LP (for Account #5). Thus, contrary to his Opposition at 2-4, Mr. Frame's second (belated) Declaration did *not* "clearly establish[ ] standing and authority for all five accounts"; Rule 17(b), TUTMA, and Wisconsin law are "controlling" (as are the Seventh Circuit cases NSHEPP cited in its lead plaintiff papers); and they were not evaluated in the Court's Order, which was an error. *See* Memo at 6, 8-11.

Mr. Frame's fallback is to claim he can be *individually* appointed lead plaintiff because courts sometimes appoint an investor "group" to serve as lead plaintiffs. *See* Opposition at 3-4. The argument lacks merit. As NSHEPP explained in lead plaintiff briefing, while the PSLRA does permit a lead plaintiff motion to be pursued on behalf of an investor "group," 15 U.S.C. §78u-4(a)(3)(B)(iii)(I), to go that route, Mr. Frame needed to affirmatively seek appointment ***on behalf of the group at the lead plaintiff deadline***, by disclosing all of the group's members, transparently disclosing their separate losses, and either including them as co-lead-plaintiff movants or establishing his legal authority and standing to sue on their behalf – as *custodian* for Accounts #3 and #4 and as *Manager of the General Partner of a limited liability partnership* for Account #1. ECF 24 at 20-22; ECF 29 at 1-2, 5-9. Yet, he failed to take ***any*** of those steps and instead chose to file a lead plaintiff motion for only *himself* in his *individual* capacity. *Id.*

Contrary to the Opposition at 3-4, NSHEPP did not "ignore" the case law that Mr. Frame belatedly cited in his lead plaintiff reply (and recites, in part, now) to justify his attempt to back-fill a *de facto* investor group into his original motion. Instead, NSHEPP explained that in those cases (*Vonage* and *Milestone*), the group was ***declared up front*** and the lead plaintiff motion was

made on behalf of **all its members**,[5] with the sole exception being *In re: Superior Offshore*, where there the court had **only one** lead plaintiff movant remaining before the court and, thus, the only alternative was to leave the class unrepresented. *See* ECF 32 at 18-19; ECF 32-1 at 3-7.

Mr. Frame could have pursued claims and filed his lead plaintiff motion in his custodial capacity for Accounts #3 and #4 and as the Manager of Vienna Forest Management, LLC, the General Partner of Vienna Forest LP for Account #1 – but he chose not to do so. He could have sought a lead plaintiff appointment for a declared "group" of investors, including Vienna Forest LP, his minor daughters, and himself – but he chose not to do so. Instead, he did not disclose the true owner of Account #1, Vienna Forest LP, which had losses of $151,474 (68% of the total he claimed) until his lead plaintiff opposition brief, when he falsely declared himself its "President." The identify of its General Partner, Vienna Forest Management, LLC, was not revealed until NSHEPP and Mr. Frame simultaneously did so in their lead plaintiff reply briefs, but it was NSHEPP that uncovered Mr. Frame's role as one of its co-equal "Members." These facts do not come close to satisfying the PSLRA standard for lead plaintiff appointment of an appropriate "group" of investors. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Mr. Frame chose to move for an *individual* lead plaintiff appointment, a choice to which he should be held.

---

[5] *See In re Vonage Initial Pub. Offering (IPO) Sec. Litig.*, No. 07-177 (FLW), 2007 WL 2683636, at *10-11 (D.N.J. Sept. 7, 2007) (granting lead plaintiff motion by the "Zyssman Group," consisting of a married couple and two investment companies, which declared its membership and aggregation of losses up front); *In re Milestone Sci. Sec. Litig.*, 183 F. R.D. 404, 418 (D.N.J. 1998) (granting lead plaintiff motion by the "Gintel Group," consisting of a married couple and two partnerships, two companies, and a fund, which declared its membership, the identities of the partnership's general partners, the identities of the companies' executive leadership, and the aggregation of losses up front).

7

As such, and for these additional reasons, NSHEPP respectfully submits that the Court Order committed error by crediting Mr. Frame, individually, with any losses above $37,035. *See* Memo at 1-2, 5-11, 15.

**Error # 3 – NSHEPP Is The "Most Adequate Plaintiff," Entitled To The PSLRA's Rebuttable Statutory Presumption, Based On Its Uncontested Losses Of $170,836 And Its Preferred Status As An Institutional Investor.** It is undisputed that NSHEPP's losses are $170,836, as the Court recognized. *See* ECF 33 at 2. Given that Mr. Frame's individual losses are only $37,035, that he chose to pursue his lead plaintiff motion in his individual capacity, that he passed up the opportunity to seek appointment of a lead plaintiff group, and that he cannot otherwise aggregate the losses arising from Accounts #1, #3, and #4, as discussed *supra*, NSHEPP's losses evidence its having the "largest financial interest" and entitlement to the PSLRA's statutory presumption as lead plaintiff. When coupled with its undisputed status as an institutional investor, specifically a pension fund, with significant securities litigation experience (ECF 18 at 2, 7-8, 12-14; ECF 24 at 3-4, 6-7, 13-16),[6] NSHEPP is the "most adequate plaintiff" under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc). Mr. Frame never produced proof of NSHEPP's inadequacy to represent the class. *See* ECF 24 at 13-14, 17.

---

[6] Mr. Frame calls NSHEPP, a sophisticated institutional investor with $8 billion+ in assets, a "professional plaintiff" because it has been appointed to lead *three* other securities fraud class actions on behalf of investors. *See* Opposition at 7 n.2. Once again, as discussed *infra*, he has misapplied the very statutes he seeks to enforce. The PSLRA has an express provision, which Mr. Frame ignores, aimed at restricting "professional plaintiffs," which is not even triggered unless a person or entity has served as a lead plaintiff in *more than five* securities class actions during a three-year period. *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi). So, the term "professional plaintiff" is *facially inapplicable*, by statute. That said, the argument by Mr. Frame – a newcomer to securities litigation – truly misses the point, in that it oddly seeks to somehow cast NSHEPP in a negative light, *e.g.*, for navigating an ongoing $1 billion class action lawsuit against McDermott International through its bankruptcy, past two motions to dismiss, and deep into discovery over five years.

8

Moreover, contrary to Mr. Frame's argument (Opposition at 7 n.2), as NSHEPP briefed during the lead plaintiff briefing, the PSLRA, as evidenced by its legislative history and a very extensive body of case law including many cases in the Seventh Circuit, ***does*** have an express, deeply rooted, and intentional preference for appointment of institutional plaintiffs, and particularly pension funds.  *See* ECF 24 at 2-3, 8-15.

Under these circumstances, NSHEPP respectfully submits that the Court Order erred by crediting Mr. Frame with losses over $37,035, assessing Mr. Frame's losses as exceeding those of NSHEPP, crediting Mr. Frame with the "largest financial interest," ignoring NSHEPP's status as an institutional investor with significant securities litigation experience, and failing to identify NSHEPP as the "most adequate plaintiff" and to appoint NSHEPP as the "member…of the purported plaintiff class" that is "most capable of adequately representing the interests of the class" pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(i).  *See* Memo at 2, 11-12, 15.

**Error # 4 – NSHEPP Presented Substantial Rebuttal Evidence That Mr. Frame Is Subject To A Broad Array Of Unique Defenses That Render Him Unable To Satisfy Fed. R. Civ. P. 23 And Represent The Class.**  As discussed *supra*, NSHEPP had to untangle Mr. Frame's false statements and misleading presentation of the facts and the law to reveal the truth about the five trading accounts he falsely listed as his own.  In doing so, NSHEPP uncovered that Mr. Frame is subject to extensive unique defenses regarding his standing and legal authority to pursue claims related to the losses in Accounts #1, #3, and #4 – from which flowed $187,711 (or ***84.3%***) of the $222,532.24 in losses he falsely claimed as his own – due to his noncompliance with Fed. R. Civ. P. 17(b)(3), TUTMA, Wisconsin law, the PSLRA, Fed. R. Civ. P. 23, and Article III of the U.S. Constitution.  *See* ECF 29 at 7, 10-12.  Significantly, Mr. Frame ***never disputed*** that point, even in his proposed sur-reply (ECF 31-1), which makes no mention of it.

9

As NSHEPP briefed, the PSLRA expressly states that the presumption favoring any lead plaintiff movant is rebuttable with proof that the presumptively most adequate plaintiff "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). *See* ECF 24 at 1, 21; ECF 29 at 1, 6-12. NSHEPP cited extensive case law where lead plaintiff movants claiming the largest losses were rejected because they sued in their individual capacity, causing courts to reduce their loss figures – by as much as 99% in one case - to disaggregate losses from accounts owned by others and/or to reject movants due to the considerable resources and distraction that would be occupied by their addressing unique defenses, to the class's detriment. *See* ECF 29 at 7-8, 9-12.

NSHEPP respectfully submits that the Court Order erred by failing to evaluate the unique defenses to which Mr. Frame is subject and the related costs and risks for class members if Mr. Frame defends against them while also trying to represent their interests. *See* Memo at 1-2, 6-7, 9-11, 15. It further erred in applying a pre-PSLRA articulation of the standard for Rule 23 adequacy in the class certification context (ECF 33 at 2 (citing *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993)), while ignoring the PSLRA's express provision for rebuttal evidence and the body of case law that NSHEPP cited applying it. *Id.*

**Error # 5 – NSHEPP Has, At Minimum, Established Entitlement To Discovery Under The PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iv).** Given the foregoing, NSHEPP argued in the lead plaintiff briefing that it has demonstrated a "reasonable basis" that Mr. Frame, even if credited with the statutory presumption, is incapable of representing the class, such that NSHEPP should be given discovery into Mr. Frame pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iv), particularly as regards the ownership of and his purported "full authority" over the investment accounts that formed the basis for his lead plaintiff motion. *See* ECF 24 at 1, 9, 26.

10

In the lead plaintiff briefing, Mr. Frame made only one short, conclusory statement, without any cited authority, that NSHEPP was not entitled to discovery. *See* ECF 22 at 6. Mr. Frame's Opposition makes only a passing reference to NSHEPP's request for discovery (ECF 37 at 3), lightly pointing to his own certification and declarations – which, as discussed *supra*, contained false statements – as being sufficient. These arguments lack substance or merit.

As such, NSHEPP respectfully submits that the Court Order committed error by failing to consider its timely request for discovery under 15 U.S.C. § 78u-4(a)(3)(B)(iv). *See* Memo at 2-3, 7, 14-15. NSHEPP respectfully submits that, on reconsideration, the Court either appoint NSHEPP to serve as lead plaintiff or else grant NSHEPP discovery into Mr. Frame, including his deposition, to be followed by further briefing on the lead plaintiff motions. *Id.* at 20.

**Error # 6 – Mr. Frame Repeatedly Misstated And Misapplied Applicable Damages Calculations Under the Securities Exchange Act Of 1934 – Missteps That He Himself Said Would Evidence A Disqualifying "Level Of Carelessness."** Throughout the lead plaintiff briefing, Mr. Frame repeatedly displayed a lack of grasp as to damages calculations under the Exchange Act, the very statute that gives rise to this lawsuit and the class-wide claims he seeks appointment to lead. To wit:

Mr. Frame's lead plaintiff opposition noted that a 90-day lookback period is used to calculate Exchange Act damages calculates damages "beginning on the date on which information correcting the misstatement or omission…is disseminated to the marketplace" and loudly declared that making even a one-day error in this calculation would demonstrate a disqualifying "level of carelessness." *See* ECF 22 at 8 (citing case law). He then accused NSHEPP of making such an error, by calculating the lookback period on "May 20, 2022 instead of May 19, 2022" and stating that the error spoke to NSHEPP's "carelessness." *Id.* Yet, as NSHEPP explained, incredibly, it

was *Mr. Frame* who *misunderstood* how the 90-day lookback worked and who *miscalculated* it by proposing to begin evaluating the *post-correction* stock price recovery on a date (May 19, 2022) that *predated* the only alleged corrective information. *See* ECF 29 at 14-15; ECF 32 at 11. Thus, under *Mr. Frame's own argument and cited authority*, regarding literally *the same single-day adjustment to the lookback date* that he himself referenced, <u>*he was the one who displayed disqualifying "level of carelessness,"*</u> because he did the calculation wrong! *Id.* Mr. Frame <u>*never*</u> argued to the contrary – not in his motion for leave to file a sur-reply (ECF 31), his proposed sur-reply (ECF 31-1), or his current reconsideration Opposition (ECF 37). He *ignored* NSHEPP's argument that the Court's failure to consider this "level of carelessness" was error justifying Rule 54(b) relief. *See* Opposition at 4-6. He has therefore waived any counter-argument.

Mr. Frame's ever-evolving "net gainer" (his term) argument fares even worse, no matter how many times he retools it and tries to cite supporting case law:

- <u>First</u>, in his lead plaintiff opposition, Mr. Frame said, "It is possible that NSHEPP's profits from the sale of shares purchased pre-class period outweigh its losses on shares purchased during the Class Period, and that NSHEPP therefore benefitted overall from the fraud alleged in this matter," and cited <u>*only*</u> to *In re Comdisco Sec. Litig.*, 150 F. Supp. 2d 943, 945-946 (N.D. Ill. 2001). *See* ECF 22 at 7-8. That was the *totality* of his argument. NSHEPP's reply explained why the argument lacked merit, because it used a first-in, first-out (FIFO) approach, with a long-term capital gains overlay, instead of the last-in, first-out (LIFO) loss calculation method favored by courts at the lead plaintiff stage, and because it lacked case law support to such an extent that even *Comdisco **did not support*** his argument and instead validated use of the LIFO methodology used by NSHEPP. *See* ECF 29 at 12-14. By contrast, Mr. Frame's reply brief (ECF 27) was *silent* as

to this argument, leaving intact the discredited presentation in his opposition, as the lead plaintiff briefing closed.

- Second, Mr. Frame later sought leave to file a proposed sur-reply, which described a "net gainer" (his term) argument that used *all* of NSHEPP's theoretical *capital gains* from sales of stock purchased pre-Class Period to conjure up an imaginary $180,000+ profit that he said should *all* be used to offset NSHEPP's $170,836 in losses from stock purchases *during the alleged fraud*. *See* ECF 31-1. This time, Mr. Frame *jettisoned* Comdisco and cited – for the first time in a proposed sur-reply brief – six new cases (*Scheller*, *Perlmutter*, *Plymouth Cty.*, *Bausch & Lomb*, *Deering*, and *Doshi*) that he claimed to be the "accepted body of law." *See* ECF 31-1 at 2-4. In opposing a sur-reply, NSHEPP again explained why his approach is nonsensical. *See* ECF 32 at 11-15. Boiled down, Mr. Frame incorrectly sought to use all raw profits (capital gains), if any, from NSHEPP's stock sales as a proposed offset to its losses arising from the fraud, but the maximum fraud inflation in Kohl's stock based on the operative complaint was capped at $5.84 per share, meaning even if NSHEPP had any fraud-related "profits" from selling 6,000 shares, they could be no higher than $35,040 – not the $180,000+ that Mr. Frame had previously calculated. *Id.* at 14. Moreover, all the cases Mr. Frame cited hinged on an investor being both a "net seller" of shares (*i.e.*, sold more than it bought) and a transactional "net gainer" (*i.e.*, Class Period sale proceeds exceed Class Period purchase expenses) during the Class Period. *Id.* at 13. By contrast, NSHEPP was facially a net *buyer*, not a net seller (as it bought 9,800 shares and only sold 6,000 shares) and it was a transactional net *loser* by having spent $207,690 more on stock than it made by selling stock. *Id.* at 14. Once again, Mr. Frame failed to find case law support that such an investor is subject to *any* offset.

•     <u>Finally</u>, in his reconsideration Opposition, Mr. Frame once again repackages (and rewrites) his argument by claiming "NSHEPP was required to offset recoverable losses with any profits attributable to the fraud." *See* ECF 37 at 4. Incredibly, he claims to have previously "presented substantial authority" for his "well-supported argument" but does not cite ***any*** of the cases presented in his lead plaintiff briefing (*Comdisco*) or even his proposed sur-reply (*Scheller*, *Perlmutter*, *Plymouth Cty.*, *Bausch & Lomb*, *Deering*, and *Doshi*). *See* ECF 37 at 3, 5. This time, his argument-in-search-of-support hinges on a new, third batch of cases (*Mednax*, *Ferreira*) – first presented in opposition to a reconsideration motion. To say the ship has sailed and we are now well past the point of waiver is an understatement, given that Mr. Frame first presented the argument, citing only *Comdisco*, four rounds of briefing ago.[7] He also argues that the PSLRA's "financial interest" assessment differs from Exchange Act damages calculations (ECF 37 at 5-6), but that argument not only is contradicted by the very cases he now cites (*see* n.7 *supra*), it also misses the point. Mr. Frame's persistent, evolving, untethered "offset" argument, which at one point overstated ***sixfold*** the maximum theoretical fraud-related "profit" that NSHEPP (or any other investor) could have possibly recognized on pre-Class Period stock ***conclusively demonstrates*** his fundamental lack of grasp on the appropriate methodologies to be used under the PSLRA and the Exchange Act to a dramatic and disqualifying extent.

---

[7]     Nevertheless, Mr. Frame's new authority is in harmony with NSHEPP's analysis set forth in ECF 32 at 11-15. The *Mednax* court framed the "damages" evaluation as out-of-pocket losses less any gain "because of artificial inflation at the time of sale," – *i.e.*, limited to only the gain resulting from fraud inflation. *Cambridge Ret. Sys. v. Mednax, Inc.*, No. 18-61572-CIV, 2018 WL 8804814, at *6 (S.D. Fla. Dec. 6, 2018). The *Ferreira* court only engaged in any offset analysis because the lead plaintiff movant there – unlike NSHEPP here – was a "net seller," meaning it sold more shares than it purchased. *Ferreira v. Funko, Inc.* No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *7 (C.D. Cal. June 11, 2020).

NSHEPP respectfully submits that the Court Order erred by failing to consider Mr. Frame's serious mischaracterizations of Exchange Act damages and failing to deem them disqualifying and precluding his appointment to serve as lead plaintiff.  *See* Memo at 2, 5-11, 15.

## Conclusion

For these additional reasons, NSHEPP respectfully requests that the Court grant its Motion, reconsider its Order (ECF 33), and either appoint NSHEPP to serve as lead plaintiff under the PSLRA or, alternatively, grant NSHEPP discovery, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iv), into competing movant Mr. Frame, as set forth in NSHEPP's briefs, to be followed by further briefing on the lead plaintiff motions.  NSHEPP also respectfully requests that the Court deny without prejudice Mr. Frame and the Defendants' joint motion for a scheduling order related to an amended complaint (ECF 38).  The relief requested in NSHEPP's reconsideration motion would either appoint NSHEPP as lead plaintiff in this Action outright or grant NSHEPP discovery under the PSLRA, to be followed by additional briefing regarding appointment of a lead plaintiff in this Action, making the joint scheduling motion premature under either outcome.

15

Dated:   June 29, 2023                    Respectfully submitted,

**POMERANTZ LLP**

*/s/ Matthew L. Tuccillo*

Matthew L. Tuccillo
(New York State Bar Number 5008750)
J. Alexander Hood II
(New York State Bar Number 5030838)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
mltuccillo@pomlaw.com
ahood@pomlaw.com

*Counsel for the Nova Scotia Health Employees'*
*Pension Plan and Proposed Lead Counsel for*
*the Class*

16