# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SEAN SHANAPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>          v.<br><br>KOHL'S CORPORATION, MICHELLE GASS, JILL TIMM, MICHAEL BENDER, PETER BONEPARTH, YAEL COSSET, CHRISTINE DAY, H. CHARLES FLOYD, ROBBIN MITCHELL, JONAS PRISING, JOHN E. SCHLIFSKE, ADRIANNE SHAPIRA, and STEPHANIE A. STREETER,<br><br>          Defendants. | Case No. 2:22-cv-01016-LA |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................................................1

II.    FACTUAL BACKGROUND ............................................................................2

     A.     The Defendants ...............................................................................2

     B.     Kohl's Develops and Announces a Strategic Plan.......................3

     C.     Macellum Attempts to Take Over Kohl's Board of Directors...............4

     D.     Macellum Launches a Second Takeover Attempt .......................5

     E.     Kohl's Fields Indications of Interest in a Potential Acquisition and Adopts a Shareholder Rights Plan........................................................5

     F.     Shareholders Reject Macellum's Slate of Proposed Directors ...............7

     G.     Kohl's Releases Q1 2022 Financial Results and Revised Guidance ......................8

     H.     Kohl's Enters Exclusive Negotiations with Franchise Group ...............8

     I.     Plaintiff Files This Lawsuit.........................................................9

III.   ARGUMENT...................................................................................................9

     A.     Plaintiff Fails to State a Claim Under Rule 10b-5(b) .................9

         1.     Plaintiff Fails to Plead a False or Misleading Statement or Omission .............................................................10

             a.     The Challenged Statements Were Not False or Misleading .........11

             b.     Many of the Challenged Statements Are Inactionable Statements of Corporate Optimism.................16

             c.     Many of the Challenged Statements Are Protected Forward-Looking Statements.............18

         2.     Plaintiff Fails to Plead a Strong Inference of Scienter.............................19

             a.     Plaintiff Fails to Plead Scienter as to Any Defendant or Statement With the Requisite Particularity....................................20

i

b. Plaintiff's Generic Allegations—Common to All Corporate Officers and Directors—Fail to Plead Scienter ............................21

c. The More Compelling Inference Is Good Faith, Not Fraud .........26

3. Plaintiff Fails to Plead Loss Causation .......................................................27

B. Plaintiff Fails to Plead "Scheme Liability" Under Rule 10b-5(a) and (c) .............28

C. Plaintiff Fails to State a Claim Under Rule 14a-9 ................................................29

D. Plaintiff Fails to State a Control Person Claim Under Section 20(a) ....................30

E. Plaintiff Fails to State a Claim Against the Non-Employee Board Members .......................................................................................................30

IV. CONCLUSION..........................................................................................................30

Case 2:22-cv-01016-LA    Filed 12/04/23    Page 3 of 38    Document 52

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*In re Allstate Corp. Sec. Litig.*,
2022 WL 2952816 (N.D. Ill. July 26, 2022)............................................................................12

*In re Alphabet Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ........................................................................................................29

*Amanda Acquisition Corp. v. Universal Foods Corp.*,
708 F. Supp. 984 (E.D. Wis. 1989)...........................................................................................15

*Arazie v. Mullane*,
2 F.3d 1456 (7th Cir. 1993) .......................................................................................................24

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th Cir. 2004) ...............................................................................................18, 19

*In re Bally Total Fitness Sec. Litig.*,
2007 U.S. Dist. LEXIS 12060 (N.D. Ill. Feb. 20, 2007) ..........................................................25

*Beck v. Dobrowski*,
559 F.3d 680 (7th Cir. 2009) .....................................................................................................30

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
2012 WL 1030474 (N.D. Ill. Mar. 27, 2012).............................................................................28

*In re Bristol-Myers Squibb Sec. Litig.*,
312 F. Supp. 2d 549 (S.D.N.Y. 2004)........................................................................................22

*City of Livonia Emps.' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
711 F.3d 754 (7th Cir. 2013) ...............................................................................................9, 20

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
468 F. Supp. 3d 1048 (E.D. Wis. 2020) (Adelman, J.)........................................................10, 16

*City of New Orleans Employees' Ret. Sys. v. PrivateBankcorp, Inc.*,
2011 WL 5374095 (N.D. Ill. Nov. 3, 2011) ..............................................................................30

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
8 F.4th 592 (7th Cir. 2021) .................................................................................................17, 18

*Conlee v. WMS Indus., Inc.*,
2012 WL 3042498 (N.D. Ill. July 25, 2012)..............................................................................29

iii

*Cornielsen v. Infinium Cap. Mgmt.*,
LLC, 916 F.3d 589 (7th Cir. 2019) ..............................................................24, 30

*Dixon v. ATI Ladish LLC*,
667 F.3d 891 (7th Cir. 2012) ................................................................................13

*Dixon v Ladish Co., Inc.*,
785 F. Supp. 2d 746 (E.D. Wis. 2011) ............................................................12, 13

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ......................................................................................14, 27

*Eisenstadt v. Centel Corp.*,
113 F.3d 738 (7th Cir. 1997) ................................................................................17

*Fryman v. Atlas Fin. Holdings, Inc*.,
462 F. Supp. 3d 888 (N.D. Ill. 2020) ....................................................................22

*Fulton Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.*,
2010 WL 5095294 (E.D. Wis. Dec. 8, 2010) ........................................................17

*Gallagher v. Abbot Labs*,
269 F.3d 806 (7th Cir. 2001) ................................................................................15

*Gillis v. ORX Pharma Ltd*.,
197 F. Supp. 3d 557 (S.D.N.Y. 2016) ..................................................................21

*Glaser v. The9, Ltd*.,
772 F. Supp. 2d 573 (S.D.N.Y. 2011) ..................................................................23

*In re Harley-Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wis. 2009) ......................................................19, 24, 30

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ..........................................................................11, 15

*Himmel v. Bucyrus Int'l, Inc*.,
2014 WL 1406279 (E.D. Wis. Apr. 11, 2014) ......................................................29

*In re Initial Pub. Offering Sec. Litig.*,
399 F. Supp. 2d 261 (S.D.N.Y. 2005) ..................................................................28

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ................................................................................22

*Kuebler v. Vectren Corp.*,
13 F.4th 631 (7th Cir. 2021) ................................................................................27

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  437 F.3d 588 (7th Cir. 2006) ..................................................................................10

*Malin v. XL Cap. Ltd.*,
  499 F. Supp. 2d 117 (D. Conn. 2007).......................................................................26

*In re Midway Games, Inc. Sec. Litig.*,
  332 F. Supp. 2d 1152 (N.D. Ill. 2004) .....................................................................17

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)..................................................................................................12

*In re Omnicom Grp., Inc. Sec. Litig.*,
  541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) ............27

*Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*,
  2013 WL 3154116 (E.D. Wis. Jun. 21, 2013) ..........................................................18

*Pipefitters Loc. No. 636 Defined Benefit Plan v. Tekelec*,
  2013 WL 1192004 (E.D.N.C. Mar. 22, 2013) ..........................................................25

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
  673 F. Supp. 2d 718 (S.D. Ind. 2009) ......................................................................24

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
  679 F.3d 952 ............................................................................................................21

*Pugh v. Tribune Co.*,
  521 F.3d 686 (7th Cir. 2008) ...............................................................19, 20, 27, 30

*Roth v. OfficeMax, Inc.*,
  527 F. Supp. 2d 791 (N.D. Ill. 2007) .......................................................................25

*In re Sara Lee Corp. Sec. Litig.*,
  2006 WL 1980199 (N.D. Ill. July 10, 2006)............................................................28

*SEC v. Bluepoint Inv. Couns., LLC*,
  2021 WL 719647 (W.D. Wis. Feb. 24, 2021)...........................................................12

*Sneed v. AcelRx Pharms., Inc.*,
  2022 U.S. Dist. LEXIS 176319 (N.D. Cal. Sept. 28, 2022) .....................................29

*Stavros v. Exelon Corp.*,
  266 F. Supp. 2d 833 (N.D. Ill. 2003) .......................................................................18

*Tellabs, Inc. v. Makor Issues & Rights, LTD.*,
  551 U.S. 308 (2007)..................................................................................................19

*Vaitkuviene v. Syneos Health, Inc.*,
 2021 WL 3856452 (E.D.N.C. Aug. 30, 2021), *aff'd sub nom. San Antonio
 Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232 (4th Cir.
 2023) ................................................................................................................26

*Van Noppen v. Innerworkings, Inc.*,
 136 F. Supp. 3d 922 (N.D. Ill. 2015) ..........................................................26

*Water Island Event-Driven Fund, LLC v. Trib. Media Co.*,
 39 F.4th 402 (7th Cir. 2022) .......................................................................23

*Yates v. Mun. Mortg. & Equity, LLC*,
 744 F.3d 874 (4th Cir. 2014) .......................................................................27

## STATUTES

15 U.S.C.
 § 78u-4(b)(1) ................................................................................................10
 § 78u-4(b)(2) ..........................................................................................19, 20
 § 78u-4(b)(2)(A) ....................................................................................20, 21
 § 78u-5(i)(1)(B), (D) ....................................................................................18
 § 78u-5(c)(1)(A)(i) .......................................................................................18

Wis. Stat.
 180.155 ..........................................................................................................15
 180.0624 ........................................................................................................15

## RULES

Rule 9(b) .................................................................................................................29

Rule 10b–5 ...............................................................................................19, 29, 30

Rule 10b-5(a) .........................................................................................................29

Rule 10b-5(a) and (c) ...........................................................................................28

Rule 10b-5(b) .......................................................................................................9, 29

Rule 14a-9 ..........................................................................................................29, 30

## I.    INTRODUCTION

Lead Plaintiff Thomas Frame ("Plaintiff") does not agree with Kohl's Corporation's ("Kohl's") recent strategy.  That much is clear.  But Plaintiff's disagreement with Kohl's business decisions does not mean that Kohl's, its officers, or its directors engaged in securities fraud.

In late 2020, as the world worked to address the COVID-19 pandemic and the uncertain climate it generated, Kohl's management announced a new strategic plan for the company (the "Strategic Plan").  Over the course of 2021, following implementation of the Strategic Plan and the nation's emergence from the pandemic, Kohl's delivered strong results.  Revenues rose, earnings increased, and the outlook for Kohl's was positive.

During this time, a group led by activist investor Macellum Advisors GP, LLC ("Macellum") mounted a proxy fight against Kohl's then-existing board of directors ("Board") and management.  Macellum publicly disparaged Kohl's execution of the Strategic Plan and the Board's consideration of a potential sale of Kohl's, as Macellum sought shareholder approval of its efforts to extricate and supplant the Board.  These attacks failed.  In a May 2022 proxy vote, Kohl's shareholders rejected Macellum's contentions in favor of Kohl's Board and management.

Now Plaintiff purports to represent those same shareholders in a last-ditch effort to resuscitate Macellum's rejected contentions and to impose liability on Kohl's, its Board, and its management for making truthful statements about Kohl's Strategic Plan and decisions about the management of the company and acquisition offers that, in their business judgment, were best for Kohl's and its shareholders.  In particular, Plaintiff parrots Macellum's challenges to Kohl's statements about (1) its Strategic Plan, (2) the Board's consideration of expressions of interest in a potential sale of the company, and (3) Kohl's financial performance as of April and May 2022.  But Plaintiff's parroted accusations do not include facts that render any of the challenged statements false or misleading, much less facts that contradict the statements Kohl's and its

1

executives made on any of these topics. Kohl's statements about its Strategic Plan were entirely true. And while Plaintiff may have liked Kohl's to release results earlier and provide more information on the sale process, Kohl's had no independent duty to provide real-time updates on a financial quarter in progress or on the Board's consideration of a potential sale process. None of the statements Kohl's and its executives made was false, and none triggered a duty to say more than it did. Moreover, many of the challenged statements are not even actionable under the federal securities laws because they are either generic statements of corporate optimism or protected forward-looking statements. Neither can support a securities claim as a matter of law.

Even if Plaintiff had identified an actionable misstatement or omission (he has not), he falls far short of his heavy burden to plead with particularity that any Defendant acted with intent or deliberate recklessness to defraud investors. Not only does the complaint improperly lump all Defendants together, it lacks any whistleblower allegations, insider stock sales, restated financials, or other facts typically alleged in securities fraud complaints that survive dismissal.

Finally, Plaintiff's allegations do not establish that statements about the Strategic Plan caused him (or anyone else) losses, providing yet another independent ground for dismissal based on those statements. Accordingly, dismissal with prejudice of all claims is warranted.

## II. FACTUAL BACKGROUND

### A. The Defendants

Kohl's is a leading omnichannel retailer headquartered in Menomonee Falls, Wisconsin, with more than 1,100 stores in 49 states that employed approximately 97,000 associates as of 2022. AC ¶¶ 12, 29.[1] Defendants Michelle Gass and Jill Timm served, respectively, as the CEO and

---

[1] Unless otherwise indicated, internal citations and quotations are omitted, and emphasis is added. Citations to "Ex. _" refer to exhibits attached to the Declaration of Jordan Cook, filed herewith, and citations to "AC ¶ _" refer to paragraphs in the Amended Complaint.

2

CFO of Kohl's during the putative class period (August 19, 2021, to July 1, 2022). AC ¶¶ 13-14. Defendants Michael Bender, Peter Boneparth, Yael Cosset, Christine Day, H. Charles Floyd, Robbin Mitchell, Jonas Prising, John E. Schlifske, Adrianne Shapira, and Stephanie A. Streeter each served as members of the Board during all or part of the class period. *Id.* ¶¶ 15-24.

### B. Kohl's Develops and Announces a Strategic Plan

The COVID-19 pandemic took hold in the United States in March 2020, and had a significant impact on many industries, including the retail industry. Ex. A (2020 Form 10-K) at 22. Kohl's was no exception. It closed its stores, furloughed 85,000 store and distribution center associates, experienced a significant decline in sales demand, and continued to suffer lasting effects from the pandemic, including loss of store traffic. *Id.*

On October 20, 2020, months after the pandemic started, Kohl's announced the Strategic Plan—a plan to drive top-line growth and expand operating margin to create long-term shareholder value in the new, post-pandemic era. AC ¶ 29-30; *see also* Ex. B (Oct. 20, 2020 presentation) at 5. To accomplish its vision to be "the most trusted retailer of choice for the active and casual lifestyle," Kohl's announced that it would focus on three key areas: (1) be the "[d]estination for active, casual, and beauty"; (2) "[l]ead[] with loyalty and value through [a] best-in-class rewards program"; and (3) offer a "[d]ifferentiated omnichannel experience" that is "easy and inviting, no matter how customers want to shop." AC ¶¶ 29, 117; Ex. B at 9. As part of its Strategic Plan, Kohl's set to expand its operating margin by transforming its supply chain, optimizing sourcing and expenses, and leveraging its core discipline of "operational excellence." Ex. B at 10. Investors approved of the Strategic Plan, as Kohl's stock price rose by 4.9% on the day of the announcement.

Throughout the Class Period, Kohl's management implemented the Strategic Plan, entering into and executing on key partnerships with major brands, including popular beauty retailer, Sephora. AC ¶ 142; Ex. C (2022 Proxy Statement) at 5, 23, 55. That partnership alone caused

Kohl's beauty sales to increase by 90% in the fourth quarter of 2022. AC ¶ 67; Ex U (March 22, 2023 press release).

### C.  Macellum Attempts to Take Over Kohl's Board of Directors

On February 22, 2021, a group of activist investors (the "Activist Group"), including Macellum, published a letter criticizing Kohl's Strategic Plan, among other things. AC ¶ 30. In the letter, the Activist Group announced the nomination of a controlling slate of nine proposed directors for election to the Board. *See id.*

In response, Kohl's issued a statement reaffirming its commitment to engaging with all shareholders and emphasizing that the Board remained "open to new ideas." Ex. D (Feb. 22, 2021 press release) at 7. Kohl's rejected the Activist Group's attempt to seize control of the Board and noted that Kohl's was "well underway in implementing a strong growth strategy." *Id.* Kohl's further highlighted that the Strategic Plan already incorporated several initiatives proposed by the Activist Group and received a positive analyst and market reaction. *Id.*; AC ¶ 33. Kohl's made clear that it made investments focused on its retail "store base" and "store experience" designed to focus on customers who shop both in-store and online ("omnichannel" customers). Ex. D at 8.

On April 14, 2021, Kohl's announced that it had reached an agreement with the Activist Group to address its concerns and to end the distraction created by the proxy contest so Kohl's management could focus on Kohl's business. *See* Ex. E (Apr. 14, 2021 press release) at 6; AC ¶ 36. The Activist Group would nominate two directors to Kohl's Board (and approve another),[2] and Kohl's would form a standing Finance Committee that included one of the directors nominated by the Activist Group. *See* AC ¶ 36. In exchange for these concessions, the Activist Group entered into a standstill agreement with Kohl's, prohibiting it from engaging in further proxy contests and

---

[2] Neither of the two directors nominated by the Activist Group and added to the Board as a result of the agreement were named as defendants in the Amended Complaint.

4

other similar conduct until January 12, 2022. *See id.* ¶ 39. The Activist Group stated that it was "confident these changes will help further our shared goal of creating long-term value" and was "excited for the future at Kohl's." Ex. E at 6.

### D. Macellum Launches a Second Takeover Attempt

On January 18, 2022, eleven months after its first attempt and six days after the expiration of the standstill period, Macellum announced that it intended to engage in yet another proxy contest by nominating its own slate of directors for election at the 2022 annual shareholder meeting scheduled for May 10, 2022. *See* AC ¶ 41. Macellum stated that it believed Kohl's existing Board (with three Macellum-approved directors) would fail to deliver acceptable value creation in the future, "suspect[ed]" there were entities interested in buying Kohl's, and "heard" that the Board and its representatives had rebuffed overtures from potential buyers. *Id*. ¶ 42.

Kohl's responded later that same day expressing "confiden[ce] in [the] future" and its belief that "continued execution of [the Strategic Plan] will position [Kohl's] to further improve [its] overall performance." Ex. F (Jan. 18, 2022 press release) at 1. The statement expressed disappointment with the "unfounded speculation" in Macellum's letter that the Board had rebuffed potential buyers. *Id.*; AC ¶ 43.

### E. Kohl's Fields Indications of Interest in a Potential Acquisition and Adopts a Shareholder Rights Plan

On January 21, 2022, the Wall Street Journal reported that earlier that day, Acacia Research expressed interest in acquiring Kohl's for $64 per share. *See* AC ¶ 45. The next day, the New York Times reported that Kohl's had received a second indication from Sycamore Partners at $65 per share. *Id*. In response to these press reports, Kohl's promptly issued a statement on January 24, 2022, confirming that multiple outside entities had expressed interest in acquiring the company. *See* Ex. G (Jan. 24, 2022 press release) at 1. Kohl's further advised investors that it

5

would not issue further public comment on the expressions of interest unless it determined that doing so was in the best interests of the shareholders. *See id.*

On February 4, 2022, Kohl's announced that its Board had reviewed the expressions of interest with its financial advisor and determined that the preliminary offers did not adequately reflect Kohl's value. Ex. H (Feb. 4, 2022 press release) at 8; AC ¶ 51. However, it also "indicat[ed] that Kohl's had not foreclosed on the idea of a future sale." AC ¶ 51. Instead, the Board publicly committed to continue reviewing expressions of interest and tasked the Finance Committee, together with its financial advisors, to do so. *See* Ex. H at 8. The Board also announced the adoption of a limited-duration shareholder rights plan to enable a fair and orderly review process. *See id.*; AC ¶¶ 52-53. Notably, the plan did not preclude shareholders from voting out existing directors and included "several shareholder-friendly features, including an ability for shareholders to call a special meeting for purposes of exempting a 'qualifying offer.'" Ex. H at 9.

On February 10, 2022, Kohl's issued a statement regarding Macellum's nomination of its own slate of proposed directors and criticism of Kohl's handling of potential acquirers' expressions of interest in acquiring Kohl's. *See* Ex. I (Feb. 10, 2022 press release) at 4-6. Kohl's noted that the review of expressions of interest was being conducted by the very committee previously formed at Macellum's request and that the preliminary offers it had received were well below Macellum's own past determination that Kohl's was worth "at least $100 per share." *Id.* at 4.

On Kohl's March 1, 2022 Earnings Call and during its March 7, 2022 Investor Day, Kohl's and its executives provided information concerning its strategic initiatives and plans, *see* AC ¶¶ 62-63, and, consistent with prior statements (and as is customary), declined to comment on the sales process. Kohl's reported "all-time record earnings per share" in 2021 and announced that it had met its margin goals ahead of schedule. Ex. J (March 1, 2022 press release) at 5.

On March 21, 2022, Kohl's updated the investing community regarding the "Board of Directors' ongoing review of expressions of interest in acquiring [Kohl's]," stating that the Board had received acquisition proposals that were "preliminary," "non-binding," and "without committed financing," and had "authorized Goldman Sachs to coordinate with select bidders who have submitted indications of interest to assist with further due diligence so that they have the opportunity to refine and improve their proposals and include committed financing and binding documentation." Ex. K (March 21, 2022 press release) at 4; AC ¶ 66.

As news outlets reported on additional expressions of interest in April, Kohl's issued public filings on April 13 and April 29, 2022, that confirmed the acquisition proposals were "preliminary" and "non-binding" and stated that select bidders were being asked to "refine their offers and secure financing," and had "been given access to a data room containing over 55,000 documents with more than 550,000 pages" to facilitate this preliminary diligence process. AC ¶¶ 71, 73. The April 29, 2022 filing further noted that changing the membership of Kohl's Board in the middle of its deliberations and negotiations with potential buyers could "disrupt[] or hinder[]" the sale process—a concern amplified by a leading proxy advisor. *Id.* ¶¶ 73-74.

**F.      Shareholders Reject Macellum's Slate of Proposed Directors**

As Kohl's evaluated how best to respond to the preliminary indications of interest it had received, it used presentations to investors to rebut Macellum's contention that Kohl's Board was ill-situated to drive value. Kohl's highlighted that the Strategic Plan delivered record EPS and margin improvement in 2021, along with over $1.5 billion for shareholders in the form of share repurchases and dividends. Ex. L (April 21, 2021 investor deck) at 68. Kohl's also highlighted the qualifications and experience of its directors, including that the Board had been "refreshed" with six new independent directors in the past three years. *Id.*

On May 11, 2022, Kohl's shareholders voted overwhelmingly to re-elect Kohl's thirteen Board members and reject the alternative slate of directors nominated by Macellum. AC ¶ 78.

## G.     Kohl's Releases Q1 2022 Financial Results and Revised Guidance

On May 19, 2022, Kohl's released its financial results for the first quarter of its 2022 fiscal year, ending on April 30, 2022. Kohl's reported decreases in its revenue and operating income in the quarter and revised its full-year financial guidance downward. AC ¶ 80.

On an earnings call later that day, Ms. Timm stated: "Following a strong start to the quarter with positive low-single digits comps through late March, sales considerably weakened in April as we encountered macro headwinds related to lapping last year's stimulus and an inflationary consumer environment." *Id.* ¶ 82; Ex. M (May 19, 2022 press release) at 5. On the same call, Ms. Gass stated that the consideration of preliminary expressions of interest in acquiring Kohl's was ongoing and that the company had "formally communicated to the multiple parties in our process the specific procedures for the submission of actionable bids in the coming weeks." AC ¶ 81. The market's reaction to Kohl's release of financial results and its corresponding earnings call was *positive*, as "[Kohl's] stock price increased slightly after the earnings call." *Id.* ¶ 83.

## H.     Kohl's Enters Exclusive Negotiations with Franchise Group

On June 6, 2022, Kohl's announced that Franchise Group, Inc. ("Franchise Group") had agreed to enter into "exclusive negotiations" with Kohl's to acquire the company. Ex. N (June 6, 2022 press release) at 5; AC ¶ 88. The press release explicitly warned investors that "[t]here can be no assurances that any agreement will be reached or that a transaction will be agreed or completed on the terms set forth above or otherwise," and that Kohl's would "have no further comment until an agreement is reached or the discussions are terminated." Ex. N at 5.

On June 22, 2022, the press reported that Franchise Group was reconsidering its proposal to buy Kohl's. *See* AC ¶ 93. According to a published analyst report available to the public and

8

cited in the Amended Complaint, although Kohl's would "fit[] well within [Franchise Group's] core strategy," external risks had recently emerged that threatened the viability of the transaction, including "the state of the current retail environment as inflation pressures disposable income" and the financing environment "following challenging market conditions and volatility." *Id.* ¶ 90.

On July 1, 2022, Kohl's announced it was concluding its sales review process. Ex. O (July 1, 2022 press release) at 9; AC ¶ 94. Kohl's and its Board Chair noted that the company and its experienced financial advisor, Goldman Sachs, had engaged with more than twenty-five parties "in an exhaustive process," but at the end of the day emerged with a proposal from a single bidder that undervalued Kohl's and lacked "definitive financing arrangements" that would be necessary to consummate even this proposed transaction. Ex. O at 9. Kohl's reported that in light of the external forces impacting the entire financing and retail markets, "the Board determined that it simply was not prudent to continue pursuing a deal." *Id.*

## I. Plaintiff Files This Lawsuit

On September 2, 2022, a shareholder initiated this case, asserting claims for violation of federal securities laws in connection with statements regarding Kohl's financial performance and review of acquisition proposals. Plaintiff filed the Amended Complaint on October 19, 2023.

## III. ARGUMENT

### A. Plaintiff Fails to State a Claim Under Rule 10b-5(b)

Plaintiff asserts claims against all Defendants under Rule 10b-5(b), but fails to meet his "heavy" burden to allege facts sufficient to plead these claims under the PSLRA. *City of Livonia Emps.' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 757 (7th Cir. 2013). Specifically, Plaintiff fails to plead particularized facts showing that any Defendant made a material misstatement or omission (§ III.A.1) with scienter (§ III.A.2) that caused loss to Kohl's investors (§ III.A.3). His claims must be dismissed.

### 1. Plaintiff Fails to Plead a False or Misleading Statement or Omission

The PSLRA creates a heightened pleading standard for securities fraud claims. *City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1055 (E.D. Wis. 2020) (Adelman, J.). Under the PSLRA, to plead a false statement of material fact, Plaintiff must "specify each statement that is allegedly misleading, the reasons why it is so, and, if based on information and belief, what specific facts support that information and belief." *Id.* (quoting *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006) (citing 15 U.S.C. § 78u–4(b)(1))). The specific facts alleged must "support a reasonable belief as to the misleading nature of the statement or omission." *A.O. Smith Corp.*, 468 F. Supp. 3d at 1055.

Plaintiff has alleged that Defendants made three sets of material misrepresentations or omissions that operated to artificially inflate the price of Kohl's stock. *First,* Plaintiff challenges statements by Kohl's and its management that mention its October 2020 Strategic Plan made in earnings calls, press releases, and letters to shareholders in 2021 and 2022. AC ¶¶ 109-27. On certain of those calls, Plaintiff contends Ms. Gass and Ms. Timm improperly attributed success to the Strategic Plan, concealing that Kohl's success owed more to the emergence from the pandemic and other macroeconomic factors. *See, e.g., id.* ¶ 109. *Second*, Plaintiff challenges statements regarding Kohl's sale process during the first half of 2022, including statements regarding valuation and maximizing value for Kohl's shareholders and the bidding process. *Id.* ¶¶ 131-38. *Third*, Plaintiff contends assertions about Kohl's business made in April and May 2022 were false or misleading because they did not prematurely disclose poor results in April 2022. *Id.* ¶¶ 139-51.

But as explained below and detailed in a chart appended to this pleading, *see* App'x A, Plaintiff's allegations do not come close to meeting his burden under the PSLRA to plead falsity for three reasons: (a) Plaintiff fails to plead facts sufficient to show that any of the challenged statements were materially false or misleading when made, (b) many of the challenged statements

10

are inactionable statements of corporate optimism (or "puffery"), and (c) many of the challenged statements were forward-looking statements protected by the PSLRA's safe harbor.

### a. The Challenged Statements Were Not False or Misleading

#### (1) Statements Regarding Kohl's Strategic Plan Were Not False or Misleading

Plaintiff asserts that statements regarding execution of the Strategic Plan were false or misleading because they concealed from investors the two true causes of Kohl's success: (1) "customers returning to shopping in person because as the COVID-19 vaccination became more widely available," and (2) "increased retail spending due to the stimulus checks the U.S. Government began sending out in March 2021." AC ¶¶ 112, 116, 118; App'x A at 1-21. But Kohl's did not conceal these factors at all. *First*, the general impact of COVID-19 and the stimulus on consumer spending was well-known. Plaintiff himself cites contemporaneous public sources for information about COVID-19 and the stimulus plan he contends Kohl's concealed. *See id.* ¶ 118 nn. 16-17 (citing U.S. government and McKinsey releases). *Second*, even the specific statements Plaintiff challenges acknowledged these macroeconomic factors—as Ms. Gass advised, "the favorable industry has only amplified our performance," and Ms. Timm similarly stated that "we did take advantage of a great market." *Id.* ¶ 111. In light of these public statements, Plaintiff cannot credibly contend that Defendants concealed the effects of the pandemic or the stimulus on its business. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007) ("The securities laws do not require firms to 'disclose' information that is already in the public domain."). Plaintiff's argument that a March 31, 2022 letter to shareholders was misleading because it cited the increase in Kohl's share price without specifically attributing that increase to the subsiding of the pandemic (AC ¶¶ 121-23) fails for similar reasons. *In re Allstate Corp. Sec. Litig.*, 2022 WL

11

2952816 (N.D. Ill. July 26, 2022) (denying duty to supplement accurate financial information).[3]

**(2)   Statements Regarding Valuation and Potential Sale of the Company Were Not False or Misleading**

The second set of statements Plaintiff challenges relates to Kohl's value and offers to acquire the Company during the class period, claiming that the Board overvalued the Company. *See* AC ¶¶ 131-38; App'x A at 22-31. Yet "any statement[s] of valuation" are "'opinions' insofar as they cannot be definitively proven to be true or false." *SEC v. Bluepoint Inv. Couns., LLC*, 2021 WL 719647, at *16 (W.D. Wis. Feb. 24, 2021). And these statements of opinion are inactionable under the federal securities laws unless Plaintiff alleges, with particularity, that either (1) the maker of the statement did not sincerely believe the opinion; or (2) the opinion did not "fairly align[] with the information in the issuer's possession at the time." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015). Plaintiff here alleges neither. He does not allege any particularized facts establishing that the Board did not sincerely believe that the initial expressions of interest in Kohl's undervalued the Company. Nor does he allege facts that the Board's opinion did not fairly align with the information the Board had at the time the statements were issued—in fact, he alleges nothing at all about what the Board did or did not consider in assessing Kohl's value. *See Dixon v Ladish Co., Inc.*, 785 F. Supp. 2d 746, 756 (E.D. Wis. 2011) (dismissing 10b-5 claim related to merger disclosures where plaintiff never "explains what statements are false or misleading as a result of the complained-of omissions, nor why they become misleading as a result").[4] Indeed, Kohl's disclosures make clear that the Board diligently

---

[3] Plaintiff's contention that the shareholder returns Kohl's reported were made misleading by the peer group used to estimate Kohl's "hypothetical undisturbed share price" (AC ¶ 122) also fails, as Kohl's disclosed the set of peers it used to set this price. Ex. R (Mar. 31, 2022 letter) at 7 n.ii.

[4] Instead, Plaintiff points to the stock price and certain analyst price targets, and concludes—with no additional support—that because potential buyers offered a premium over Kohl's stock price, it must mean that those offers accurately valued Kohl's. AC ¶ 133. But as Plaintiff acknowledges,

12

collected and relied on advice from Goldman Sachs when valuing the Company. AC ¶ 137.

Plaintiff next contends that Defendants were required to disclose to investors the amount for which they would be willing to sell Kohl's—ostensibly so Plaintiff can now determine, with the benefit of hindsight, whether that valuation was reasonable or would "maximize the value to shareholders." *Id.* That is not the law. As a preliminary matter, Board decisions regarding bids to acquire a company are protected by the business judgment rule, which allows Kohl's directors to make decisions in the best interests of the corporation and its shareholders without being second-guessed. *Id.* §§ 180.0827; 180.0828(1). This business judgment rule also tasks Kohl's directors—not shareholders—to decide whether to disclose certain information during a potential sale process. *See Dixon v. ATI Ladish LLC*, 667 F.3d 891, 895 (7th Cir. 2012) ("Most businesses hold a great deal of information…that is simultaneously material to the value of shares and more valuable if secret than if disclosed. Directors must decide whether investors will gain more from secrecy or disclosure."). Here, Kohl's promptly disclosed the sale process and details of bids received. *See, e.g.*, AC ¶¶ 131-32, 134, 137. It had no obligation to disclose more, and therefore, did not mislead shareholders by not doing so. *See Dixon*, 785 F. Supp. 2d at 749.

Plaintiff challenges two other statements regarding the timing of bids for Kohl's (AC ¶¶ 130, 131; App'x A at 22-23) and Kohl's shareholder rights plan (*id.*), but fails to plead facts showing either statement is false or misleading. On January 18, 2022, Macellum reported that it heard the Kohl's Board had "been approached and *rebuffed overtures* from credible buyers." AC ¶ 128. That same day, Kohl's called the report "unfounded speculation." *Id.* ¶ 129. Then three days later, news outlets began reporting after market close that Kohl's received bids that day (*id.*

---

Kohl's considered other factors relevant to its worth when considering offers, including its future growth potential and cash flow generation. *Id.* ¶ 132. Even Macellum—the activist on whom Plaintiff so heavily relies—stated that it thought Kohl's was worth $100 per share. Ex. I at 4.

¶ 130), and on the next business day, Kohl's issued a press release confirming receipt of letters of interest from potential acquirers (*id.* ¶ 131). These allegations do not render Kohl's January 18 statement false. *First*, Plaintiff does not (and cannot) allege that Kohl's had "rebuffed overtures" on January 18—or facts showing that Macellum's accusation was anything other than "unfounded speculation." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (securities fraud claims must "set forth the facts 'on which a belief' that a statement is misleading was 'formed'"). *Second*, this timeline is entirely consistent with Kohl's prompt reporting that it had received letters of interest. *E.g.*, Ex. K at 4. Plaintiff's own allegations confirm prompt and proper disclosure.

Plaintiff also takes issue with Kohl's statement that the shareholder rights plan "does not preclude the Board from considering an offer that recognizes the value of the Company," claiming it was designed to "chill buyer interest in the Company and prevent any unsolicited bids." AC ¶ 134. Plaintiff's claim is wrong. *First,* Plaintiff points to no language in the rights plan that would preclude the Board from receiving, considering, or accepting an offer, or indicating that the Board could not terminate the rights plan in the face of an offer which, in the Board's business judgment, fairly valued Kohl's. *See generally* AC. Nor can he; the rights plan has no such language. *See* Ex. H at 9. *Second,* the Complaint has no particularized facts showing that the rights plan prevented Kohl's Board from running a robust sales process. To the contrary, it cites examples of the Board taking bids for Kohl's seriously, and affirmatively exploring potential bids from third parties who had not made offers for Kohl's (including retaining Goldman Sachs to advise on the sales process). *See, e.g.,* AC ¶ 137 (Ms. Gass noting the Board "formally communicated…the specific procedures for the submission of actionable bids"); *id.* ¶ 143 (disclosing additional bid in April 2022). *Third*, Plaintiff's suggestion that Defendants concealed improper conduct by the Board ignores that the Board's "adoption of the rights plan as a defensive mechanism to combat

hostile tender offers is a valid exercise of its business judgment to be protected by the business judgment rule." *Amanda Acquisition Corp. v. Universal Foods Corp.*, 708 F. Supp. 984, 1008 (E.D. Wis. 1989) (citing Wis. Stat. 180.155, repealed and recodified at Wis. Stat. 180.0624).

### (3) Statements Regarding Kohl's Performance Were Not False or Misleading

Plaintiff contends that statements in April and May 2022 regarding the past performance of Kohl's and its Board were false or misleading because they did not incorporate real-time information about revenue and earnings for April 2022. App'x A at 32-39. These allegations fail.

*First*, companies and their officers do not have a duty to update their financial reports between reporting periods. As the Seventh Circuit made clear in *Baxter International:*

> As for the contention that Baxter should have disclosed the news in June 2004 or the first half of July, rather than on July 22: what rule of law requires 10-Q reports to be updated on any cycle other than quarterly? That's what the "Q" means. Firms regularly learn financial information between quarterly reports, and they keep it under their hats until the time arrives for disclosure.

495 F.3d at 760 (affirming dismissal of claims challenging failure to disclose adverse information between 10-Qs). Nor is there any obligation to continuously update disclosures with preliminary financial information. *See Gallagher v. Abbot Labs*, 269 F.3d 806, 808 (7th Cir. 2001) ("[T]hat is not the way the securities laws work. We do not have a system of continuous disclosure."). Ms. Gass stated in late May that "[w]hile the quarter started off with positive low single-digits comp growth through late March, *in April*, demand considerably weakened." AC ¶ 139; Ex. P at 5 (May 19, 2022 earnings call transcript) at 5. Ms. Timm echoed that "sales 'considerably weakened *in April* … which resulted in a 5% decrease in net sales to last year." AC ¶ 139; Ex. P at 13. On the back of these "admissions"—timely made in connection with Kohl's Q1 2022 earnings release— Plaintiff infers that statements made on April 13, 21, and 29 were misleading because they failed

15

to account for Q1 2022 sales data.[5]  Not so.  These statements attributable to Ms. Gass and Ms. Timm in May "admit" only that sales growth slowed in that month—not earlier.

*And second*, the April 21 and April 29 statements that Plaintiff says falsely "indicated positive financial results" (AC ¶ 141) contained accurate ***historical*** financial results and made no representations about the first quarter of 2022.  The phrases Plaintiff cherry-picks from a sixty-three-page April 21, 2022 presentation include "a consistent 7% to 8% operating margin" and "sales growth and solid margins," each of which refers to results Kohl's had achieved in 2021 and reported in its annual financials.  AC ¶ 144; Ex. L at 24-25.  The statement Plaintiff plucks from Mr. Boneparth's April 29, 2022 letter to shareholders advises that Kohl's Strategic Plan "helped us ***achieve record EPS last year*** and allowed us to double our annual dividend to $2 per share for 2022."  AC ¶ 146.  These are indisputably accurate statements about 2021 results and 2022 dividends, and Plaintiff does not challenge the accuracy of Kohl's 2021 results or 2022 dividends. *See generally* AC.  And though Plaintiff does not appear to challenge any references to Kohl's 2022 annual guidance in the April 21 presentation—which makes sense, as such guidance is forward-looking and protected, *see infra* § III.A.1.c—such claims would fail because Plaintiff alleges no contemporaneous facts contradicting the annual guidance or rendering it false.  *A.O. Smith Corp.*, 468 F. Supp. 3d at 1060 (dismissing claims based on projections, as "a projection is not rendered false when the world turns out otherwise").

> **b.  Many of the Challenged Statements Are Inactionable Statements of Corporate Optimism**

Many of the challenged statements are "general, optimistic statements" that are "not capable of being objectively verified," and thus are immaterial as a matter of law. *In re Midway*

---

[5] As noted *infra* at §1.b, c, Plaintiff also challenges a May 11, 2022 statement "thank[ing] all Kohl's associates" for their work to execute on the Company's strategy and contribution to Kohl's "bright future"—none of which is made false or misleading by disappointing sales in April 2022.

*Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004); *see also Fulton Cty. Emp. Ret. Sys. v. MGIC Inv. Corp.*, 2010 WL 5095294, at *3 (E.D. Wis. Dec. 8, 2010). Statements regarding the progress and success of Kohl's Strategic Plan fall into this category of corporate puffery. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 745 (7th Cir. 1997) ("The heart of a reasonable investor does not begin to flutter when a firm announces that some project or process is proceeding smoothly."); *see also City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021) (statement that integration process is "progressing as planned" was puffery as it "did not make any concrete assertion; it expressed only vague optimism"). Yet vague statements about Kohl's execution of its Strategic Plan and quarterly results are precisely the statements Plaintiff challenges. *See* App'x A at 1, 3-21, 32-33, 38-39; AC ¶¶ 109-27:

- "***Executing against our strategy*** … ***our strategies are working***." AC ¶ 111 (emphasis by Plaintiff throughout).

- We "have ***incredible confidence in our strategy***." AC ¶ 117.

- "***We embarked in the biggest, boldest transformation*** … ***With the strategy to chase***, as we saw, really what were going to be the outstanding winners, we got lots of them. ¶ 119.

- "***[W]e are a very healthy company. We have a great strategy in place[.]***" *Id.* ¶ 142.

- "***The plan we're executing is very powerful…***" *Id*.

- "We are also ***continuing to deliver on the strategy*** we unveiled in October 2020[.]" ¶ 146.

Plaintiff even challenged the Board Chair's expression of thanks to the thousands of employees in Kohl's stores. *Id.* ¶ 148 ("We are especially thankful to Kohl's associates, who have ***continued to execute on our strategy*** and focus on customers during this process. Kohl's has a ***bright future ahead***.") These statements were not material to investors and are not actionable. *See Zebra Technologies*, 8 F.4th at 595; *Pension Tr. Fund for Operating Eng'rs v. Assisted Living Concepts, Inc.*, 2013 WL 3154116, at *29 (E.D. Wis. Jun. 21, 2013) (optimism about strategy was puffery).

17

### c. Many of the Challenged Statements Are Protected Forward-Looking Statements

Still other statements Plaintiff challenges are inactionable because they are forward-looking statements protected by the PSLRA's safe harbor. The PSLRA expressly immunizes statements "of the plans and objectives of management for future operations," "of future economic performance," and "the assumptions underlying or relating to any statement described in" either, if accompanied by meaningful cautionary language. *See* 15 U.S.C. § 78u-5(i)(1)(B), (D); *Stavros v. Exelon Corp.*, 266 F. Supp. 2d 833, 842 (N.D. Ill. 2003). Cautionary language is meaningful if it "identif[ies] important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i); *Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 734 (7th Cir. 2004). Several statements related to the Strategic Plan and to Kohl's performance are expressly forward-looking and indisputably subject to the PSLRA's safe harbor. *See* App'x A at 1, 3, 5, 9, 13, 15, 18, 33-34, 36-37, 39; *see also* AC ¶¶ 109-27. For example:

- "As pleased as we are with ***our ongoing strategic progress***, much of our opportunity is still ahead of us." AC ¶¶ 110-11 (emphasis by Plaintiff throughout).

- "***Our strategic effort*** to transform Kohl's into the leading destination for the active and casual lifestyle continues to gain traction…. ***We believe our business has momentum***." *Id.* ¶ 117.

- Our plan "***will deliver substantial value to our shareholders*** – so that's a ***high*** bar that the board is looking at when evaluating these alternatives." *Id.* ¶ 142.

- Initiatives would "support sales growth ***in 2022*** and beyond." *Id.* ¶ 144.

- "Kohl's is well-positioned to deliver ***continued robust EPS growth***… We are confident in our ability to navigate ongoing margin pressure from cost inflation, higher freight expense, wage investments, and increasing digital penetration." *Id.*

- "Kohl's has ***a bright future ahead***." *Id.* ¶ 148.

Indeed, Plaintiff himself contends that Defendants' statements about the Strategic Plan and Kohl's performance "signaled to investors that management expected the success to continue long-term."

18

*Id.* ¶ 126. Plaintiff cannot argue that these statements are false due to what they signaled about the future without conceding they are forward-looking statements subject to the PSLRA's safe harbor. These statements are thus not actionable. *See Asher*, 377 F.3d at 732.

Further, each statement was accompanied by meaningful cautionary language warning of the precise risks Plaintiff claims were concealed. Kohl's explained that its forward-looking statements "are subject to certain risks and uncertainties" described in detail in the company's Form 10-Ks. *See, e.g.*, Ex. B at 3, 6; Ex. J at 3, 6. Included among the "Risk Factors" in those filings were disclosures about the "macroeconomic and industry risks" including the risk that "consumer spending habits" are affected by "prevailing economic conditions" and "the consumer's disposable income," and the risk that Kohl's "may be unable to successfully execute an omnichannel strategy. *See, e.g.*, Ex. A at 7, 11. In light of this meaningful cautionary language, the statements Plaintiff challenges are not actionable. *See Asher*, 377 F.3d at 732 (where cautionary language "reveals the principal risks," forward-looking statements are inactionable); *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 991 (E.D. Wis. 2009) (same).

### 2. Plaintiff Fails to Plead a Strong Inference of Scienter

Plaintiff's Rule 10b-5 claim fails for the independent reason that Plaintiff does not allege with particularity that any Defendant acted with the requisite "strong inference" of scienter—*i.e.*, an "intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 319-20 (2007); 15 U.S.C. § 78u-4(b)(2). To withstand a motion to dismiss, Plaintiff "must allege specific facts"—not conclusory assertions—showing *each* Defendant knew they were making false or misleading statements, or were deliberately reckless in not knowing. *Pugh v. Tribune Co.*, 521 F.3d 686, 700 (7th Cir. 2008). "Recklessness" is "an extreme departure from the standards of ordinary care" such that "the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *City of Livonia*, 711 F.3d at 756. A "strong"

19

inference of scienter is "cogent and at least as compelling as any opposing inference [of nonfraudulent intent]." *Pugh*, 521 F.3d at 700. Plaintiff does not meet this high standard.

### a. Plaintiff Fails to Plead Scienter as to Any Defendant or Statement With the Requisite Particularity

Plaintiff's scienter allegations fail because they do not plead each Defendant's scienter individually and with the requisite particularity. 15 U.S.C. § 78u-4(b)(2) (scienter must be pled with respect to each defendant). Here, only Kohl's, Ms. Gass, Ms. Timm, and Mr. Boneparth are alleged to have made any challenged statement, yet Plaintiff attempts to impute scienter to *all* Defendants, including Defendants Bender, Cosset, Day, Floyd, Mitchell, Prising, Schlifske, Shapira, and Streeter—none of whom made any challenged statement, and all of whom are mentioned only a handful of times in the Amended Complaint. *See generally* AC. Plaintiff also fails to allege facts establishing a strong inference of scienter as to Kohl's itself, which requires sufficient allegations of scienter against "officials who make or issue the [challenged] statement." *Pugh*, 521 F.3d at 697. Plaintiff does not plead scienter with respect to any Defendant, nor does he identify any other employees who participated in the alleged fraud through which to impute scienter. *See supra* § III.A.2. Plaintiff's claims should be dismissed for this reason alone.

In addition to failing to plead scienter for specific individuals or the Company, Plaintiff fails to allege facts showing that Defendants knew, or were reckless in not knowing, that specific statements were false when made. Plaintiffs cannot allege knowledge or recklessness generally; they must aver specific facts showing scienter with "respect to each act or omission" challenged. 15 U.S.C. § 78u-4(b)(2)(A). Plaintiff has not even attempted to do so here. Instead, he offers a parade of generic allegations untethered to any challenged statements. *See* AC ¶¶ 170-98. This pleading practice is insufficient to allege securities fraud. 15 U.S.C. § 78u-4(b)(2)(A); *Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (holding

20

plaintiff failed to plead scienter where allegations were "too generic to satisfy *Tellabs*").

<blockquote>

**b.    Plaintiff's Generic Allegations—Common to All Corporate Officers and Directors—Fail to Plead Scienter**

</blockquote>

Plaintiff's generic allegations do not support a strong inference of scienter. The AC does not allege insider sales, whistleblower revelations, incriminating emails, or other particularized facts to show scienter, but rather simply (1) a purported motive to control the sales process and proxy contest in order to maintain control over Kohl's and maximize compensation, (2) access to data and high-level corporate positions, and (3) corporate departures. Courts routinely hold that these allegations fail, individually and in sum, to plead scienter.

<blockquote>

**(1)    Plaintiff Cannot Establish Scienter Based on Generic Motive Allegations**

</blockquote>

***Allegations that Defendants received compensation and stock awards for their Board service and management are insufficient to demonstrate scienter***. Plaintiff first alleges that Defendants were motivated to defraud shareholders by a desire to maximize their "compensation packages" and "stock awards." AC ¶ 170. But Plaintiff does not support this assertion with particularized facts, instead simply listing the various forms of compensation Defendants may be entitled to receive in their role as directors and officers of Kohl's. *Id*. ¶¶ 170-72. Courts have long rejected such allegations as too generic to raise any inference of scienter—particularly where, as here, Defendants are not alleged to have sold any stock during the Class Period. *See Zimmer*, 679 F.3d at 956 (alleged "incentive to make [the company] look good in order to keep their jobs, improve their bonuses, and increase the value of their stock options" too generic to satisfy *Tellabs*); *Gillis v. ORX Pharma Ltd*., 197 F. Supp. 3d 557, 600–61 (S.D.N.Y. 2016) ("Absent allegations of insider sales during the period of stock-price inflation, there would be no concrete benefit to

defendants to justify" the risks of knowingly making false or misleading statements).[6]

In any event, Plaintiff have the motive theory backwards. Defendants' purported motivation to maximize their own returns is *consistent* with Kohl's statements that it engaged in a sale process to sell the Company to the highest and most viable bidder (here, Franchise Group). *See* App'x A at 31. According to Plaintiff, much of Defendants' compensation was in stock awards (AC ¶¶ 170-71)—thus, Defendants would have received significant personal gains if Kohl's was sold, not the other way around. So Defendants—just like every other Kohl's shareholder—were motivated to act reasonably to maximize the value of their shares, whether through a sale of the Company or through continued execution on Kohl's long-term plans on a standalone basis. *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (no scienter where benefits "generalized to all corporate directors or beneficial to all shareholders"). That is the opposite of fraud.

***Nothing about Defendants' conduct during or after the proxy contest indicates they were motivated to commit securities fraud***. Plaintiff next claims that the Board intentionally conducted the proxy contest in a way that "prevent[ed] investors from being sufficiently informed" before voting so as to maintain control over the Company. AC ¶ 176. For example, Plaintiff alleges that the Board adopted a "poison pill," set the "Record Date" by which to register to vote in the proxy contest "three weeks earlier" than in the prior year, "refused to use universal proxy cards" that Plaintiff concedes were not required, and selected Franchise Group as a final bidder. *Id*. ¶¶ 175-77, 185. All of these purported allegations suffer from common flaws: they are generic, are

---

[6] Only Ms. Streeter and Mr. Schlifske exercised options during the Class Period, and only to exercise expiring options representing a small amount of their overall holdings (about 10%). *See Fryman v. Atlas Fin. Holdings, Inc*., 462 F. Supp. 3d 888, 904 (N.D. Ill. 2020) (no scienter where "Defendants sold a small portion of the shares they owned"). All other sales or withholdings of stock occurred automatically to cover taxes owed on vesting RSUs, which do not give rise to an inference of scienter. *See In re Bristol-Myers Squibb Sec. Litig*., 312 F. Supp. 2d 549, 561 (S.D.N.Y. 2004) (no scienter as "sales to meet tax obligations [are] not indicative of fraud").

22

unconnected to any alleged misrepresentation, and say nothing about whether each Defendant knew (or recklessly disregarded) that their statements were false when made.

- The Board's adoption of a standard shareholder rights plan is not evidence of motive to commit fraud. As at least one court has explained, without specific allegations show how the supposed false statements *enabled* the poison pill's adoption, this allegation cannot support scienter. *See, e.g.*, *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 592 (S.D.N.Y. 2011) (no scienter based on adoption of "poison pill" without a "unique connection [between]" the "alleged fraudulent misstatements" and "the poison pill").

- Plaintiff's allegations regarding the setting of the record date fail to support scienter, as the annual meeting record date for 2022 was consistent with the record date for prior years.

- Plaintiff alleges the Board's refusal to use universal proxy cards for voting on the proposals presented during the 2022 annual meeting somehow supports scienter. AC ¶ 177. But here again Plaintiff fails to explain how the Board's lawful conduct defending Kohl's against a self-interested activist has anything to do with a purported motive to mislead investors.

- Plaintiff alleges that the selection of Franchise Group evidences scienter because (according to Plaintiff) that bidder would have allowed the management team to stay on in their roles. AC ¶ 185. But this allegation, even if true, at best suggests a motive to negotiate a potential sale with the Franchise Group—whose indications of interest were higher than the original prospective acquirors—and says nothing about motive to mislead investors.

Plaintiff's fallback argument—that Defendants selectively and strategically controlled the release of information to investors regarding the Board's consideration of a potential sale transaction in order to "retain control in the face of a contested proxy battle" (*id*. ¶¶ 193-96)—fares no better. "Nothing in the 1934 Act or any of the SEC's regulations require[d]" Kohl's to disclose information about an ongoing "major corporate transaction." *Water Island Event-Driven Fund, LLC v. Trib. Media Co.*, 39 F.4th 402, 407–08 (7th Cir. 2022). Plaintiff may prefer Kohl's be more of "an open book," but it "would be unwarranted to read the securities laws" to infer scienter based on Kohl's decision to limit information about the sale process. *Id*.

The same is true with respect to Plaintiff's allegation that Kohl's "suspiciously timed" the announcement of "disappointing" results for the first quarter of 2022 to avoid any interference with the proxy vote. AC ¶¶ 193-96. Far from suspicious, the timing was entirely *consistent* with when Kohl's previously announced quarterly results. *See e.g.*, Ex. S (May 19, 2020 press release);

23

Ex. T (May 20, 2021 press release).  In any event, "proximity between positive statements" and "announcement of poor economic performance do[es] not create an inference" that Kohl's acted fraudulently.  *Arazie v. Mullane*, 2 F.3d 1456, 1467–68 (7th Cir. 1993).

### (2) Plaintiff Cannot Establish Scienter Based on Defendants' Status as Officers and Directors

Plaintiff next offers speculative assertions that Defendants' "access" to information, "high-level positions" within Kohl's, and purported attendance at "weekly business review meetings" creates a strong inference of scienter.  AC ¶¶ 186-88.  Not so.

Plaintiff first says that Defendants knew about Kohl's "poor financial results" ahead of their disclosure because Defendants had "access to adverse undisclosed information about Kohl's business, operations," and "business prospects."  AC ¶ 187.  It is well established that "a complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information," as Plaintiff does here.  *Cornielsen v. Infinium Cap. Mgmt.*, LLC, 916 F.3d 589, 602 (7th Cir. 2019); *see also* AC ¶¶ 186-87 (alleging Defendants sourced the information from *unidentified* "internal corporate documents," during *undated* "conversations" with *unnamed* "other corporate officers," and as part of *unspecified* "information provided to them").

Likewise, Defendants' "respective positions within the company prove nothing about fraud or knowledge thereof."  *Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 746-47 (S.D. Ind. 2009); *Harley-Davidson*, 660 F. Supp. at 999 (rejecting allegations of scienter based on defendants' "positions within the company").

Plaintiff next asserts—purportedly relying on reports from a single confidential witness (CW1)—that Defendants decided to shift focus and resources to Kohl's in-store retail business segment and away from online e-commerce, even though they were "aware" of "flat" e-commerce

sales because they "attended weekly business review meetings." AC ¶¶ 116, 188. But CW1 does not claim to have attended those meetings or to have had any contact with any Defendant. He cannot therefore speak to any Defendant's state of mind. *See In re Bally Total Fitness Sec. Litig.,*, 2007 U.S. Dist. LEXIS 12060, at *27 (N.D. Ill. Feb. 20, 2007) (rejecting CW reports that fail to show "firsthand knowledge of the crux of the matter"). Even if he had, Plaintiff's vague allegation that executives attended meetings is meaningless, since CW1 "does not give any details about the locations or dates of the meetings he attended, who was in attendance, or what was discussed." *Id.* at *35. Nor are there any allegations that the information "discussed at these meetings did not match what [Defendants] [were] reporting publicly." *Pipefitters Loc. No. 636 Defined Benefit Plan v. Tekelec*, 2013 WL 1192004, at *11 (E.D.N.C. Mar. 22, 2013). Indeed, quite the contrary, as CW1's statements about meetings regarding e-commerce were entirely consistent with Kohl's public statements about investments in its "store experience" designed to focus on omnichannel customers. *See, e.g.*, Ex. D (Feb. 22, 2021 press release).

**(3)      Plaintiff Cannot Plead Scienter Based on Corporate Departures**

Contrary to Plaintiff's inference, Ms. Gass's resignation from Kohl's six months after the Class Period to "accept . . . the position of CEO at Levi Strauss & Co.," and Ms. Streeter's decision one year later "not to stand for re-election" to the Board (AC ¶¶ 190-92) say *nothing* about their alleged scienter—or that of any other Defendant. *See Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 803, fn.14 (N.D. Ill. 2007) ("individual's resignation from a company is [not] sufficient to create an inference—much less a strong one—of scienter"). If anything, Ms. Gass's and Mr. Streeter's resignations negate any inference that Defendants were "entrenched" within the Company, or that they were motivated to engage in fraud to "protect the[ir] seats" and "collect[] million[s] in director compensation." AC ¶¶ 30, 35, 60. Plaintiff alleges that they resigned

25

following the announcement of "disappointing third quarter results," AC ¶ 191—and the departure of an executive or board member after achieving "disappointing revenues under their leadership . . . d[oes] not support a strong inference of scienter." *Vaitkuviene v. Syneos Health, Inc.*, 2021 WL 3856452, at *12 (E.D.N.C. Aug. 30, 2021), *aff'd sub nom. San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232 (4th Cir. 2023).

For the same reason, the departures of two *non-Defendant* executives, Greg Revelle and Doug Howe, shortly after the Shareholder Meeting do not add to an inference of scienter. AC ¶¶ 190, 197. Neither individual is alleged to have had any involvement in the purported fraud, and no allegations describe why either departed. "[I]t is hard to see" how the departure of an executive "who has not been named as a defendant in this action could create an inference of scienter with respect to" Defendants. *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 162 (D. Conn. 2007).

### c. The More Compelling Inference Is Good Faith, Not Fraud

Plaintiff's theory of fraud is based purely on the speculation of wrongdoing asserted against Defendants by dissident investor Macellum. According to the Complaint, Defendants adopted a strategic plan for Kohl's they knew wouldn't work but continued pursuing it in order to stave off proxy challenges from Macellum. *See, e.g.*, AC ¶ 3. Yet all the while, no Defendant is alleged to have sold any stock or otherwise received any personal benefit from the alleged scheme. Plaintiff's alleged motiveless, profitless fraud "undermin[es] any inference of scienter"—let alone a strong, cogent, and compelling inference. *Van Noppen v. Innerworkings, Inc.*, 136 F. Supp. 3d 922, 943 (N.D. Ill. 2015) ("lack of evidence showing that the insider made a net profit" belies scienter).[7]

Instead, there is a far clearer, nonfraudulent explanation. In October 2020, as the world began to recover from COVID, Kohl's implemented a Strategic Plan focused on driving value for

---

[7] By contrast, Macellum consistently profited on short sales during the class period while disparaging Kohl's and its directors and officers. *See* Ex. C at 13-15.

shareholders. Ex. B. And over the next eighteen months, Kohl's successfully grew sales, cut costs, and achieved record earnings per share. *See, e.g.*, AC ¶¶ 111, 117, 121. Such positive results gave Kohl's confidence that it could build on this momentum. Yet at the same time, it faced uncertainty on a number of fronts: Macellum brought another proxy fight; Kohl's success attracted potential acquirers; and the macro environment in which Kohl's operated changed.

Though Kohl's believed it could continue its growth in 2022, it warned of—and then experienced—weaker sales, lower revenue, and slower growth. *See, e.g.*, Ex. A at 7, 11. "That [] defendants were ultimately wrong" in their forecasting "is not enough to support an inference of scienter," *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 887 (4th Cir. 2014), particularly where, as here, Kohl's promptly advised investors in its next quarterly report that results would be lower than expected. *See* Ex. Q (May 19, 2022 press release) at 4. Kohl's conduct shows good faith and prompt disclosure, not fraud. The inference against fraud is more cogent and compelling than any inference of fraud; Plaintiff's claim must be dismissed. *Pugh*, 521 F.3d at 700.

### 3. Plaintiff Fails to Plead Loss Causation

Finally, Plaintiff has failed to plead loss causation because it cannot identify any corrective disclosure revealing that Kohl's statements regarding its Strategic Plan were false, thereby causing Plaintiff's loss. *See Dura*, 544 U.S. at 345–46; *Kuebler v. Vectren Corp.*, 13 F.4th 631, 638 (7th Cir. 2021). Plaintiff points to a host of disclosures in May, June, and July 2022 (AC ¶¶ 156-64), but *none* revealed anything about Kohl's Strategic Plan or the source of Kohl's success—let alone corrected any prior statement about the success of Kohl's "transformative strategy . . . in 2021." *Id*. ¶ 124 (emphasis omitted); *see also id*. ¶¶ 110-111, 115, 117, 119, 121; *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 551 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010) (corrective disclosure must "expos[e] the falsity of the fraudulent representation").

The only disclosures remotely related to Kohl's Strategic Plan are Kohl's May 18 and 19,

2022 announcement of 1Q22 results, in which Kohl's noted that FY22 "has started out below our expectations" and lowered its forward-looking guidance. Ex. Q at 4. But Plaintiff does not identify *any* alleged misstatement about the Strategic Plan that Kohl's purportedly corrected with its disclosures—and there is none. *In re Sara Lee Corp. Sec. Litig.*, 2006 WL 1980199, at *7 (N.D. Ill. July 10, 2006) (finding no loss causation where subsequent disclosures failed to show company's "optimistic" strategic plan was false). To the contrary, Kohl's reiterated its commitment to the strategic plan, noting "we have the right strategies in place" and would continue "driving our strategy forward," and confirmed that it is working: "trends are improving, we are making changes and the benefits of our key strategic initiatives are *still in front of us*." Ex. P (May 19, 2022 earnings call transcript) at 4, 9-10. Far from revealing any "fraud," these disclosures were entirely consistent with Kohl's prior statements regarding its Strategic Plan. *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2012 WL 1030474, at *18 (N.D. Ill. Mar. 27, 2012) (rejecting plaintiff's "theory that the market learned about [the] fraud even though no fraud was ever disclosed" and dismissing for failure to "allege[] loss causation"); *see also In re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005) ("[A] failure to meet earnings forecasts has a negative effect on stock prices, but not a corrective effect.").

### B. Plaintiff Fails to Plead "Scheme Liability" Under Rule 10b-5(a) and (c)

Plaintiff purports to assert a claim for "scheme liability" under Rule 10b-5(a) and (c), but this claim fails for several reasons. *First*, Plaintiff's scheme liability claim is premised on impermissible puzzle pleading. Rather than articulate a coherent theory, Plaintiff merely alleges that Defendants' "scheme is detailed in ¶¶ 40-99 herein." AC ¶ 214 (Count I). This "shotgun" or "puzzle" pleading improperly places the burden on Defendants and the Court to suss out a cohesive scheme animating this claim from sixty paragraphs spread out over twenty-two pages, and does not meet the PSLRA's or Rule 9(b)'s requirement to plead his claim with particularity. *Conlee v.*

28

*WMS Indus., Inc.*, 2012 WL 3042498, at *4-5 (N.D. Ill. July 25, 2012).

*Second*, the alleged "scheme" to defraud investors rests exclusively on Defendants' alleged misrepresentations or omissions and thus rises or falls—and here falls—with his claim under Rule 10b-5(b).  The Complaint preemptively asserts that Defendants' scheme is outlined in AC ¶¶ 40-99 "and but [*sic*] also included, yet was not reliant upon, the preparation of and/or disseminated [*sic*] or approved the false statements specified in ¶¶ 109-51 above[.]"  AC ¶ 214.  Yet nowhere in Count I, in AC ¶¶ 40-99, or anywhere else in his Complaint does Plaintiff identify any event or basis other than the challenged statements that "would artificially inflate Kohl's stock price," *id.* ¶ 215—the alleged cause of his loss for his Rule 10b-5 claims.  Whether Plaintiff may plead "scheme liability" based purely on alleged misrepresentations is an open question on which the Seventh Circuit has yet to opine.  *Compare SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022) (refusing to find a scheme per Rule 10b-5(a) or (c) based only on actionable misrepresentations) *with In re Alphabet Sec. Litig.,* 1 F.4th 687, 709 & n.10 (9th Cir. 2021) (finding the opposite).  But there is no dispute that if a plaintiff does "not adequately allege any false or misleading statements, nor … adequately allege scienter[, they] [] cannot proceed under this theory."  *See, e.g.*, *Sneed v. AcelRx Pharms., Inc.*, 2022 U.S. Dist. LEXIS 176319, at *18–19 (N.D. Cal. Sept. 28, 2022).  As Plaintiff fails on both counts *see infra* § III.B.1, he similarly fails to state a "scheme liability" claim.

### C.        Plaintiff Fails to State a Claim Under Rule 14a-9

To state a claim under Section 14(a) and Rule 14a–9, a plaintiff must adequately plead three elements: "(1) a proxy contained a material misrepresentation or omission, (2) such misrepresentation or omission caused the plaintiff injury, and (3) the proxy was an essential link in the accomplishment of the transaction." *Himmel v. Bucyrus Int'l, Inc.*, 2014 WL 1406279, at *13 (E.D. Wis. Apr. 11, 2014).  Like Rule 10b-5, claims under Rule 14a-9 are governed by the PSLRA and subject to its rigorous pleading requirements. *Beck v. Dobrowski*, 559 F.3d 680, 681–

29

82 (7th Cir. 2009). As Plaintiff fails to plead a material misrepresentation or omission—in the proxy materials or otherwise—he has failed to state a claim under Rule 14a-9. *See supra* § III.B.1; App'x A at 20-21, 30, 32-38 (identifying challenged statements in proxy materials).

**D.      Plaintiff Fails to State a Control Person Claim Under Section 20(a)**

Because Plaintiff "fail[s] to state a claim under § 10(b) or Rule 10b–5 . . . there can be no liability under § 20(a)." *Harley-Davidson*, 660 F. Supp. 2d at 1003-04.

**E.      Plaintiff Fails to State a Claim Against the Non-Employee Board Members**

Finally, Plaintiff fails to state any claim at all against the "Non-Employee Board Members"—the ten individual Defendants who were not officers of Kohl's. AC ¶¶ 16-25. "[L]umping all defendants together constitutes group pleading, which fails to meet the heightened PSLRA pleading requirements." *City of New Orleans Employees' Ret. Sys. v. PrivateBankcorp, Inc.*, 2011 WL 5374095, at *8 (N.D. Ill. Nov. 3, 2011); *see also Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 600 (7th Cir. 2019) ("This Court . . . decline[s] to permit group pleading.").

Yet that is precisely what Plaintiff does. Plaintiff attempts to impute the challenged conduct to *all* Defendants, even though nine of the ten Non-Employee Board Members— Defendants Bender, Cosset, Day, Floyd, Mitchell, Prising, Schlifske, Shapira, and Streeter—were not alleged to have made *any* challenged act or statement. *See generally* AC.[8] Without particularized allegations as to *each* Defendant for *each* alleged misstatement, Plaintiff cannot state a claim against such Defendant. *Pugh*, 521 F.3d at 693-94. Plaintiff's claims against the Non-Employee Board Members should be dismissed for this additional reason alone.

**IV.      CONCLUSION**

Defendants respectfully request that the Court dismiss the Amended Complaint.

---

[8] The tenth, Board Chair Peter Boneparth, made statements challenged in the Amended Complaint, but Plaintiff made no specific allegations of scienter as to him. *See* AC ¶¶ 170-98.

Dated: December 4, 2023

Respectfully submitted,

/s/ *Colleen C. Smith*
Colleen C. Smith

**LATHAM & WATKINS LLP**
Colleen C. Smith
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
colleen.smith@lw.com

Michele D. Johnson
Jordan D. Cook
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
michele.johnson@lw.com
jordan.cook@lw.com

Zachary L. Rowen
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
zachary.rowen@lw.com

**GODFREY & KAHN, S.C.**
John L. Kirtley
Matthew M. Wuest
Christie B. Carrino
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Telephone: (414) 273-3500
jkirtley@gklaw.com
mwuest@gklaw.com
ccarrino@gklaw.com

*Attorneys for Defendants*

31