# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| SEAN SHANAPHY, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KOHL'S CORPORATION, MICHELLE GASS, JILL TIMM, MICHAEL BENDER, PETER BONEPARTH, YAEL COSSET, CHRISTINE DAY, H. CHARLES FLOYD, ROBBIN MITCHELL, JONAS PRISING, JOHN E. SCHLIFSKE, ADRIANNE SHAPIRA, and STEPHANIE A. STREETER,<br><br>        Defendants. | Case No. 2:22-cv-01016-LA |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT FOR
## <u>VIOLATIONS OF FEDERAL SECURITIES LAWS</u>

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .......................................................................................................2

    A. Plaintiff's Attempt to Recast His "Scheme Liability" Claim Fails..........................2

        1. Plaintiff Fails to Plead an Actionable Scheme.............................................2

        2. Plaintiff Fails to Plead Facts Supporting Scienter as to Any Scheme..................................................................................................4

        3. Good Faith is a More Compelling Inference Than a Fraud Scheme ..........6

    B. Plaintiff Fails to Plead Claims Based on Misstatements Under Rule 10b-5(b)...................................................................................................................7

        1. Plaintiff's Claim as to the Strategic Plan Statements Fails.........................8

        2. Plaintiff's Claim as to the Valuation or Potential Sale of the Company Statements Fails..............................................................................11

        3. Plaintiff's Claim as to the April/May 2022 Statements About Performance Fails ....................................................................................13

III. CONCLUSION....................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alizadeh v. Tellabs, Inc.*,
2015 WL 557249 (N.D. Ill. Feb. 9, 2015) ................................................................................14

*Amanda Acquisition Corp. v. Universal Foods Corp.*,
708 F. Supp. 984 (E.D. Wis. 1989)..........................................................................................12

*Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*,
2013 WL 1286700 (N.D. Ill. Mar. 27, 2013)...........................................................................16

*Brasher v. Broadwind Energy, Inc.*,
2012 WL 1357699 (N.D. Ill. Apr. 19, 2012) ...........................................................................15

*Azar v. Grubhub, Inc.*,
2021 WL 4077327 (N.D. Ill. Sept. 7, 2021) ............................................................................15

*Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*,
2018 WL 1071442 (N.D. Ill. Feb. 27, 2018) ...........................................................................15

*Chandler v. Ulta Beauty, Inc.*,
2022 WL 952441 (N.D. Ill. Mar. 30, 2022)...............................................................................6

*City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*,
468 F. Supp. 3d 1048 (E.D. Wis. 2020) .....................................................................................8

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) ...................................................................................................15

*Davis v. SPSS, Inc.*,
431 F. Supp. 2d 823 (N.D. Ill. 2006) .......................................................................................10

*Dixon v. ATI Ladish LLC*,
667 F.3d 891 (7th Cir. 2012) .....................................................................................................3

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................................................................................................................9

*Gallagher v. Abbott Lab'ys*,
269 F.3d 806 (7th Cir. 2001) ...................................................................................................14

*In re Harley-Davidson, Inc. Sec. Litig.*,
660 F. Supp. 2d 969 (E.D. Wis. 2009)........................................................................................6

ii

*Hedick v. Kraft Heinz Co.*,
2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ...................................................................10

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ...............................................................................................9

*Lorenzo v. SEC*,
139 S. Ct. 1094 (2019)..........................................................................................................4

*In re Lottery.com Sec. Litig.*,
2024 WL 454298 (S.D.N.Y. Feb. 6, 2024)........................................................................14

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
277 F. Supp. 3d 500 (S.D.N.Y. 2017)..................................................................................3

*In re Midway Games, Inc. Sec. Litig.*,
332 F. Supp. 2d 1152 (N.D. Ill. 2004) ...............................................................................10

*In re Mindbody, Inc. Sec. Litig.*,
489 F. Supp. 3d 188 (S.D.N.Y. 2020)...................................................................................4

*In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*,
553 F. Supp. 2d 902 (S.D. Ohio 2008) .................................................................................3

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)............................................................................................................12

*In re Omnicom Grp., Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008).................................................................................13

*Pampena v. Musk*,
2023 WL 8588853 (N.D. Cal. Dec. 11, 2023)......................................................................5

*Pierrelouis v. Gogo, Inc.*,
414 F. Supp. 3d 1164 (N.D. Ill. 2019) .............................................................................9, 15

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v.
Allscripts-Misys Healthcare Sols., Inc.*,
778 F Supp. 2d 858 (N.D. Ill. 2011) .....................................................................................9

*In re Pretium Res. Inc. Sec. Litig.*,
256 F. Supp. 3d 459 (S.D.N.Y. 2017)...................................................................................7

*Pub. Emples. Ret. Sys. of Miss. v. Treehouse Foods*,
2018 U.S. Dist. LEXIS 22717 (N.D. Ill. Feb. 12, 2018) ....................................................10

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) ...........................................................................................5, 10

Case 2:22-cv-01016-LA    Filed 02/20/24    Page 4 of 21    Document 58

*In re Razorfish, Inc. Sec. Litig.*,
2001 WL 1111502 (S.D.N.Y. Sept. 21, 2001)................................................................9

*Roth v. OfficeMax, Inc.*,
527 F. Supp. 2d 791 (N.D. Ill. 2007) ................................................................5, 15

*SEC v. Bluepoint Inv. Couns., LLC*,
2021 WL 719647 (W.D. Wis. Feb. 24, 2021)................................................................12

*SEC v. Kelly*,
817 F. Supp. 2d 340 (S.D.N.Y. 2011)................................................................4

*In re ShopKo Securities Litigation*,
2002 WL 32003318 (E.D. Wis. Nov. 5, 2002)................................................................9

*Siegel v. Boston Beer Co., Inc.*,
2022 WL 17417111 (S.D.N.Y. Dec. 5, 2022) ................................................................1

*In re Teva Sec. Litig.*,
512 F. Supp. 3d 321 (D. Conn. 2021)................................................................4

*Tunio v. Daudi*,
2017 WL 4842022 (E.D. Wis. Oct. 24, 2017) ................................................................10

*In re Turquoise Hill Res. Ltd. Sec. Litig.*,
625 F. Supp. 3d 164 (S.D.N.Y. 2022)................................................................3, 6

*Wyche v. Advanced Drainage Sys., Inc.*,
2017 WL 971805 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017) ................................................................5

*Yates v. Mun. Mortg. & Equity, LLC*,
744 F.3d 874 (4th Cir. 2014) ................................................................7

**STATUTES**

Wis. Stat. 180.0827................................................................3

Wis. Stat. 180.0828(1) ................................................................3

**RULES**

Rule 10(b)-5(a)................................................................1, 2, 3, 4

Rule 10(b)-5(c)................................................................1, 2, 3, 4

Rule 10b-5(b)................................................................1, 2, 4, 8

## I. INTRODUCTION

This Court has before it an Amended Complaint ("Complaint" or "AC") long on bluster, but devoid of facts alleging actual fraud. It does, however, contain a telling, but erroneous, reference to Individual Defendants being controlling persons of "Boston Beer," rather than Kohl's. AC ¶ 238. Why telling? These same plaintiff's attorneys brought similarly conclusory claims of securities fraud against Boston Beer Company and its directors in 2021. And, like the complaint recently dismissed with prejudice in *Siegel v. Boston Beer Co., Inc.*, 2022 WL 17417111 (S.D.N.Y. Dec. 5, 2022), the Complaint here is predicated on inactionable opinions, optimism, forward-looking projections, and statements Plaintiff fails to show were knowingly false when made.

Giving lip service to a supposed "scheme" at Kohl's, Plaintiff asserts claims against Kohl's and certain of its then-directors and executives based on alleged misrepresentations regarding: (1) Kohl's Strategic Plan; (2) its potential sale process; and (3) statements about Kohl's performance in April and May 2022. AC ¶¶ 40, 109-51. Defendants detailed how Plaintiff fails to plead facts showing that the challenged statements were materially false or misleading, much less that Defendants knew or were reckless in not knowing that the statements were false when made. Mot. at 9-28. In short, the Complaint is nothing more than an inept attempt to plead fraud by hindsight.

Recognizing the incurable flaws in the misrepresentation claims under Rule 10b-5(b), and without citing to the controlling pleading standard—the PSLRA, which sets rigorous pleading requirements for securities fraud cases—the Opposition pivots to focus on purported "scheme liability" based on allegations that Kohl's Board ran a sham sales process to keep Kohl's under the Board's control. Opp. at 10-11. But this effort also fails. Plaintiff does not plead the elements of a "scheme" under Rule 10(b)-5(a) and (c) because it does not allege facts showing that any Defendant undertook any "deceptive or manipulative acts" in the consideration and negotiation of offers to purchase Kohl's, much less that any Defendant did so with the intent to defraud.

1

And, Plaintiff's "scheme" theory is not plausible. Why would directors and officers who knew their Company was overvalued lie about it so they could *stay* at the Company, *stay* in power, and continue holding onto shares that, according to Plaintiff, were about to lose value in the near term—rather than sell to a willing buyer at a premium over the stock price and cash out their equity in the doomed company? The more compelling inference—an inference which defeats the misrepresentation claims here—is that Kohl's Board exercised its business judgment in both disclosures made to the market and its consideration and negotiation of potential purchase bids to further the interests of Kohl's and its shareholders. That is not securities fraud.

As Plaintiff has had more than two years to develop and refine the allegations in the Complaint and cannot remedy these pleading defects, dismissal with prejudice is proper.

## II.    ARGUMENT

### A.    Plaintiff's Attempt to Recast His "Scheme Liability" Claim Fails

Plaintiff rebukes Defendants for "barely address[ing]" the so-called "scheme" in their Motion (Opp. at 1), but there is a simple explanation: the Complaint lacks any allegations supporting the existence of a scheme, let alone particularized facts showing Defendants knowingly performed deceptive or manipulative acts in furtherance of one. Far from refuting this point, the Opposition underscores that Plaintiff fails to clear the high bar for pleading a scheme—much less facts showing that any Defendant perpetrated such a scheme with the intent to defraud.

#### 1.    Plaintiff Fails to Plead an Actionable Scheme

Although the Complaint intones the term "scheme" generically, the Opposition confirms that Plaintiff (1) has not plead any actionable deceptive or manipulative acts *independent from* the alleged misstatements challenged in connection with his misrepresentation claim, and (2) is thus impermissibly left with a "scheme" comprised of alleged misstatements, which even if allowed under Rules 10b-5(a) and (c), would fall with his deficient Rule 10b-5(b) claim.

2

Case 2:22-cv-01016-LA    Filed 02/20/24    Page 7 of 21    Document 58

### a. Plaintiff Fails to Plead Any Actionable Deceptive or Manipulative Acts

In an effort to steer his alleged "scheme" theory away from Kohl's challenged statements, Plaintiff stretches for "addition[al]" allegedly deceptive "conduct." Opp. at 10-11. He directs the Court to Board decisions regarding bids to acquire the Company, safeguards for an orderly sale process, and disclosures to investors about the sale process to "support the existence of a fraudulent scheme." *Id*. But none of these steps are actionable deceptive or manipulative acts.[1]

*First*, each act is the Board exercising its business judgment to conduct a potential sale process. *See, e.g.*, *Dixon v. ATI Ladish LLC*, 667 F.3d 891, 895 (7th Cir. 2012) ("Directors must decide" what information to disclose as part of possible merger). No particularized facts suggest, much less show, that "there was anything deceptive or fraudulent" in the decisions the Board took to control that process. *See In re Turquoise Hill Res. Ltd. Sec. Litig*., 625 F. Supp. 3d 164, 252 (S.D.N.Y. 2022) (no scheme based on business decisions made as part of the ordinary course of business). Unable to reckon with this gap in his pleading, Plaintiff claims that "business judgment is not a defense" to securities fraud. Opp. at 8-9. However, Plaintiff ignores that, as federal law and Wisconsin law recognize, Plaintiff's hindsight disagreement with the Board's handling of the sale process does not convert the Board's decisions into inherently "deceptive conduct"—as required to plead a claim under Rule 10b-5(a) and (c). *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig*., 553 F. Supp. 2d 902, 909-10 (S.D. Ohio 2008); Wis. Stat. 180.0827, 180.0828(1).

*Second*, Plaintiff impermissibly seeks to *shift to Defendants the burden* to "provide any argument as to why [the Board's] actions cannot comprise a scheme." Opp. at 11. This is, of course, backwards; *Plaintiff* bears the burden to plead actionable deceptive acts, and his effort to

---

[1] Since Plaintiff fails to allege any actionable deceptive acts, he also cannot show that Defendants took any steps "in furtherance of the alleged scheme," as required to plead a Rule 10b-5(a) and (c) claim. *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 517 (S.D.N.Y. 2017).

twist the pleading standards only reinforces that he has not done so, and cannot do so, here.

### b. Plaintiff's Scheme Liability Claim is Improperly Duplicative of His Deficient Misrepresentation Claim

Failing to show that any of the Board's "addition[al]" "conduct" was deceptive, Plaintiff is left with a "scheme" comprised of the very same alleged misstatements and omissions Plaintiff challenges in connection with his misrepresentation claim. Opp. at 10-11.[2] Since his scheme liability claim is not "premised on deceptive conduct [] independent of [the] misrepresentations or omissions," as required to plead a Rule 10b-5(a) and (c) claim, it is foreclosed as a matter of law. *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 336 (D. Conn. 2021); *see also In re Mindbody, Inc. Sec. Litig.*, 489 F. Supp. 3d 188, 217 (S.D.N.Y. 2020) (dismissing scheme liability claim that was "indistinguishable from the misstatements and omissions" alleged in disclosure claim).[3]

### 2. Plaintiff Fails to Plead Facts Supporting Scienter as to Any Scheme

Plaintiff's scheme claim also fails because he alleges *no facts* supporting a strong inference that any Defendant intended to "mislead the market about a potential sale of the Company" (Opp. at 9), they did not want to consummate. Mot. at 19-27. The Opposition, asserting generic arguments that courts have consistently rejected (Opp. at 22-29), only confirms this conclusion. Plaintiff's scienter arguments here amount to nothing more than pleading "fraud by hindsight" and therefore must be dismissed. *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801 (N.D. Ill. 2007).

---

[2] Further confirming this fact is that Plaintiff alleges he "relied" *only* on the statements he challenges under his misrepresentation claim. AC ¶ 217. In other words, Plaintiff purports to plead reliance—a key element of scheme liability—based on alleged misstatements alone.

[3] Contrary to Plaintiff's assertions (Opp. at 9-10), *Lorenzo v. SEC*, 139 S. Ct. 1094 (2019) does not hold otherwise. That case addressed the narrow issue of whether an individual who disseminates false statements they did not themselves make, with the requisite scienter, can be liable under Rule 10b-5(a) and (c). 139 S. Ct. at 1101. *Lorenzo* did not change the seminal rule that scheme liability "hinges on the performance of an inherently deceptive act that is *distinct from the alleged misstatement*." *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) (emphasis added). And, even if such a claim were permitted, Plaintiff does not deny (nor can he) that if his Rule 10b-5(b) claim were dismissed, *see infra* Section II.B, his scheme claim would fall as well.

**Group Pleading.** Though Plaintiff knows he must plead particularized facts showing that "each of the Individual Defendants" intended to perpetrate the alleged scheme (Opp. at 23-24), he instead relies on allegations based on actions "the Board" took as a collective, *id.* For example, he asserts that "each member of the Board" must have known of the alleged scheme because some Kohl's statements "were purportedly made by or at the behest *of the Board*" and "*the Board*" had "oversight" of the sale process. *Id.* at 23, 27-28 (emphasis added). This is "group pleading," which the Seventh Circuit deems insufficient to "create a strong inference of scienter with respect to each individual defendant." *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).[4]

**Motive.** Plaintiff next speculates that Defendants were motivated to (i) lie about the sales process, (ii) in order to "defeat a rival" in the proxy contest, (iii) to maintain control over Kohl's, (iv) to ensure they "retain[ed] their lucrative and otherwise beneficial seats on the Board," (v) to secure increased compensation and stock awards, and (vi) for Gass and Timm, to "collect record earnings." Opp. at 24. This "Rube Goldberg" theory is "far too attenuated to support scienter." *Wyche v. Advanced Drainage Sys., Inc.*, 2017 WL 971805, at *15 (S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017). And it does not add up anyway. According to Plaintiff, the "lucrative" benefits Defendants received from Board seats were stock awards. AC ¶¶ 170-71. Sale at a premium would thus benefit Defendants as shareholders; they were motivated to sell Kohl's if that maximized value, not to secretly prevent a sale.[5] And had Defendants thought Kohl's stock price was inflated, they would have sold their shares. They did not. Mot. at 21-22.

**"Utmost Importance."** Plaintiff next contends that because a potential sale was of the

---

[4] *Pampena v. Musk*, 2023 WL 8588853 (N.D. Cal. Dec. 11, 2023) is not to the contrary. There, the court found scienter plead *as to the sole defendant* (not a group of defendants) because he directly engaged in bidding negotiations, "tweeted nearly real-time updates," and spoke publicly about the alleged misconduct. *Id.* at *16. Nothing of the sort is alleged here.

[5] As for any other benefits Defendants purportedly derived from their positions on the Board,

"utmost importance" to shareholders, Defendants must have been involved in discussions, and therefore known, that the Board did not intend to sell Kohl's. Opp. at 28. Here, Plaintiff improperly assumes the predicate. Other than general allegations that the Board "was closely monitoring and overseeing the sale process" (Opp. at 27), Plaintiff offers no *facts* showing that "the Board's" true intent was to prevent a sale of Kohl's, much less facts showing that any of the Individual Defendants was actually aware of that alleged intent. *See Chandler v. Ulta Beauty, Inc.*, 2022 WL 952441, at \*25 (N.D. Ill. Mar. 30, 2022) (requiring "particularized facts" showing defendants knew contradictory information regarding practices of "critical" importance).

**Access and Attendance.** Plaintiff asserts that "other factors"—including alleged "access to information" and "attendance" at meetings—support a strong inference of scienter when "taken collectively." Opp. at 23, 26. Specific facts regarding these "factors" are not alleged in the Complaint. But even if they were, neither argument identifies any information Defendants "actually received and reviewed" that would show they knew the Board had no intention of selling Kohl's, but decided to mislead the market as to a potential sale anyway. *In re Harley-Davidson, Inc. Sec. Litig.*, 660 F. Supp. 2d 969, 999 (E.D. Wis. 2009) (deeming "mere receipt of reports insufficient to establish scienter … given the heightened pleading standards"); *see also Turquoise Hill*, 625 F. Supp. 3d at 237 (no scienter without "allegations of specific facts, reports, or statements" with contradictory information). These "factors" add nothing to the scienter analysis.

### 3. Good Faith is a More Compelling Inference Than a Fraud Scheme

At its core, the Complaint is Plaintiff's last-ditch attempt to resuscitate Macellum's rejected contentions and impose liability on the Board for allegedly rejecting indications of interest and a conditional proposal to buy Kohl's that the Board believed, in its business judgment, were not in

---

Plaintiff concedes, as he must, that "a generalized desire to retain [] jobs, salaries, and perks" is not sufficient to plead scienter. Opp. at 24; *see also* Mot. at 21-22.

6

Case 2:22-cv-01016-LA    Filed 02/20/24    Page 11 of 21    Document 58

the best interest of Kohl's and its shareholders.  Plaintiff's theory makes no sense.  According to Plaintiff, nearly a dozen experienced, reputable directors lied about a potential sale of a company they knew had "chronically underperformed" to defeat a proxy contest and "maintain their lucrative board and executive positions."  Opp. at 9-10; AC ¶ 30.  And they did so despite the harm it caused each of them as Kohl's investors.  AC ¶¶ 170-71; *In re Pretium Res. Inc. Sec. Litig.*, 256 F. Supp. 3d 459, 478 (S.D.N.Y. 2017) (rejecting plaintiffs' theory that "Pretium invested tens of millions of dollars . . . in a venture that it secretly believed would not be profitable").

When stripped of rhetoric and speculation, the Complaint bears a more compelling, nonfraudulent inference: that Kohl's implemented a successful Strategic Plan that grew sales, cut costs, achieved record earnings per share, and gave Kohl's confidence in its future.  AC ¶¶ 111, 117, 121.  Due to this success, Kohl's attracted more than 25 potential acquirers, engaged in an "exhaustive process" with them, and emerged with a proposal that the Board, in its business judgment, believed undervalued Kohl's and, in any event, lacked the requisite financing.  Mot. at 9; Ex. O at 9. Plaintiff may now disagree with the manner in which the Board exercised its business judgment, and may contend "defendants were ultimately wrong," but that is "*not* enough to support an inference of scienter"—a point Plaintiff fails to rebut in his Opposition.  *Yates v. Mun. Mortg. & Equity, LLC*, 744 F.3d 874, 887 (4th Cir. 2014) (emphasis added).  There was no fraud here.[6]

### B.    Plaintiff Fails to Plead Claims Based on Misstatements Under Rule 10b-5(b)

Plaintiff's Opposition doubles down on his "scheme" allegations because the Complaint so plainly fails to plead securities fraud based on any alleged misrepresentations.  Plaintiff challenges three sets of statements: (1) statements regarding the Strategic Plan, (2) statements regarding offer and sale negotiations, and (3) April and May 2022 statements regarding Company

---

[6] Plaintiff concedes his scheme claims against Kohl's rise and fall with his claims against the Individual Defendants.  Mot. at 28-29; Opp. at 28.  Here those claims fall.  *See supra.*

performance. For each, Plaintiff must plead *specific facts* showing falsity, scienter, and loss causation to proceed past the pleading stage. Mot. at 9-10 (citing *City of Birmingham Ret. & Relief Sys. v. A.O. Smith Corp.*, 468 F. Supp. 3d 1048, 1055 (E.D. Wis. 2020) (Adelman, J.)). He has not done so here. And his Opposition does not cure these failures; it confirms them. Opp. at 11-22.

### 1. Plaintiff's Claim as to the Strategic Plan Statements Fails

Plaintiff challenges Kohl's statements regarding its Strategic Plan as misleading insofar as they imply that this plan contributed to Kohl's success in 2021. AC ¶¶ 109-27. But the Opposition appears to abandon this claim, as it fails to address scienter as to statements regarding the Strategic Plan. Opp. at 24-28. And Plaintiff *should* abandon this claim, as he also cannot allege facts showing that these generalized statements were materially false or misleading or that they caused any claimed loss—each of which also compels dismissal of Plaintiff's claim. Mot. at 11-12.

#### a. Plaintiff Fails to Plead Falsity as to the Strategic Plan Statements

Plaintiff contends that Kohl's overplayed the role of its Strategic Plan and concealed the effect of macroeconomic factors on its success during 2021. Opp. at 11-13. Not so.

*First*, this argument cannot be squared with Kohl's disclosures cited in the Complaint itself:

- "*[W]e did take advantage of a great market*, but [] the big thing is our strategies are working";
- The "*favorable industry environment has only amplified our performance*";
- Q1 2022 was "a difficult comparison period *due to stimulus checks*" in prior periods.

AC ¶¶ 111-13 (emphasis added). Given these robust disclosures, investors understood that Kohl's 2021 success was due at least in part to the post-COVID economic rebound. And Defendants were not obligated to re-disclose the effects of that rebound every time they discussed the Strategic Plan. Mot. at 11 (citing *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007)).[7]

---

[7] Plaintiff claims the situation here is akin to *In re ShopKo Securities Litigation*, but it is not. Defendants here disclosed the macroeconomic events that affected Kohl's performance; in

*Second*, Plaintiff alleges no *facts* that Kohl's success was not also a result of the Strategic Plan. Plaintiff cites disappointing results in 2022 and then *asserts* that the only thing driving Kohl's success in 2021 was the rebounding economy. Opp. at 11-13. But Plaintiff must allege that the statements "were false or misleading at the time they were made" with specific facts supporting his allegations. *Pierrelouis v. Gogo, Inc.*, 414 F. Supp. 3d 1164, 1174 (N.D. Ill. 2019); *see also Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (securities claims must "set forth the facts on which a belief that a statement is misleading was formed." He has not done so here.[8]

And *third*, statements about Kohl's Strategic Plan are corporate puffery that is inactionable as a matter of law. Mot. at 16-17. Unable to deny that these statements are classic corporate puffery,[9] Plaintiff contends that materiality cannot be resolved on a motion to dismiss. Opp. at 18-19. This "ignores several appellate decisions affirming dismissal at the pleadings stage because the alleged[] false or misleading statements were immaterial as a matter of law." *In re Midway Games, Inc. Sec. Litig.*, 332 F. Supp. 2d 1152, 1164 (N.D. Ill. 2004); *see also* Mot. at 17.[10] Here

---

*ShopKo*, defendants explicitly *disclaimed* the factors that led to their low earnings. 2002 WL 32003318, at \*9 (E.D. Wis. Nov. 5, 2002) (Defendants said ShopKo's "low earnings were 'due largely' to external factors such as 'the economy, not the company's merchandising strategy'").

[8] Plaintiff also claims that Defendants made false or misleading statements about inventory, claiming that low inventory was part of the Strategic Plan and not simply a result of poor management. Opp. at 13. But the Complaint confirms that Kohl's announced other reasons for low inventory—*e.g.*, that Kohl's faced receipt delays and exited 10 brands in 2021. *See* AC ¶ 119 (alleging that Defendants' statements acknowledged Kohl's had "difficulty in sourcing inventory" and the "exit[]" from "10 brands . . . took a lot of inventory out of the ecosystem").

[9] *See, e.g., Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc.*, 778 F Supp. 2d 858, 872 (N.D. Ill. 2011) (statement that company was "confident in its ability to deliver solid results" is "so general and devoid of any substantive content that [it] fail[s] to communicate anything that would alter the total mix of information available to investors and the market"); *In re Razorfish, Inc. Sec. Litig.*, 2001 WL 1111502, at \*3 (S.D.N.Y. Sept. 21, 2001) (statement that company was "successfully executing our growth strategy" is a "classic" expression of puffery).

[10] The cases on which Plaintiff does rely are distinguishable, as they (unlike the Complaint) allege specific contradictory facts. *See Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at \*10 (N.D. Ill. Aug. 11, 2021) (statements were in "direct response to an analyst's inquiry" about sales decline);

too, Kohl's statements were not actionably false.

    **b.**  **Plaintiff Fails to Plead Scienter as to the Strategic Plan Statements**

  Plaintiff must plead facts giving rise to a strong inference of scienter for *each* of the alleged misstatements. *Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823, 826 (N.D. Ill. 2006). Defendants explained Plaintiff's failure to clear this hurdle as to the Strategic Plan statements. Mot at 26-27. And the Opposition fails entirely to mention—much less address—Defendants' arguments. Opp. at 24-28 (addressing only statements regarding sale and April/May 2022 statements); *Pugh*, 521 F.3d at 693 (requiring particularized facts showing scienter "with respect to each" statement). There is not a single reference to these statements in his discussion of scienter. Plaintiff thus concedes he cannot plead that any Defendant made the Strategic Plan statements with scienter. *See* App'x A at Stmts. 1-20; *see also Tunio v. Daudi*, 2017 WL 4842022, at *3 (E.D. Wis. Oct. 24, 2017) (arguments not addressed in opposition brief deemed waived).[11]

    **c.**  **Plaintiff Fails to Plead Loss Causation as to the Strategic Plan Statements**

  Defendants have explained that the Complaint also failed to allege any corrective disclosure revealing the Strategic Plan statements to have been false. Mot. at 27-28. Plaintiff again points to Kohl's May 2022 announcements of 1Q22 results (Opp. at 29-30), but Kohl's actually reiterated its *commitment* to the Strategic Plan on May 18 and 19, 2022, noting "we have the right strategies in place" and would continue "driving our strategy forward." Ex. P at 5, 12. Kohl's confirmed that the plan was working: "trends are improving, we are making changes and

---

*see also Pub. Emples. Ret. Sys. of Miss. v. Treehouse Foods*, 2018 U.S. Dist. LEXIS 22717, at *9– 10 (N.D. Ill. Feb. 12, 2018) (statements were shown, via public reports, to be important to investors).

[11] Plaintiff also does not address, and thus concedes, that he has not plead scienter based on the timing of Kohl's 1Q22 results (Mot. at 23-24), Defendants' "high-level positions" (*id*. at 24), or corporate departures (*id.* at 25-26).

the benefits of our key strategic initiatives are still in front of us." *Id*. at 12. Plaintiff's argument cannot be squared with Kohl's actual statements and the "revelations" actually made to the market.

### 2. Plaintiff's Claim as to the Valuation or Potential Sale of the Company Statements Fails

Plaintiff's Opposition divides up statements related to the sale of the Company into three topics: (1) offers received by Kohl's; (2) the Board's valuation of Kohl's; and (3) Kohl's shareholder rights plan. Opp. at 13-17. But grouping these statements is no substitute for alleging particularized facts showing that the statements are false, or that Defendants acted with scienter.

### a. Plaintiff Fails to Plead Falsity as to the Potential Sale Statements

*Offers Received by Kohl's.* Plaintiff continues to impugn Kohl's statement that a January 18 , 2022 report that it had "rebuffed overtures from credible buyers" was "unfounded speculation" by activist Macellum. Opp. at 13. But taking the Complaint as true, Kohl's statements were accurate; as of January 18, it had not "rebuffed" any offers to buy Kohl's and confirmed that fact to the market. Mot. at 13-14. Kohl's did receive expressions of interest over the next three days, and it promptly disclosed their receipt. *Id.* This is not Defendants' "version of these facts," Opp. at 14; it is Plaintiff's, AC ¶¶ 130-31, and no facts alleged contradict Kohl's challenged statement.

*Board Valuation of Kohl's.* Plaintiff claims that the Board's valuation of Kohl's was inflated based on the assumption that Kohl's success was owed to its Strategic Plan. But in addition to pleading no facts showing that the Strategic Plan was ineffective, *supra* Section II.B.1, Plaintiff pleads no facts showing how the Board valued Kohl's or what it considered when doing so.[12] Of course, valuation is a statement of opinion. Mot. at 12 (citing *SEC v. Bluepoint Inv. Couns., LLC*, 2021 WL 719647, at *16 (W.D. Wis. Feb. 24, 2021)). And Plaintiff neither alleges facts showing that Kohl's did not believe the valuation it espoused, *see Omnicare, Inc. v. Laborers*

---

[12] Plaintiff wholly ignores that Kohl's relied on advice from seasoned financial advisors like Goldman Sachs to value the company. Mot. at 12–13.

*Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188-89 (2015), nor facts showing that the Board's valuation was objectively wrong at the time it was considering offers for the Company.

***Shareholder Rights Plan.*** Plaintiff lastly claims that Defendants' statement that the shareholder rights plan (or "poison pill") Kohl's adopted "does not preclude the Board from considering an offer that recognizes the value of the Company" was false because the plan was designed to chill buyer interest in the company and prevent unsolicited bids. Opp. at 15-16.[13] He is wrong on the facts, as he tacitly admits that the Complaint contains no allegation that the Board could not terminate the rights plan if presented with an offer that fairly valued Kohl's, *id.* at 16 (citing Defs' Ex. H), and his Opposition confirms that the rights plan had a termination provision. *Id.* And he is wrong on the law. *Amanda Acquisition Corp. v. Universal Foods Corp.*, 708 F. Supp. 984, 1008 (E.D. Wis. 1989)). If Plaintiff were correct, boards of publicly-traded companies would never be able to adopt rights plans discouraging hostile takeovers in the face of unsolicited bids. *Id.* Plaintiff may disagree with the rights plan, but it was accurately disclosed to investors.[14]

> **b.** **Plaintiff Fails to Plead Scienter as to the Potential Sale Statements**

The Opposition confirms that the Complaint's only allegations that Defendants knew (or were reckless in not knowing) that statements about the potential sale of Kohl's were false are the same ones purporting to show scienter as to Plaintiff's "scheme" claim. Opp. at 13-17; AC ¶¶ 128-38. These allegations do not suffice to plead scienter. *See supra* Section II.A.2.

---

[13] Plaintiff also accuses Kohl's of failing to obtain stockholder approval for the rights plan. But stockholder approval is not required, and in fact is rarely sought.

[14] Further, even if the rights plan disclosure was false or misleading, Plaintiff cannot point to any statement that "expos[ed] the falsity of the fraudulent representation"—specifically, that that the Board was in fact precluded from considering offers for Kohl's—as he would need to state a claim. *See In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 551 (S.D.N.Y. 2008). Instead, the Complaint confirms that the Individual Defendants *did* consider offers for Kohl's. Mot. at 14.

### 3. Plaintiff's Claim as to the April/May 2022 Statements About Performance Fails

Plaintiff accuses Kohl's of issuing "half-truths" in April and May 2022 by providing historical information about Kohl's financial performance without updated data about decline in April. Opp. at 18. But Plaintiff does not dispute that Kohl's historical data was accurate. Mot. at 15-16. And Plaintiff cannot credibly dispute that any implication about Kohl's future performance is a forward-looking statement protected by the PSLRA's safe harbor. *Id*. at 18-19.

#### a. Plaintiff Fails to Plead Falsity as to the April/May 2022 Statements

In a last gasp, Plaintiff challenges statements in April and May 2022 about the Company's 2021 performance, ultimately seeking a mid-quarter update that Kohl's had no duty to provide. Mot. at 15-16. As this "duty to update" does not exist, Plaintiff now argues that Kohl's statements were misleading "half-truths" because they cited Kohl's performance. Opp. at 18. Not so.

*First*, Plaintiff challenges statements about *past performance* that made no representations about the first quarter of 2022. Mot. at 16. Plaintiff then claims that Defendants had a duty to disclose ongoing quarterly results because they "chose to speak" about past performance. But that is not the law; indeed, if it were, no company could ever issue an annual report during Q1 without detailing how the in-progress quarter's results compare. That Plaintiff would have wanted more information does not mean Kohl's made any misstatements or omissions. *See Gallagher v. Abbott Lab'ys*, 269 F.3d 806, 808 (7th Cir. 2001) (rejecting idea that "firms have an absolute duty to disclose all information material to stock prices as soon as news comes into their possession").

*Second*, to the extent Plaintiff contends that the statements about Kohl's recent performance expressed or implied success to come, those statements are necessarily forward-looking. Mot. at 18-19; App'x A at 36 (noting potential "continued robust EPS growth" in the future); *Alizadeh v. Tellabs, Inc.*, 2015 WL 557249, at *8–9 (N.D. Ill. Feb. 9, 2015) (anticipated

13

"continued growth" was forward-looking statement); *see also In re Lottery.com Sec. Litig.*, 2024 WL 454298, at*19 (S.D.N.Y. Feb. 6, 2024) (preliminary earnings for completed quarter is "forward-looking statement"). Plaintiff admits that these statements are protected by the PSLRA's safe harbor if they are accompanied by cautionary language, but contends that Kohl's cautionary language was not sufficient. Opp. at 22. But Plaintiff mischaracterizes the risk warnings, which cautioned that Kohl's revenue could be affected by consumer spending levels and macroeconomic factors, and that the company's "seasonal" business could negatively affect sales, revenues, and operating results. Ex. A at 6-7. These were meaningful cautions that trigger the safe harbor.

###### b. Plaintiff Fails to Plead Scienter as to the April/May 2022 Statements

Even if Plaintiff had alleged an actionable statement in April and May 2022 about Kohl's performance, he fails to plead scienter as to those statements. Plaintiff offers three speculative assertions—(1) purported "admissions," (2) alleged "access to information," and (3) purported "attendance" at meetings (Opp. at 25-26, 28)—but none support a strong inference of scienter.

***Alleged Admissions***. Plaintiff first argues that Gass and Timm "admitted" they knew whether and to what extent sales were declining *before* Kohl's announced "positive" quarterly sales on April 21, 2022. Opp. at 25-26. But that is not what the Complaint says, and Gass and Timm did not make any such "admissions." What Plaintiff *actually* alleges is that Gass and Timm discussed 1Q22 results on *May 19, 2022*. AC ¶¶ 80, 82, 139. The April 21, 2022 presentation did not discuss those 1Q22 results, Mot. at 16, 23, and their May statements, timely made in connection with Kohl's 1Q22 earnings release, say nothing about what they knew "*at the time* [they] made" the April statements. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019);

*Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 801–02 (N.D. Ill. 2007) (scienter "based on nothing more than later acknowledgment" of challenges "amounts to pleading fraud by hindsight").[15]

***Access to Information***.  Plaintiff next argues that Defendants had "visibility into [Kohl's] financial results in advance" of Kohl's release of 1Q22 results because Kohl's previewed its *2Q22* results a month before the end of the quarter.  Opp. at 26.  However, Plaintiff's authorities confirm that his allegations that defendants "had access to data" are insufficient "without describing specific documents" containing that data.  *Pierrelouis*, 414 F. Supp. 3d at 1174.[16]  Plaintiff makes no such effort here and "do[es] not carry this burden." *Id.*

***Alleged Attendance at Meetings***.  Plaintiff urges the Court to "credit allegations" from CW1 that Gass and Timm attended "regular meetings in which the alleged issues [we]re discussed."  Opp. at 26-27.  Yet Plaintiff does not explain *what* issues were discussed, *whether* these meetings took place contemporaneously with any challenged statement, or *how* any information discussed contradicted anything Defendants said publicly.  *Boca Raton Firefighters' & Police Pension Fund v. DeVry Inc.*, 2013 WL 1286700, at *9 (N.D. Ill. Mar. 27, 2013) (rejecting CW reports that "do[]not describe what was discussed" at purported meetings).  In fact, CW1 does not even claim to have attended these purported meetings, and offers no basis for what was purportedly discussed.  *Id*. (rejecting CW report without alleging that CW attended the meetings).

## III.  CONCLUSION

Defendants respectfully request that the Court dismiss the Complaint.

---

[15] Plaintiff's cited authorities (Opp. at 25) are inapposite, as they contained explicit admissions by defendants that the challenged statements were incorrect when made. *See Carpenters Pension Tr. Fund for N. Cal. v. Allstate Corp.*, 2018 WL 1071442, at *4, 6 (N.D. Ill. Feb. 27, 2018) (defendants admitted statements were incorrect when made, not merely "incorrect in retrospect"); *see also Brasher v. Broadwind Energy, Inc.*, 2012 WL 1357699, at *24 (N.D. Ill. Apr. 19, 2012) (defendants admitted knowing contradictory facts "two months prior to" challenged statements).

[16] *C.f. Azar v. Grubhub, Inc.*, 2021 WL 4077327, at *4-5 (N.D. Ill. Sept. 7, 2021) (identifying reports sent "on a 7-, 14-, and 30-day basis" that contradicted defendants' statements).

Dated: February 20, 2024

Respectfully submitted,

/s/ *Colleen C. Smith*
Colleen C. Smith

**LATHAM & WATKINS LLP**
Colleen C. Smith
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
colleen.smith@lw.com

Michele D. Johnson
Jordan D. Cook
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
michele.johnson@lw.com
jordan.cook@lw.com

Zachary L. Rowen
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
zachary.rowen@lw.com

**GODFREY & KAHN, S.C.**
John L. Kirtley
Matthew M. Wuest
Christie B. Carrino
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Telephone: (414) 273-3500
jkirtley@gklaw.com
mwuest@gklaw.com
ccarrino@gklaw.com

*Attorneys for Defendants*

16