UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS FRAME, *on behalf
of himself and others similarly situated,*
    **Plaintiff,**

v.                                                                                                            Case No. 22-CV-1016

**KOHL'S CORPORATION, et al.,**
    **Defendants.**

_____

## DECISION AND ORDER

This is a securities class action brought under the Securities Exchange Act. Defendant Kohl's Corporation ("Kohl's") operates a retail department store chain and is headquartered in Menomonee Falls, Wisconsin. Defendants Michelle Gass and Jill Timm served as CEO and CFO, respectively, during the putative class period of August 19, 2021, to July 1, 2022. Defendants Michael Bender, Peter Boneparth, Yael Cosset, Christine Day, H. Charles Floyd, Robbin Mitchell, Jonas Prising, John E. Schlifske, Adrianne Shapira, and Stephanie Streeter served as members of Kohl's Board of Directors ("the Board") during all or part of the class period. Plaintiff alleges that Kohl's and the individual defendants made false or misleading statements or omissions to artificially inflate its stock price. Before me now is defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, defendants' motion to dismiss is granted.

---

[1] Also before me is defendants' motion to consider certain documents that are not attached to the complaint in connection with the motion to dismiss. Plaintiff does not dispute that I may consider such documents incorporated by reference in the amended complaint, so I will grant defendants' motion.

**DISCUSSION**

A motion under Rule 12(b)(6) tests whether a complaint states a claim on which relief may be granted. *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019). To survive a Rule 12(b)(6) motion to dismiss, the complaint must (1) describe the claim in sufficient detail to give the defendant fair notice of the claim and grounds on which it rests, and (2) contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005); *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009)). Factual allegations must be sufficient to raise a right to relief above the speculative level. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). I accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor.

In addition to the Rule 12(b)(6) standard, I must consider the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which states that a party alleging fraud "must state with particularity the circumstances constituting fraud." Rule 9(b) requires a plaintiff "to provide precision and some measure of substantiation to each fraud allegation," meaning that the plaintiff "must plead the who, what, when, where, and how of the alleged fraud." *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019).

Furthermore, the Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes a heightened pleading standard on securities fraud claims. Under the PSLRA, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading, and (2) state with particularity facts

giving rise to a strong inference that the defendant acted with the required state of mind. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007) (citing 15 U.S.C. § 78u–4(b)(1), (2)).

I.  **Alleged Violations of § 10(b) and Rule 10b-5(b)**

Section 10(b) of the Securities Exchange Act forbids the use or employment of any deceptive device in connection with the purchase or sale of any security. 15 U.S.C. § 78j(b). Rule 10b–5 forbids the making of any "untrue statement of a material fact" or the omission of any material fact "necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

The amended complaint alleges that defendants "disseminated or approved" false statements, which they knew were misleading "in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements . . . not misleading" in violation of § 10(b) of the Exchange Act and Rule 10b-5(b). ECF No. 49, ¶ 222. To plead a violation of Rule 10b–5(b), a plaintiff must allege non-conclusory factual matter that, when accepted as true, gives rise to a reasonable inference that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied and (6) the false statement or omission proximately caused the plaintiff's damages." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 842 (7th Cir. 2007) (quoting *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 648 (7th Cir. 1997)).

The amended complaint alleges that defendants, in violation of Rule 10b-5(b), made three categories of misrepresentations to artificially inflate the price of Kohl's stock. Plaintiff alleges that: (1) defendants falsely attributed Kohl's financial performance to management's "Strategic Plan" when the company's success was actually due to unrelated macroeconomic factors; (2) defendants made a series of false or misleading statements regarding the potential sale of the company; and (3) the defendants made false or misleading statements indicating that Kohl's financial results for Q1:22 were positive when they were not. Plaintiff alleges that defendants were motivated to engage in the fraud in order to defeat a slate of directors nominated by activist investment firm Macellum Capital Management ("Macellum") at the 2022 annual shareholder meeting.

### A. Statements Attributing Success to the "Strategic Plan"

The amended complaint alleges that defendants made statements in an August 19, 2021, press release, ECF No. 49, ¶ 110, an August 19, 2021, earnings call, *id.*, ¶ 111, a November 18, 2021, press release, *id.*, ¶ 117, a March 21, 2022, letter to shareholders, *id.*, ¶ 121, and an April 21, 2022, Investor Presentation, *id.*, ¶ 124, falsely attributing Kohl's success to management's implementation of its Strategic Plan when the company's performance was actually due to unrelated macroeconomic factors. Plaintiff asserts that these statements were materially false or misleading because the positive financial results had nothing to do with the Strategic Plan. Plaintiff alleges that defendants failed to disclose that Kohl's success was attributable to the return to shopping in person as the COVID-19 vaccination became available and increased retail spending due to the issuance of stimulus checks. Defendants first point out that several of the challenged statements do acknowledge the impact of these macroeconomic

4

factors on Kohl's business. *See id.*, ¶ 111 (noting that during the August 19, 2021, earnings call, Gass stated that "the favorable industry environment has only amplified our performance," and Timm stated that "we did take advantage of a great market"). Defendants further argue that such acknowledgements were not required because the impact of COVID-19 and the stimulus checks on consumer spending was well-known. There is no duty to disclose information that is already in the public domain. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759 (7th Cir. 2007). Defendants were thus not required to disclose these macroeconomic factors every time they discussed the Strategic Plan because the effects of the COVID-19 vaccine and stimulus checks on the economy were well known by the general public.

Furthermore, the amended complaint fails to allege facts in support of plaintiff's claim that the only thing driving Kohl's success in 2021 was the rebounding economy. Plaintiff argues that Kohl's disappointing financial results in 2022, when the economic surge had begun to taper off, prove that the Strategic Plan never contributed the success achieved in 2021. The PSLRA requires that a plaintiff plead facts showing that the challenged statements were false or misleading **at the time they were made**; it is insufficient to allege that a statement was incorrect in retrospect. The amended complaint alleges no facts demonstrating that the Strategic Plan had no impact on Kohl's success in 2021. Plaintiff thus fails to plead that these statements were materially false when made.

Plaintiff also challenges statements made in a November 18, 2021, press release contending that Kohl's lower inventory was an intentional aspect of the Strategic Plan. ECF No. 49, ¶ 119 (quoting Gass' statement that management had "planned inventory

5

to be down this year as compared to 2019, aligned with our strategy to drive margins and turnover"). Plaintiff argues that this statement is misleading because the lack of inventory was actually due to poor management in the face of global supply chain issues. In support of this claim, plaintiff points to management's later statements citing "supply chain-related challenges" as a factor in Kohl's poor financial results in 2022. But again, plaintiff fails to allege facts that the challenged statements were untrue at the time they were made as opposed to being incorrect in retrospect. That Kohl's dealt with inventory and supply chain issues in 2022 has no bearing on whether defendants' November 2021 statement the Strategic Plan intended for lower inventory was true or false. The amended complaint alleges no facts supporting the conclusion that management did not intend for lower inventory in 2021.

The amended complaint also fails to plead scienter for any of the statements made prior to January 18, 2022. Under the PSLRA, the amended complaint must "state with particularity the facts giving rise to a strong inference that the defendant acted with" scienter. 15 U.S.C. § 78u-4(b)(2). Scienter is a "mental state embracing an intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12 (1976). Misstatements or omissions made with reckless disregard of a substantial risk of falsity are also made with scienter. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 704 (7th Cir. 2008).

Plaintiff alleges that the non-employee board members engaged in fraud in order to defeat Macellum's proposed slate of directors at the upcoming Shareholder Meeting, maintain control over the Board, and ensure that they retained their "lucrative" positions and otherwise beneficial perks. ECF No. 49, ¶¶ 170, 172. Plaintiff alleges that Gass and

6

Case 2:22-cv-01016-LA    Filed 09/30/24    Page 6 of 18    Document 60

Timm engaged in the fraud because Macellum had promised to curb Kohl's significant executive compensation packages if its candidates were elected to the Board. *Id.*, ¶ 171. But according to the amended complaint, Macellum did not announce its slate of director candidates until January 18, 2022. *Id.*, ¶ 41. Plaintiff challenges several of defendants' statements about the Strategic Plan that were made in August and November of 2021. *See id.*, ¶¶ 110–111, 117. The amended complaint thus fails to plead scienter for any of the challenged statements made before Macellum's announcement.

Plaintiff also fails to plead loss causation as to defendants' statements regarding the Strategic Plan. The Supreme Court has noted that pleading loss causation is "not meant to impose a great burden upon a plaintiff." *Dura Pharms.,* 544 U.S. at 347. The allegations need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* However, the amended complaint fails to identify any corrective disclosure revealing that Kohl's statements regarding its Strategic Plan were false. The amended complaint alleges that at "7:00 a.m. on May 19, 2022, before market opening, Kohl's released its dismal financial results for Q1:22, which revealed the falsity of its prior statements touting strong performance," resulting in an "immediate" drop in stock price, from $43.13 at close on May 18 to $40.60 at market open on May 19. ECF No. 49, ¶¶ 156–157. Plaintiff argues that this disclosure *did* reveal the falsity of defendants' statements about the Strategic Plan because after the announcement, "it became clear that the success of the previous year had nothing to do with management's actions, revealing the falsity of defendants' statements and causing the stock price to drop." Pl.'s Br. in Opp'n at 29–30, ECF No. 57. But the amended

7

complaint attributes this corrective disclosure to the defendants' allegedly false statements related to Kohl's Q1:22 performance, not their statements regarding the Strategic Plan. This allegation is thus insufficient to give defendants indication of the loss and the causal connection that plaintiff has in mind.

Because plaintiff fails to sufficiently plead a false or misleading statement or omission, scienter, or loss causation as to defendants' statements attributing Kohl's success to the Strategic Plan, I will grant defendants' motion to dismiss as to these claims.

## B. Statements Regarding Potential Sale of the Company

The amended complaint alleges that defendants made a series of false or misleading statements regarding the potential sale of the company. Plaintiff first points to a statement in a January 18, 2022, press release denying Macellum's accusation that the Board had rebuffed purchased offers as "unfounded speculation." ECF No. 49, ¶ 128. Plaintiff asserts that this statement was false or misleading because news outlets reported on January 21 and 22, 2022, that Kohl's had received bids from multiple parties, and Kohl's confirmed in a press release on January 24, 2022, that it had received letters expressing interest in acquiring the company. *Id.*, ¶ 131. Plaintiff asserts that these allegations support an inference that Kohl's had received offers before the January 18 statement was made. But plaintiff fails to allege facts demonstrating that the challenged statement was false or misleading at the time it was made. At most, the amended complaint alleges facts that the statement was false as of January 21, but alleges no facts in support of his claim that the statement was untrue when made on January 18.

Second, plaintiff objects to a February 4, 2022, press release stating that the Board had rejected purchase because the valuations did not "adequately reflect the Company's value in light of its future growth and cash flow generation." *Id.*, ¶ 132. Plaintiff argues this is materially false because the rejected bids were well-above Kohl's value. Kohl's statements regarding the company's valuation are statements of opinion. *See U.S. Securities and Exch. Comm'n v. Bluepoint Inv. Counsel, LLC*, No. 19-CV-809-WMC, 2021 WL 719647, at *16 (W.D. Wis. Feb. 24, 2021) (statements of valuation are "opinions" insofar as they cannot be definitively proven to be true or false). Statements of opinion are inactionable under the federal securities laws unless the plaintiff alleges that either (1) the maker of the statement did not sincerely believe the opinion, or (2) the opinion did not fairly align with the information in the issuer's possession at the time. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188–89 (2015).

Plaintiff argues that the Board's valuation did not fairly align with the information in their possession at the time. Plaintiff contends that Kohl's success in 2021 was based solely on macroeconomic factors, and that it was apparent that the Strategic Plan would not cause any future growth or cash flow generation. Thus, plaintiff argues, the rejected bids adequately reflected the company's value, rendering the statement false. Whether or not defendants' valuation fairly aligned with the information in their possession at the time depends on whether the amended complaint has sufficiently alleged that Kohl's success in 2021 was based solely on macroeconomic factors, and not at all on the Strategic Plan. As discussed above, the amended complaint fails to allege facts that the Strategic Plan had no impact on Kohl's financial success in 2021. Accordingly, I cannot

9

conclude that the allegations in the amended complaint sufficiently demonstrate that defendants' valuation of the company did not fairly align with the information in their possession at the time. The challenged statement is thus an inactionable statement of opinion.

The February 4, 2022, press release further indicated that the "shareholder rights plan" adopted by the Board that same day would not "preclude the Board from considering an offer that recognizes the value of the Company." ECF No. 49, ¶ 134. The shareholder rights plan implemented certain requirements on offers to purchase more than 10% of outstanding shares. *See* ECF No. 54-8 at 3–6 (outlining the terms of the shareholder rights plan). Literally speaking, there is no language in the shareholder rights plan that would have precluded the Board from receiving, considering, or accepting an offer to purchase the company. *Id.* Plaintiff asserts that this statement was misleading because the shareholder rights plan was designed to chill interest in purchasing the company and to prevent unsolicited bids. Plaintiff contends that the "onerous" terms of the rights plan demonstrate that it was adopted for the sole purpose of deterring purchase offers. But I cannot conclude that this fact renders the challenged statement misleading, as defendants disclosed the terms of the rights plan along with the challenged statement. The press release stated that a copy of the rights plan and a summary of its terms was filed on a Form 8-K with the Securities and Exchange Commission that same day. *Id.* at 9. Thus, even if defendants were required to disclose these "onerous" terms in order to make the statement not misleading, there was no omission of the terms.

Lastly, plaintiff points to several statements made in March, April, and June 2022 regarding the potential sale of the company. ECF No. 49, ¶ 137. Plaintiff alleges that these statements assert that the sales process was "ongoing" and were thus false or misleading because the Board had no intention of actually selling the company. Plaintiff is correct that a statement regarding the potential sale of a company can be considered false or misleading if the sales process has stopped. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 745 (7th Cir. 1997) ("[I]f the [sales] process has been stopped, a representation that it is continuing may well induce purchases of the stock at a price that reflects the prospect that the process will continue to its end."). But the amended complaint fails to plead facts indicating that the sales process had in fact stopped at the time these statements were made. In support of this claim, plaintiff again points to the "onerous" terms of the shareholder rights plan and the fact that the sale later fell through. Additionally, the amended complaint cites to a May 19, 2022, *New York Post* article stating that "sources tell *The Post* the Wisconsin-based company may be privately rooting for an outcome in which bidders fade away—despite the public image management has put forward." *See* Lisa Fickenscher & Josh Kosman, *Kohl's Sales Process is a 'Disaster': Sources*, N.Y. POST (May 19, 2022, 6:17 PM), https://nypost.com/2022/05/19/kohls-sales-process-is-a-disaster-sources/). But neither the article nor the amended complaint provide facts in support of plaintiff's claim that the sales process was not actually ongoing at the time the challenged statements were made.

Because plaintiff fails to sufficiently plead a false or misleading statement or omission about the potential sale of the company, I will grant defendants' motion to dismiss these claims.

C. Statements Regarding Q1:22 Financial Results

The amended complaint alleges that defendants made several false or misleading statements in April and May 2022 indicating that Kohl's financial results for the first quarter of 2022 ("Q1:22") were positive when they were later revealed to be disappointing. Specifically, the amended complaint identifies a statement by Gass in an April 13, 2022, video about the upcoming director election and the ongoing sales process, ECF No. 49, ¶ 142, and a statement by Boneparth in an April 29, 2022, letter to shareholders encouraging shareholders to vote for existing directors over the slate proposed by Macellum, *id.*, ¶ 146. In these statements, Gass and Boneparth made no representations about Kohl's performance in Q1:22. They discussed Kohl's past performance in 2021, but plaintiff does not allege that either defendant misstated or misconstrued the historical data. I thus cannot conclude that these statements were materially false or misleading.

Plaintiff also objects to several statements in an April 21, 2022, Investor Presentation. ECF No. 49, ¶ 144; *see also* ECF No. 54-12 at 20–21, 24–25 (April 21, 2022, Investor Presentation). The presentation, titled "The Right Team to Maximize Shareholder Value," discussed the Board's implementation of the Strategic Plan and encouraged shareholders to reelect the existing Board at the upcoming annual shareholder meeting. The presentation was released two weeks before the end of Q1:22 and three weeks before the annual meeting. Plaintiff argues that it was

12

Case 2:22-cv-01016-LA    Filed 09/30/24    Page 12 of 18    Document 60

misleading to state that the various initiatives implemented as part of the Strategic Plan were "[d]riving sustainable Low-Single-Digits % Sales Growth" and would "support sales growth in 2022 and beyond," because sales were down in Q1:22. Plaintiff further contends that it was misleading to state that Kohl's had "[f]undamental business model improvements in place, driving a consistent 7% to 8% operating margin," when the operating margin for Q1:22 was later revealed to be only 2.2%. And plaintiff asserts it was misleading to state that "Kohl's is well-positioned to deliver continued robust EPS growth," when EPS for Q1:22 was later revealed to be down 95% from the previous quarter. The amended complaint does not allege that any of the statements regarding Kohl's past financial performance in 2021 were false. Plaintiff instead argues these statements, which quoted Kohl's previous success and indicated that similar efforts were still ongoing, were false or misleading because they were made towards the end of the quarter when the defendants knew that Kohl's Q1:22 financial results were going to be significantly below expectations.

Kohl's was not obligated to provide updates on a financial quarter in progress, as the securities laws provide for a system of "periodic rather than continuous" disclosure. *Gallagher v. Abbott Labs.*, 269 F.3d 806, 808, 809–10 (7th Cir. 2001) ("[A] corporation does not commit fraud by standing on its rights under a periodic-disclosure system"). An issuer does not have a duty to continuously update the public. *See Higginbotham*, 495 F.3d at 760 (7th Cir. 2007) (noting that there is no rule requiring periodic "reports to be updated on any cycle other than quarterly"). Plaintiff notes that Rule 10b-5 proscribes "omissions that render affirmative statements misleading; thus, incomplete disclosures, or 'half-truths,' implicate a duty to disclose whatever additional information is necessary

to rectify the misleading statements." Pl.'s Br. in Opp'n at 18, ECF No. 57 (citing *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 944 (7th Cir. 1989)). Plaintiff argues that because defendants chose to speak positively about the previous year's financials in the presentation, they had a duty to disclose that the results from Q1:22 were not on par with the previous quarter.

I cannot agree that these statements were half-truths that obligated defendants to provide updated financial results before the quarter ended. The presentation discussed the Board's past performance, and in doing so, quoted several financial figures from 2021. That plaintiff picked out one or two sentences from the sixty-three-slide presentation phrased in the present tense does not render the accurate information false or misleading. I cannot conclude that statements about Kohl's past performance created a duty to provide updated financials. Such a requirement would mean that no company could give a statement on a previous quarter without also disclosing how the in-progress quarter's results compare. This would effectively create a system of continuous disclosure. *See Gallagher*, 269 F.3d at 809 (noting that "judges have no authority to scoop the political branches and adopt continuous disclosure under the banner of Rule 10b–5").

Plaintiff contends that it was misleading to state in the presentation that the Board is "confident in our ability to navigate ongoing margin pressure from cost inflation, higher freight expense, wage investments, and increasing digital penetration," because defendants later blamed inflation, supply chain issues, and higher freight expenses for the decline in sales. ECF No. 49, ¶¶ 144–145. Plaintiff also challenges a May 11, 2022, press release stating that the Board is "especially thankful to Kohl's associates, who

14

have continued to execute on our strategy and focus on customers during this process. Kohl's has a bright future ahead." *Id.*, ¶ 148. But these statements are immaterial as a matter of law. An allegedly false or misleading statement or omission is "material" only if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). Statements that amount to "vague optimism" or "non-specific puffery," are not material and thus not actionable under Rule 10b-5. *City of Taylor Police and Fire Ret. System v. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021). That the Board is "confident in [their] ability" to combat general macroeconomic challenges or that Kohl's "has a bright future ahead" are clear examples of vague and unspecific puffery that cannot reasonably be viewed as having significantly altered the total mix of information made available. Such statements are not material as a matter of law, and therefore not actionable.

Because plaintiff fails to sufficiently plead a false or misleading statement or omission as to the Q1:22 financial results, I will grant defendants' motion to dismiss these claims.

## II. Alleged Violations of § 10(b) and Rule 10b-5(a) and (c)

Rule 10b–5(a) prohibits an individual from employing "any device, scheme or artifice to defraud" investors, and Rule 10b–5(c) prohibits an individual from engaging "in any act, practice, or course of business which operates ... as a fraud or deceit" upon an investor. 17 C.F.R. § 240.10b–5(a), (c). Plaintiff contends that defendants "participated in a fraudulent scheme and course of conduct to mislead the market about

15

a potential sale of the company in order to maintain their lucrative board and executive positions in the face of a hotly contested proxy contest." Pl.'s Br. in Opp'n at 9–10, ECF No. 57; *see also* ECF No. 49, ¶¶ 213–220. This alleged "scheme" is based solely on defendants' alleged dissemination of the same false or misleading statements and omissions alleged in plaintiff's Rule 10b-5(b) claims. Though other circuits have concluded that scheme liability pursuant to Rules 10b–5(a) and (c) requires deceptive acts distinct from mere misstatements and omissions, *see Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 177 (2d Cir. 2005) (actionable scheme liability claim requires something beyond misstatements and omissions); *SEC v. Rio Tinto plc*, 41 F.4th 47 (2d Cir. 2022) (same), the Seventh Circuit has yet to consider the question of whether a plaintiff may plead "scheme liability" based solely on alleged misrepresentations. I need not consider this question, however, as the amended complaint fails to plead a materially false or misleading misrepresentation or omission. I will therefore grant defendants' motion to dismiss plaintiff's Rule 10b-5(a) and (c) claims.

III.     **Alleged Violations of § 14(a) and Rule 14a-9**

Section 14(a) of the Exchange Act prohibits soliciting proxies in violation of SEC rules and regulations. 15 U.S.C. § 78n(a)(1). Rule 14a-9 prohibits material misrepresentations or omissions in soliciting a shareholder's proxy vote. 17 C.F.R. § 240.14a-9(a). To state a claim under § 14(a), a plaintiff must allege (1) that a proxy statement contained a material misstatement or omission that (2) caused the plaintiff's injury, and (3) that the proxy solicitation was an "essential link" in accomplishing the transaction. *Kuebler v. Vectren Corp.*, 13 F.4th 631, 637 (7th Cir. 2021) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384–85 (1970)). The PSLRA's heightened

16

pleading standard applies to § 14(a) claims. *Beck v. Dobrowski*, 559 F.3d 680, 681–82 (7th Cir. 2009). Thus, a plaintiff must identify each statement alleged to have been misleading, the reason why each statement was misleading, and all relevant facts supporting that conclusion. 15 U.S.C. § 78u-4(b)(1).

Plaintiff alleges that defendants sought to secure shareholder support for the reelection of the Board in the face of a contested proxy battle with Macellum by means of a proxy that contained material misrepresentations or omissions. ECF No. 49, ¶¶ 229–236. But as discussed above, the amended complaint fails to plead any material misrepresentation or omission, in a proxy statement or otherwise. Plaintiff thus fails to state a claim under Rule 14a-9, and I will grant defendants' motion to dismiss these claims.

## IV.  Alleged Violations of § 20(a)

The Exchange Act imposes liability not only on the person who actually commits the securities law violation, but also on persons who "directly or indirectly" control the violator. 15 U.S.C. § 78t(a). To state a claim for liability of a "controlling person" under § 20(a), a plaintiff must first adequately plead a primary violation of securities laws. *Pugh v. Trib. Co.*, 521 F.3d 686, 693 (7th Cir. 2008). Because plaintiff has failed to adequately plead a primary violation, I will grant defendants' motion to dismiss plaintiff's § 20(a) control liability claims.

## **CONCLUSION**

For the reasons stated above, I will grant defendants' motion to dismiss. Because a district court generally must consider granting a plaintiff at least one opportunity to amend a deficient complaint, I will allow plaintiff to move for leave to file an amended

17

complaint under Federal Rule of Civil Procedure 15 and Civil Local Rule 15. In his motion, plaintiff must explain how the proposed amended complaint cures the problems identified above. Under Civil Local Rule 7(b)–(c), defendants will have an opportunity to file a response to any such motion, and plaintiff may file a reply. If I determine that the proposed amended complaint fails to state a claim, I will deny leave to amend on the ground that granting such leave would be futile. If plaintiff chooses not to seek leave to amend, I will enter judgment for defendants.

**THEREFORE, IT IS ORDERED** that defendants' motion to dismiss (ECF No. 51) is **GRANTED**. Plaintiff may file a motion for leave to amend by November 1, 2024.

**IT IS FURTHER ORDERED** that defendants' motion to consider documents under the incorporation by reference doctrine or by judicial notice (ECF No. 55) is **GRANTED**.

Dated at Milwaukee, Wisconsin, this 30th day of September, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge